**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **JASON COLEMAN and JESSICA CASEY,** on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, PAUL GENERALE, MIKE PAXTON, NICK BOURAS, and STERLING INVESTMENT PARTNERS III, L.P.,**<br><br>      **Defendants.** | **Case No. 4:19-cv-00705** |

## COMPLAINT

Plaintiffs Jason Coleman and Jessica Casey, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan and similarly situated participants in the Plan, and their beneficiaries, allege upon personal knowledge, the investigation of their counsel, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1. Plaintiffs Jason Coleman and Jessica Casey ("Plaintiffs") bring this suit against Defendants Neil M. Brozen, the trustee for the RVNB Holdings, Inc. Employee Stock Ownership Plan (the "Plan") when the Plan was terminated and sold its shares of RVNB Holdings, Inc. ("RVNB") in 2017 ("Stock Sale"); Robert Peterson, Jr., a member of RVNB's board of directors

(the "Board") at the time of the Stock Sale; Vasilia Peterson, a member of the Board at the time of the Stock Sale; Paul Generale, a member of the Board at the time of the Stock Sale; Mike Paxton, a member of the Board at the time of the Stock Sale (the Petersons, Generale, and Paxton collectively the "Board Defendants"); Sterling Investment Partners III, L.P. ("SIP III"); and Nick Bouras, an officer of RVNB and an officer and director of Residential Logistics Solutions, LLC ("RLS") at the time of the Stock Sale.

2.      Plaintiffs are participants in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who were vested in shares of RVNB allocated to their accounts in the Plan.

3.      This action is brought under Sections 404, 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, and 1132(a), for losses suffered by the Plan and its participants, and other relief, caused by Defendants when they terminated the Plan and caused the Plan to sell its shares of RVNB for less than fair market value in 2017.

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      From RVNB's formation and throughout the time that the Plan owned RVNB stock, RVNB was a privately held company. RVNB was formed as a holding company in March 2012 to purchase 100% of the stockholders' ownership interests in various All My Sons Moving & Storage ("All My Sons") locations throughout the United States, in conjunction with establishing the Plan. All My Sons, the operating entity, is a moving and storage company. RVNB adopted the Plan effective October 1, 2012. In December 2012, the Plan purchased from the Petersons (the "Sellers"), who were parties in interest to the Plan, 100% of the outstanding stock of RVNB for $85,000,000, which was financed by RVNB in a fully leveraged transaction with a loan bearing

interest at 2.5% that was to mature in December 2052 (the purchase and loan transactions together, the "2012 ESOP Transaction"). At that time, RVNB became an employee-owned company. The 2012 ESOP Transaction is the subject of a separate lawsuit, which was filed June 15, 2018. *See Casey v. Reliance Trust Co.*, Case No. 18-cv-00424 (E.D. Tex.).

6.      In 2014, Reliance Trust Company ("RTC"), the Plan's initial trustee, decided to exit the ESOP trustee business. On May 21, 2014, RVNB appointed Argent Trust Company to replace RTC as trustee for the Plan.

7.      On June 29, 2017, the Board Defendants voted to terminate the Plan less than five years after it had been established.

8.      On June 29, 2017, the Board Defendants appointed Neil M. Brozen as trustee for the Plan effective June 5, 2017, replacing Argent Trust Company.

9.      The Board Defendants hired Brozen to represent the Plan and its participants in connection with the Plan's termination and wind-up. Included among Brozen's powers was the power to sell the Plan's RVNB stock to any person, including RVNB.

10.      Just six days later, on July 5, 2017, officers of RVNB and partners of Sterling Investment Partners Advisers, LLC ("Sterling"), the investment advisor to SIP III, formed RLS. Sterling established, offered for investment, and manages SIP III. Charles W. Santoro, Douglas L. Newhouse, Joseph Gault, and William P. Russell, Jr. were and are partners or principals at Sterling, who formed and became officers/directors of RLS, and sit on the Board of Directors of All My Sons. RLS was and is an affiliate of Sterling. Nick Bouras, Randy Whaley, and Christopher G. Generale were officers of RVNB when they formed RLS with the Sterling partners, and they became officers/directors of RLS.

11.     The following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: the RVNB officers Bouras, Whaley, and Christopher Generale, as lieutenants of the Petersons, with the Sterling partners, formed RLS to serve as a conduit for SIP III's later acquisition of RVNB so that the Board Defendants and others could benefit from the sale of RVNB at the expense of the Plan and its participants, that is, usurp the Plan's opportunity to sell RVNB directly to SIP III and profit therefrom.

12.     On August 7, 2017, RVNB stock was redeemed from the Plan in exchange for cash, cancellation of debt, and future payment when the sale to a third party that the Board had been planning since at least early 2017 was effectuated.

13.     On August 11, 2017, RLS and the Board Defendants agreed to the terms of the sale of substantially all of the assets of RVNB to RLS and SIP III. The transaction closed on September 29, 2017 (the redemption and sale transactions together, the "Stock Sale").

14.     Brozen represented the Plan and its participants as Trustee in the Stock Sale. He had sole and exclusive authority over whether to allow the Plan to go through with the Stock Sale.

15.     Under the terms of the Plan, an acquisition of substantially all the assets of RVNB by any entity would have required a vote of the Plan participants. Plan Doc. § 11-1. By phasing the transactions in this manner, Defendants avoided a vote on the transactions by the Plan's participants.

16.     The following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: Brozen knew the amount or approximate amount that the Plan would receive from RLS and/or SIP III, directly or through RVNB, with the completion of the multi-stage Stock Sale. Brozen breached his duties as Trustee to the Plan and Plan participants and caused the Plan to engage in prohibited transactions by

causing the Plan to sell its stock below fair market value and immediately before SIP III acquired RVNB at a price well-above what the Plan received for its stock.

17.     The following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: The Board Defendants and Bouras breached their fiduciary duties to the Plan and engaged in prohibited transactions by usurping the Plan's opportunity to sell RVNB directly to SIP III for more than the price the Plan received from RVNB. The Board Defendants must have known the approximate price SIP III and/or RLS would pay for RVNB and that it would exceed the price at which the Plan sold RVNB by a substantial margin before they decided to terminate the Plan, terminate Argent as Trustee, hire Brozen as Trustee to bless the transaction, and redeem RVNB stock from the Plan because the close timing of these events shows that the stock redemption and sale to SIP III and RLS was a multi-stage transaction contemplated before the ESOP was terminated:



18.     Instead of allowing the Plan and its participants to reap the benefits of owning RVNB, the Board Defendants terminated the Plan, hired a compliant trustee to bless a redemption of RVNB stock, caused RVNB officers to form a shell entity with Sterling partners to buy RVNB, and then flipped RVNB to Sterling's SIP III at a much higher price than the stock was redeemed from the Plan.

19.     The following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: SIP III violated ERISA by participating in the fiduciary breaches and prohibited transactions of Brozen, the Board Defendants, and Bouras, and it holds RVNB stock and/or other assets that properly belong to the Plan.

20.     Plaintiffs bring this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by them and similarly situated participants, resulting from Defendants engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching their fiduciary duties under ERISA.

21.     Plaintiffs also sue to recover from SIP III the stock that was wrongfully redeemed from the Plan and for disgorgement of any profits earned by SIP III or its owners in connection with the related transactions.

**JURISDICTION AND VENUE**

22.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001–1191c, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to require the Board Defendants, Brozen, and Bouras to make good to the Plan losses resulting from their violations of the provisions of Title I of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and

6

legal remedies in order to redress violations and enforce the provisions of ERISA, including the return of the wrongfully redeemed RVNB stock to the Plan.

23.     This Court has subject-matter jurisdiction over this action under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

24.     Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this District and because some of the events or omissions giving rise to the claims occurred in this District.

25.     The address of the Plan Administrator, RVNB Holdings, Inc., is 6505 West Park Blvd, Suite 306, PMB 178, Plano, Texas 75093. At the time of the termination of the Plan and sale of its shares of RVNB in 2017, the address of the Plan Administrator, RVNB Holdings, Inc., was 2400 Old Mill Road, Carrollton, Texas 75007.

## PARTIES

26.     Plaintiff Jason Coleman has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff Coleman resides in Acworth, Georgia. He worked in sales at RVNB. He was vested in the shares of RVNB in his Plan account.

27.     Plaintiff Jessica Casey has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff Casey resides in Catonsville, Maryland. She was employed as a Sales Manager at RVNB. She was vested in the shares of RVNB in her Plan account.

28.     Defendant Neil M. Brozen is the President of Ventura ESOP Fiduciary Services. He is located at 719 W. Minnehana Parkway, Minneapolis, Minnesota 55419. He was appointed as Trustee of the Plan for the purpose of determining whether the redemption of RVNB stock from the Plan was at no less than fair market value and to terminate and wind-up the Plan.

29.     Defendant Robert Peterson, Jr. was a member of RVNB's Board when it appointed Brozen to serve as Trustee for the Plan. Robert Peterson, Jr. was a Seller in the 2012 ESOP Transaction. He was a founder of All My Sons. He was an officer of RVNB.

30.     Defendant Vasilia Peterson (a.k.a. "Vauna" and "Vasillia" and "Vasilla") was a member of RVNB's Board when it appointed Brozen to serve as Trustee for the Plan. Vasilia Peterson was a Seller in the 2012 ESOP Transaction. She signed the Plan's Forms 5500 as the plan administrator for the 2016 and 2017 Plan Years. She was a founder of All My Sons. She was an officer of RVNB.

31.     Mike Paxton was a member of RVNB's Board when it appointed Brozen to serve as Trustee for the Plan.

32.     Paul Generale was a member of RVNB's Board when it appointed Brozen to serve as Trustee for the Plan.

33.     Defendant Sterling Investment Partners III, L.P. ("SIP III") is an investment partnership established and managed by Sterling. SIP III is located at 285 Riverside Avenue, Suite 300, Westport, Connecticut 06880-4806.

34.     Defendant Nick Bouras was the Chief Financial Officer (CFO) of RVNB and a director and officer of RLS. He was one of the persons exercising RVNB's role as plan administrator from the Plan's adoption through its termination, and as the Plan was wound-up after its termination.

## FACTUAL ALLEGATIONS

35.     Based in Carrollton, Texas, in 2017, and currently based in Plano, Texas, RVNB provides moving and storage services with facilities throughout the United States. RVNB operates under the trade name "All My Sons Moving & Storage." Even after RVNB was sold to the Plan in

2012, and in 2017 to Sterling Investment Partners, a private equity firm, the company billed itself as "a family-owned and operated company with an emphasis on old-fashioned ethics like courtesy and respect [which] has been moving families for over four generations, passing along our unique set of family values and quality care to each and every customer we serve." *See* www.allmysons.com/our_story.aspx (last visited September 23, 2019). At the beginning of the 2017 plan year, more than 1,400 RVNB employees participated in the Plan.

36.     Robert Peterson, Jr. and his wife Vasilia Peterson founded All My Sons Moving & Storage in 1993.

37.     RVNB was formed in 2012 to purchase 100% of the stockholders' ownership interests in various All My Sons Moving & Storage locations throughout the United States, in conjunction with establishing the Plan.

38.     RVNB Holdings, LLC was formed in Delaware on March 20, 2012.

39.     Effectuating a change in business structure, RVNB Holdings, Inc. was incorporated in Delaware on May 2, 2012.

40.     The Plan's Forms 5500, Annual Return/Report of Employee Benefit Plan, report that RVNB was an S corporation at the end of the 2012 Plan year and throughout the time that the Plan owned the company.

41.     RVNB is a holding company that came to own the stock of the various All My Sons operating entities.

42.     At the time of the formation of the Plan and continuing past the 2017 sale of the company to SIP III, RVNB's corporate headquarters was at 2400 Old Mill Road, Carrollton, Texas 75007. RVNB Holdings, Inc. is currently based at 6505 West Park Blvd, Suite 306, PMB 178, Plano, Texas 75093.

43.     From the formation of RVNB in 2012 and throughout the time that the Plan owned RVNB stock, RVNB stock was not readily tradable on an established securities market.

44.     RVNB adopted the Plan with an effective date of October 1, 2012.

45.     The Plan was a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), subject to ERISA under ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

46.     RVNB identified the Plan as intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of RVNB.

47.     The Plan's only investment in the period in which it owned RVNB was the common stock of that company.

48.     The Plan was a defined contribution plan and an individual account plan under which a separate individual account was established for each participant.

49.     All of the Plan's Forms 5500, Annual Return/Report of Employee Benefit Plan, identify RVNB as the sponsor and administrator of the Plan.

50.     RVNB was the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

51.     Employees of RVNB participated in the Plan.

52.     RVNB was the Plan's administrator, within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

53.     RVNB was an ERISA fiduciary to the Plan as its administrator.

54.     RVNB was a provider of services to the Plan as its administrator.

55.     RVNB was a party in interest as an employer whose employees were covered by the Plan, as a fiduciary to the Plan, and because it provided services to the Plan as plan administrator.

56.     Effective October 1, 2012, the RVNB Holdings, Inc. Stock Ownership Trust (the "Trust") was formed to facilitate the purchase of common stock of RVNB. RTC was the initial trustee.

57.     Around 2014, RTC decided to exit the ESOP trustee business. On May 21, 2014, RVNB appointed Argent Trust Company to replace RTC as trustee for the Plan.

58.     On June 29, 2017, the Board Defendants voted to terminate the Plan less than five years after it had been established.

59.     All participants' interests in RVNB stock accrued in their individual accounts became immediately 100% vested, retroactively effective as of June 5, 2017.

60.     Plaintiff Casey became 100% vested in the shares of RVNB stock in her Plan account in 2015. Plaintiff Coleman became 100% vested in the shares of RVNB stock in his Plan account in 2016.

61.     On June 29, 2017, the Board Defendants appointed Neil M. Brozen as trustee for the Plan effective June 5, 2017, replacing Argent Trust Company.

62.     The Board Defendants hired Brozen to represent the Plan and its participants in connection with the Plan's termination and wind-up. Included among Brozen's powers was the power to sell shares of RVNB stock to any person, including RVNB.

63.     Just six days later, on July 5, 2017, RVNB officers and Sterling partners formed RLS.  RLS was and is an affiliate of Sterling.

64.     RLS was incorporated in Delaware on July 5, 2017. RLS is located at 14800 Quorum Drive, Suite 410, Dallas, Texas 75254. At the time it acquired RVNB in 2017, RLS's address was 2400 Old Mill Road, Carrollton, Texas 75007, the same address at which RVNB was then located.

65.     Charles W. Santoro, Douglas L. Newhouse, Joseph Gault, and William P. Russell, Jr. were and are partners or principals at Sterling, who formed and became officers/directors of RLS, and sit on the Board of Directors of All My Sons. Santoro and Newhouse are Managing Partners and Co-Founders of Sterling. Sterling is the investment advisor to SIP III, and it established, offered investments in, and manages SIP III.

66.     Nick Bouras, Randy Whaley, and Christopher G. Generale were officers of RVNB when they formed RLS with the Sterling partners, and they became officers/directors of RLS. Bouras was the CFO of RVNB at the time of the Plan's termination and when he formed RLS. Whaley was the Chief Executive Officer (CEO) of RVNB at the time of the Plan's termination and when he formed RLS. Christopher Generale was the President and Chief Administrative Officer (CAO) of RVNB at the time of the Plan's termination and when he formed RLS.

67.     The Trust Agreement between RVNB and Brozen whereby Brozen was appointed by the Company and the Board to serve as Trustee for the Plan in the Stock Sale was highly unusual in two respects. First, the Company and the Board agreed to pay Brozen a fee in excess of market norms for ESOP trustees—$250,000. Second, the Company and the Board agreed to pay for a fiduciary insurance policy with a premium of up to $750,000 and a deductible of $500,000 solely to cover any liabilities incurred by Brozen in connection with the Stock Sale. The Board also agreed to indemnify Brozen for the $500,000 deductible.

68.     The following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: The Board Defendants and Brozen agreed to this extremely unusual compensation arrangement because they knew the proposed Stock Sale was not in the best interests of the Plan and its participants; they knew that RLS and/or SIP III were going to pay far more for RVNB stock than the Plan had received, and thus the Plan would receive far less than fair market value; and they knew there was a high risk that Brozen would be sued over the Stock Sale.

69.     The following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: the Board terminated Argent as trustee for the Plan because Argent would not go along with the Board's proposed stock redemption or Argent resigned as trustee because it knew the proposed stock redemption was not in the best interests of the Plan and its participants, and the Board hired Brozen to serve as trustee, whom the Board induced by paying him above market rates and buying him an insurance policy to cover liabilities if he were sued.

70.     As Trustee for the Plan, Brozen had sole and exclusive authority to approve the redemption/sale of the Plan's RVNB stock, including the sales price for the stock.

71.     As Trustee for the Plan, it was Brozen's duty to ensure that any transactions between the Plan and RVNB and the Board Defendants, including sale of RVNB stock by the Plan, were fair and reasonable and to ensure that the Plan received no less than fair market value.

72.     As Trustee of the Plan, Brozen was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he was the Trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because he exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control

13

respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

73.    As Trustee of the Plan, Brozen was a fiduciary to the Plan under the terms of the Plan's governing documents.

74.    As a fiduciary and service provider to the Plan, Brozen was a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

75.    The Board Defendants were fiduciaries to the Plan in connection with the Stock Sale because they selected Brozen to serve as trustee for the Plan in the Stock Sale. The selection of a fiduciary for a retirement plan is a fiduciary act.

76.    The Board Defendants were parties in interest to the Plan for purposes of the Stock Transaction because they were fiduciaries to the Plan and because they were directors of the company that sponsored the Plan.

77.    Robert Peterson, Jr. was a founder, director, and officer of RVNB. He was a party in interest as a fiduciary to the Plan, and as a director, officer, and/or employee of RVNB.

78.    Vasilia Peterson was a founder, director, and officer of RVNB. She signed the Plan's 2016 and 2017 Forms 5500 as plan administrator. She was a fiduciary to the Plan. She was a party in interest to the Plan as a fiduciary to the Plan, as a director, officer, and/or employee of RVNB.

79.    Paul Generale was a member of the Board at the time of the Stock Sale. He was a party in interest as a fiduciary to the Plan and as a director of RVNB.

80.    Mike Paxton was a member of the Board at the time of the Stock Sale. He was a party in interest as a fiduciary to the Plan and as a director of RVNB.

81.     Nick Bouras signed the Plan's Forms 5500 as the plan administrator for the 2012–2015 Plan Years. The 2015 Form 5500 was filed on October 13, 2016. Nick Bouras signed the amendment to the Plan terminating it as of June 29, 2017. He was a fiduciary to the Plan because he was one of the persons exercising RVNB's role as plan administrator at all relevant times, until on or about September 2017.

82.     Nick Bouras was a party in interest as a fiduciary to the Plan and/or as an officer or employee of RVNB and/or as a director, officer, or employee of RLS.

83.     The following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: The Board Defendants and Bouras were also parties in interest under ERISA as 10% or more shareholders, directly or indirectly, of RVNB and/or RLS. RLS was a party in interest as a corporation, partnership, or trust of which (or in which) 50 percent or more of—(i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, (ii) the capital interest or profits interest of such partnership, or (iii) the beneficial interest of such trust, is owned directly or indirectly, or held by, the Board Defendants and/or Bouras and/or RVNB.

84.     As Trustee, Brozen is subject to liability for the difference between what the Plan received for its RVNB stock and what RLS paid for RVNB stock and/or what SIP III paid for RVNB and/or RLS. Brozen is also subject to disgorgement of his excessive compensation and earnings thereon received in connection with the Stock Sale.

85.     The Board Defendants and Bouras are subject to liability for the difference between what the Plan received for its RVNB stock and what RLS paid for RVNB stock and/or what SIP III paid for RLS and/or RVNB as fiduciaries and as knowing and active participants in the transactions that deprived the Plan of its opportunity to sell its stock directly to SIP III.

86.     The Defendants other than SIP III are liable to the Plan for equitable restitution of all monies received by them in connection with SIP III's acquisition of RLS and/or RVNB.

87.     SIP III is liable to the Plan for equitable restitution of the RVNB assets and/or stock acquired by it from RLS and/or RVNB and any profits earned thereon.

### CLAIMS FOR RELIEF

### COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against Brozen**

88.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

89.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Brozen, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here RVNB stock, with a party in interest, here RVNB and/or RLS, as took place in the Stock Sale.

90.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Brozen from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here RVNB and/or RLS, of any assets of the Plan, as took place in the Stock Sale with the transfer of Plan-owned RVNB stock.

91.     The stock transaction between the Plan and the party in interest RVNB and/or RLS was authorized by Brozen in his capacity as Trustee for the Plan.

92.     Brozen caused the Plan to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and 406(a)(1)(D) in the Stock Sale.

93.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any

16

consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

94.     Brozen acted on behalf of the Board Defendants and Bouras in connection with the Plan's stock transaction in the Stock Sale by causing the Plan to sell RVNB stock below fair market value. This greatly benefited the Board Defendants and Bouras to the substantial detriment of the Plan, even though Brozen was required to serve the interests of the Plan in connection with any such transaction.

95.     Brozen received from RVNB consideration—fees and an indemnification agreement—as Trustee for the Plan in the Stock Sale, in violation of ERISA § 406(b)(3).

96.     Brozen caused and engaged in prohibited transactions in violation of ERISA §§ 406(b)(2) and 406(b)(3) in the ESOP Transaction.

97.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

98.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

99.     Brozen has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

100.    The losses suffered by the participants in the Plan are coterminous with those of the Plan, and Plaintiffs' individual losses are proportional to the losses of fellow participants.

## COUNT II

**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a),
Against Brozen, the Board Defendants, and Bouras**

101.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

102.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

103.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

104.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

105.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

106.    Brozen was required to undertake an appropriate and independent investigation of the fair market value of RVNB stock in 2017 in order to fulfill his fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the RVNB stock sold by the Plan.

107.    Brozen breached his duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

108.    The Board Defendants were required to appoint a trustee who would discharge his duties to the Plan with the loyalty, care, skill, prudence, and diligence required under ERISA. Instead they appointed Neil M. Brozen, who violated ERISA in approving the Stock Sale, as described above, and was chosen because he would approve the Stock Sale for less than fair market value.

109.    The Board Defendants breached their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

110.    Bouras and the Board Defendants were required to discharge their duties with respect to the Plan solely in the interests of its participants and beneficiaries for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, and to discharge their duties to the Plan with loyalty, care, skill, prudence, and diligence. Instead they orchestrated a transaction that usurped the Plan's opportunity to sell its RVNB stock for fair market value to SIP III, RLS, or another buyer, and caused it to sell the stock for less than fair market value, causing losses to the Plan and its participants.

111.    Bouras and the Board Defendants breached their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

112.    Brozen, the Board Defendants, and Bouras were required to discharge their duties with respect to the Plan solely in the interests of its participants and beneficiaries for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, and to discharge their duties to the Plan with loyalty, care, skill, prudence, and diligence. Instead they sold the Plan's RVNB stock, ending the employee stock ownership program within five years of the Plan's adoption, betraying the promise of employee-ownership of RVNB that had been made to RVNB employees, taking away a valued retirement plan and the deferred compensation it provided, and causing Plan participants to lose out on projected company growth that others usurped.

113.    Brozen, the Board Defendants, and Bouras breached their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

114.    Brozen, the Board Defendants, and Bouras have caused losses to the Plan by their breaches of fiduciary duty in amounts to be proved specifically at trial.

## COUNT III

### Prohibited Transactions Under 29 U.S.C. § 1132(a)(3), Against the Board Defendants, Bouras, and SIP III

115.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

116.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

117.    The Supreme Court has held that anyone, including a non-fiduciary, who benefits from conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

20

118.    As a result of the prohibited transactions described above, the Board Defendants, Bouras, and SIP III received from the Plan, directly or indirectly, Plan assets at below fair market value.

119.    The Board Defendants and Bouras were all parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

120.    SIP III acquired Plan assets directly or indirectly knowing that such assets had been taken from the Plan in violation of ERISA.

121.    The Board Defendants, Bouras, and SIP III knew that (1) the transactions described herein involved transactions in Plan assets among RLS, RVNB, RVNB directors and officers, and the Plan; (2) the Board Defendants and Bouras were parties in interest to the Plan by virtue of their status as fiduciaries of the Plan and directors and officers of RVNB; (3) Brozen was a fiduciary to the Plan; (4) RVNB was a party in interest to the Plan as an employer whose employees were covered by the Plan, as a fiduciary, and as a service provider to the Plan; (5) the transactions directly between the Plan and RLS, RVNB, and the Board Defendants and Bouras were below fair market value given that SIP III was set to buy the stock and/or RLS and RVNB at a much higher price; (6) Brozen caused the Plan to engage in transactions prohibited under ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b); (7) Brozen breached his fiduciary duties under ERISA; and (8) the true purpose of the Stock Sale was to benefit the Defendants and others at the expense of the Plan.

122.    As officers and directors of RVNB, the Board Defendants and Bouras were aware of sufficient facts that the Stock Sale constituted a prohibited transaction with parties in interest. As parties in interest, the Board Defendants and Bouras are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

21

123.   Through its agents Santoro, Newhouse, Gault, and Russell, who incorporated RLS along with RVNB officers including Bouras as part of the scheme to deprive the Plan of its opportunity to sell its RVNB stock at not less than fair market value, SIP III was aware of sufficient facts that the Stock Sale constituted a prohibited transaction with parties in interest. SIP III is liable for knowingly participating in violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

124.   The Board Defendants and Bouras profited from the prohibited transactions in an amount to be proven at trial, and they remain in possession of some or all of the assets that belong to the Plan.

125.   SIP III profited from the prohibited transactions in an amount to be proven at trial, and it remains in possession of some or all of the assets that belong to the Plan.

126.    Defendants are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## **CLASS ACTION ALLEGATIONS**

127.   Plaintiffs bring this action as a class action under Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All vested participants in the RVNB Holdings, Inc. Employee Stock Ownership Plan ("Plan") as of June 29, 2017, and the beneficiaries of such participants. Excluded from the Class are the directors of RVNB Holdings, Inc., the defendants, and the legal representatives, successors, and assigns of any such excluded persons.

128.   The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiffs at this time, the Plan's

Form 5500 filing for 2017 indicates that, as of January 1, 2017, the Plan had 1,436 active participants.

129.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i.    Whether Brozen served as Trustee in the Plan's sale of RVNB stock;

ii.    Whether Brozen was an ERISA fiduciary of the Plan;

iii.    Whether the Board Defendants and Bouras were fiduciaries and parties in interest to the Plan;

iv.    Whether Brozen caused the Plan to engage in prohibited transactions under ERISA by causing the Plan to sell RVNB stock to parties in interest to the Plan;

v.    Whether Brozen engaged in a good faith valuation of the RVNB stock in connection with the Stock Sale;

vi.    Whether Brozen caused the Plan to sell RVNB stock for less than fair market value;

vii.    Whether Brozen engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the Stock Sale;

viii.    Whether Brozen engaged in a prohibited transaction under ERISA by receiving consideration for his own account in the Stock Sale;

ix.    Whether Brozen breached his fiduciary duty to undertake an appropriate and independent investigation of the fair market value of RVNB stock in 2017;

    x.   Whether the Board Defendants breached their fiduciary duties by appointing Brozen as trustee of the Plan;

    xi.   Whether Bouras and the Board Defendants breached their fiduciary duties by orchestrating a multi-stage transaction that usurped the Plan's opportunity to sell its RVNB stock at a higher price than it received;

    xii.   Whether Brozen, the Board Defendants, and Bouras breached their fiduciary duties by orchestrating the Stock Sale, causing the Plan to sell its employer stock, and allowing others to usurp projected company growth, which betrayed the promise of employee-ownership of RVNB made to participants and was not done solely in their interests, but caused them ongoing losses;

    xiii.   Whether Bouras and the Board Defendants, as parties in interest, participated in the prohibited transactions;

    xiv.   Whether SIP III is liable for participating in the various breaches and violations of ERISA alleged herein;

    xv.   The amount of losses suffered by the Plan and its participants as a result of the ERISA violations; and

    xvi.   The appropriate relief for Defendants' violations of ERISA.

130.    Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts because the Plan sold below fair market value, resulting in less money in their accounts.

131.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee-benefits litigation.

132.    Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Brozen and the other Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

133.    The names and addresses of the Class members are available from the Plan, the Plan Administrator, the Plan's trustee, or their successors. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.    Declare that Defendant Neil M. Brozen caused the Plan to engage in and himself engaged in prohibited transactions and thereby breached his duties under ERISA;

B.    Declare that Defendants Robert Peterson, Jr., Vasilia Peterson, Paul Generale, Mike Paxton, Nick Bouras, and Neil M. Brozen breached their fiduciary duties under ERISA to the Plan and the class members;

C.    Order that Defendants Neil M. Brozen, Robert Peterson, Jr., Vasilia Peterson, Paul Generale, Mike Paxton, and Nick Bouras make good to the Plan and/or to any successor trust(s) the losses resulting from their breaches of ERISA and restore any profits they have made through use of assets of the Plan;

D.     Order that Defendants Neil M. Brozen, Robert Peterson, Jr., Vasilia Peterson, Paul Generale, Mike Paxton, and Nick Bouras provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by these Defendants;

E.     Order that the Defendant SIP III restore to the Plan any losses to the Plan and any monies, including earnings thereon, received by it in connection with its violations of ERISA, and provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including surcharge, providing an accounting for profits, rescission, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by said Defendants;

F.     Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

G.     Award Plaintiffs reasonable attorneys' fees and costs of suit incurred under ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

H.     Order Defendants to pay prejudgment and post-judgment interest;

I.     Certify this action as a class action under Fed. R. Civ. P. 23;

J.     Appoint Plaintiffs Jason Coleman and Jessica Casey as class representatives;

K.     Appoint the undersigned counsel as class counsel; and

L.     Award such other and further relief as the Court deems equitable and just.

Dated:  September 27, 2019

Respectfully submitted,

By: */s/ Thomas R. Ajamie*
Thomas R. Ajamie
Texas Bar No. 00952400
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
**AJAMIE LLP**
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX  77002
Tel: (713) 860-1600
Fax: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

Gregory Y. Porter (*pro hac vice* to be filed)
Ryan T. Jenny (*pro hac vice* to be filed)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiffs Jason Coleman &
Jessica Casey*