# Exhibit 1

2023 WL 387586
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

David BURNETT and David Nelson, as representatives of a class of similarly situated persons, and on behalf of the Western Global Airlines, Inc. Employee Stock Ownership Plan, Plaintiffs,
v.
PRUDENT FIDUCIARY SERVICES LLC, Miguel Paredes, James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, WGA Trust Dated 8/16/13, and John Does 1-10, Defendants.

C.A. No. 22-270-RGA-JLH
|
Signed January 25, 2023

**Attorneys and Law Firms**

Carmella P. Keener, Cooch and Taylor, P.A., Wilmington, DE, Rachana A. Pathak, Pro Hac Vice, Brandon T. McDonough, Pro Hac Vice, Brock J. Specht, Pro Hac Vice, Caroline E. Bressman, Pro Hac Vice, Daniel R. Sutter, Pro Hac Vice, Eleanor E. Frisch, Pro Hac Vice, Jacob T. Schutz, Pro Hac Vice, John Stokes, Pro Hac Vice, Michelle C. Yau, Pro Hac Vice, Paul J. Lukas, Pro Hac Vice, Peter k. Stris, Pro Hac Vice, Victor O'Connell, Pro Hac Vice, for Plaintiffs David Burnett.

Carmella P. Keener, Cooch and Taylor, P.A., Wilmington, DE, Eleanor E. Frisch, Pro Hac Vice, for Plaintiffs David Nelson.

Aidan T. Hamilton, Joseph Benedict Cicero, Lars C. Golumbic, Pro Hac Vice, Mark L. Desgrosseilliers, Chipman Brown Cicero & Cole, LLP, Wilmington, DE, Sean C. Abouchedid, Pro Hac Vice, for Defendants Prudent Fiduciary Services LLC, Miguel Paredes.

Christine Dealy Haynes, Jennifer C. Bebko Jauffret, Richards, Layton & Finger, PA, Wilmington, DE, Jeffrey S. Russell, Pro Hac Vice, Robert M. Lewis, Jr., Pro Hac Vice, for Defendants James K. Neff, Carmit P. Neff, Carmit P. Neff Revocable Trust, James K. Neff Revocable Trust, WGA Trust.

### REPORT AND RECOMMENDATION

Jennifer L. Hall, UNITED STATES MAGISTRATE JUDGE

**\*1** Plaintiffs David Burnett and David Nelson (collectively, "Plaintiffs") brought this action alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") by Defendants Prudent Fiduciary Services LLC, Miguel Paredes, James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust dated 11/15/12, WGA Trust Dated 8/16/13, and John Does 1–10 (collectively, "Defendants"). Plaintiffs allege, among other things, that Defendants breached their fiduciary duties under ERISA, causing damage to their retirement plan, and Plaintiffs seek relief for and on behalf of the plan under 29 U.S.C. §§ 1109(a) and 1132(a)(2).

Pending before the Court is Defendants' Motion to Compel Arbitration and to Stay Pursuant to Sections 3 and 4 of the Federal Arbitration Act, or, in the Alternative, to Dismiss. (D.I. 24.) Although § 1132(a)(2) permits plan beneficiaries such as Plaintiffs to seek relief on behalf of the plan as a whole, the arbitration provision at issue in this case purports to bar Plaintiffs from seeking relief for the plan as a whole. Because that portion of the arbitration provision is invalid and is not severable from the remainder of the arbitration provision, Defendants' motion to compel arbitration should be DENIED.

### I. BACKGROUND

This case involves an employee stock ownership plan ("ESOP"). An ESOP is a type of ERISA-regulated defined contribution plan "designed to invest primarily in qualifying employer securities." 29 U.S.C. §§ 1107(d)(6), 1002(34).

Plaintiffs are all current employees of Western Global Airlines, Inc. and have participated in the company's ESOP (the "Plan") since its inception in 2020. (D.I. 1 ¶¶ 25, 33–

35.) The exact details of Plaintiffs' allegations aren't germane to resolving the present motion, but their general claim is that Defendants breached their fiduciary duties to the Plan by causing it to pay more for shares of Western Global Airlines than the shares were actually worth. Plaintiffs' Complaint seeks "recovery on behalf of the Plan" under §§ 1132(a)(2) and 1109(a). (*Id.* ¶¶ 115–17.) As explained further below, § 1109(a) says that a plan fiduciary who breaches a fiduciary duty listed in §§ 1101–1114 shall be liable to the plan "for any losses to the plan resulting from each such breach" and subject to equitable relief. Section 1132(a)(2) says that a beneficiary of a plan can bring a civil action in district court for appropriate relief under § 1109.[1]

[1]   Plaintiffs' Complaint indicated that they were "additionally and alternatively" seeking to pursue their claims "as a class action pursuant to Federal Rule of Civil Procedure 23." (D.I. 1 ¶¶ 118–27.) However, Plaintiffs' counsel took the position at oral argument that their claims for relief on behalf of the Plan under § 1132(a)(2) did not require them to proceed as a class. (Tr. 33–36.)

The Complaint has a lengthy prayer for relief. Among other things, it seeks to order Defendants to make good to the Plan the losses resulting from the breaches of fiduciary duties under ERISA and to disgorge any profits they made through the use of Plan assets. (*Id.* ¶ 177(F), (H), (I).) It also seeks to remove the Plan trustees and to enjoin the Neffs from serving the Plan in any fiduciary capacity, as well as certain other equitable and declaratory relief. (*Id.* ¶ 177(J), (L); *see also id.* ¶ 177.)

**\*2** The Plan is governed by an instrument that the parties refer to as the "Plan Document." 1F[2] (D.I. 26, Ex. A.) It has a lengthy arbitration provision, which provides, in pertinent part, as follows:

> **18.7 <u>Mandatory and Binding Arbitration Procedure ("Arbitration Procedure")</u>**. As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary continuing to participate in the Plan, (iii) any Claimant asserting a claim related to the Plan or any benefits under the Plan, (iv) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (v) any Employee, Participant, or Beneficiary receiving any benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims.
>
> **(a) Covered Claims.** Any claim by a Claimant which arises out of, relates to, or concerns this Plan ..., including without limitation ... any claim asserting a breach of ... any provision of ERISA ..., including without limitation claims for breach of fiduciary duty, ... (collectively, "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect. Under no circumstances are the AAA Supplementary Rules for Class Arbitrations to be used .... The judgment on the final award ... shall not have any binding effect on the Administrator or Trustee except as to the individual Claimant only.
>
> **(b) No Group, Class, or Representative Arbitrations.** All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) [29 U.S.C. § 1132(a)(2)] to seek appropriate relief under ERISA § 409 [29 U.S.C. § 1109], the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary

relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant. The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and nonseverable term of this Section 18.7, Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section 18.8, then the entire Arbitration Procedure (i.e., all of Section 18.7) shall be rendered null and void in all respects. Except as to the applicability and enforceability of the foregoing Class Action Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the existence, scope, validity, enforceability, or performance of this Arbitration Procedure or any of its provisions. Any dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined solely by the court specified in Section 18.8....

**\*3 18.8 Restriction on Venue.** If a Claimant wishes to pursue any Covered Claim, that Claimant shall comply with the Arbitration Procedure, set forth in Section 18.7 of the Plan, and shall not file any such claim in a state or federal court. To the extent, however, any Claimant ... wishes to challenge the legal enforceability of the Arbitration Procedure, or to the extent the Arbitration Procedure is invalidated, such action or challenge shall be filed exclusively in the United States District Court for the District of Delaware or any Delaware State Court ....

(D.I. 26, Ex. A §§ 18.7–8.)

[2] Defendants filed a copy of the Plan Document with their motion to compel arbitration. (D.I. 26, Ex. A.) Defendants contend, and Plaintiffs do not dispute, that it is authentic and that the Court may properly consider it.

Defendants filed a motion seeking to compel arbitration of Plaintiffs' claims in accordance with the arbitration provision in the Plan Document. (D.I. 24.) Plaintiffs oppose. Judge Andrews referred the motion to me on July 15, 2022, after briefing was complete. (D.I. 25–29, 32.) The parties filed numerous supplemental briefs and notices of additional authority, all of which have been considered. (D.I. 33, 34, 38, 41, 44, 45.) The Court heard oral argument on October 27, 2022. ("Tr. __.")

## II. LEGAL STANDARD

"The Federal Arbitration Act reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.' " *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Its primary substantive provision says that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy ... arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It requires that the Court, "upon being satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration" under an arbitration agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...." 9 U.S.C. § 3. It also authorizes courts to issue orders compelling arbitration in the manner provided for in an arbitration agreement. 9 U.S.C. § 4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

To determine whether an issue in a suit or proceeding is "referable to arbitration" within the meaning of the FAA, courts "must consider two 'gateway' questions: (1) 'whether the parties have a valid arbitration agreement at all' (i.e., its enforceability), and (2) 'whether a concededly binding arbitration clause applies to a certain type of controversy'

(i.e., its scope)." *In re Remicade*, 938 F.3d at 519 (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416–17 (2019)).

### III. DISCUSSION

On its face, the arbitration provision appears to require Plaintiffs to bring their ERISA breach of fiduciary duty claims in arbitration. Plaintiffs, however, offer three independent reasons why they should not be compelled to arbitrate. First, they say that the Plan Document is a "contract[ ] for employment" for a "class of workers engaged in ... interstate commerce" and is therefore exempt from the FAA. See 9 U.S.C. § 1. Second, Plaintiffs contend that the arbitration provision should not be enforced because they never consented to it. Third, they contend that the arbitration provision is invalid because it precludes Plan participants from seeking substantive statutory remedies provided by ERISA. Because I agree with Plaintiffs' last argument, I do not consider the first two.

#### A. The arbitration provision eliminates statutory remedies and is thus invalid.

**\*4** The FAA mandates that courts enforce "agreement[s] for arbitration" according to their terms. 9 U.S.C. § 4; *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). But that doesn't mean—and the Supreme Court has never said—that the FAA requires courts to enforce any and every provision in an agreement just because it's titled "Arbitration Agreement." See *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 n.5 (2022) (explaining that the FAA "requires only the enforcement of 'provision[s]' to settle a controversy 'by arbitration,' and not any provision that happens to appear in a contract that features an arbitration clause" (quoting 9 U.S.C. § 2)).

To be sure, the FAA directs courts to "respect and enforce the parties' chosen arbitration *procedures*." *Epic Sys. Corp., v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (emphasis added). Thus, if an arbitration agreement specifies the *procedural* "rules under which th[e] arbitration must be conducted," a court has to enforce that agreement. *Italian Colors*, 570 U.S. at 233. And if the parties agreed to forego the availability of a class action *procedure* in the arbitration, a court must likewise enforce that agreement. *Id.* at 233–38 (holding that the FAA required enforcement of an arbitration agreement containing a class action waiver, which required plaintiffs to pursue their federal antitrust claim in bilateral arbitration).

But while the FAA requires courts to respect parties' contractual agreements regarding the *procedures* under which they will arbitrate, "the FAA does not require courts to enforce contractual waivers of *substantive* rights and remedies." *Viking River Cruises*, 142 S. Ct. at 1919 (emphasis added) ("An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed."). Indeed, not only does the FAA not require courts to enforce an agreement to waive a substantive remedy, but such an agreement will usually be held invalid as against public policy. *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (explaining that an agreement to prospectively waive "a party's right to pursue statutory remedies" for federal antitrust violations would be invalid as against public policy); see also, e.g., *Italian Colors*, 570 U.S. at 235–36 (explaining that "a provision in an arbitration agreement forbidding the assertion of certain statutory rights" would "certainly" be an invalid "prospective waiver of a party's right to pursue statutory remedies"); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) ("[A] substantive waiver of federally protected civil rights will not be upheld ...."); *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 241–43 (3d. Cir. 2020) (holding invalid as against public policy an arbitration agreement that purported to waive the plaintiff's right to bring a federal RICO claim); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003) (holding unenforceable a portion of an arbitration clause that eliminated the availability of punitive damages under Title VII).

With those principles in mind, the question the Court must answer is whether the arbitration provision in the Plan Document is merely an agreement regarding the procedures and manner in which the arbitration will be conducted (as Defendants contend), which the FAA says must be enforced, or whether it operates as a prospective waiver of Plaintiffs' substantive statutory right under ERISA to seek relief on behalf of the Plan for all losses suffered by the Plan (as Plaintiffs contend), in which case it is unenforceable. To

answer that question, it is necessary to take a closer look at the nature of the ERISA remedies requested by Plaintiffs.

**\*5** As noted above, Plaintiffs allege that Defendants breached their fiduciary duties to the Plan by causing it to pay more for company stock than it was worth. ERISA says that a plan fiduciary owes certain enumerated fiduciary duties to the plan, and it provides a mechanism for beneficiaries to enforce those duties. In particular, § 1109(a) of Title 29 provides that

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....

29 U.S.C. § 1109(a). Among other things, § 1109(a) says that a plan fiduciary who breaches its fiduciary duties is liable "to such plan" for "*any* losses to the plan." 29 U.S.C. § 1109(a) (emphasis added). It also allows the equitable remedy of removal of a plan fiduciary. (*Id.*) Section 1132(a)(2) authorizes a civil action to enforce § 1109. It says that an "action may be brought ... (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2).

Plaintiffs' Complaint seeks remedies "on behalf of the Plan" under §§ 1132(a)(2) and 1109(a), including (among other things) (i) an order directing Defendants to pay to the Plan all of the losses suffered by the Plan as a result of Defendants' fiduciary duty breaches and (ii) removal of Defendants as fiduciaries. The Complaint does not seek to recover any individual beneficiary losses distinct from the losses suffered by the Plan itself as a result of the alleged breaches. *Cf. Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985) (explaining that § 1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (same); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009) ("Section [1132(a)(2)] claims are, by their nature, plan claims.").

Now that we understand the nature of the remedies sought by Plaintiffs, the next step is to consider whether the arbitration procedure in the Plan Document "effects an 'elimination of [Plaintiffs'] right to pursue [those] remed[ies].' " *Williams*, 965 F.3d at 242 (quoting *Italian Colors*, 570 U.S. at 236). The Plan Document requires all "Beneficiar[ies]" to resolve all "Covered Claims," including ERISA breach of fiduciary duty claims, according to the arbitration procedure set forth in § 18.7. (D.I. 26, Ex. A § 18.7.) There is no dispute that Plaintiffs' claims under §§ 1109(a) and 1132(a)(2) are covered and are therefore subject to the arbitration procedure in § 18.7. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) (holding that ERISA claims are generally arbitrable).

Section 18.7(b) goes on to say that Covered Claims "must be brought solely in the Claimant's individual capacity and not in a representative capacity." (D.I. 26, Ex. A § 18.7(b).) It further says that, with respect to suits brought under § 1132(a)(2) for relief under § 1109—*i.e.*, the type of suit here—the monetary remedy the Claimant can obtain is "limited to (i) the alleged losses to the Claimant's individual Plan account resulting from the alleged breach of fiduciary duty, [and/or] (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's individual Plan account ...." (*Id.*) It also says that the arbitrator may grant remedial or equitable relief, but only if it "does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant." (*Id.*)

**\*6** Plaintiffs contend that § 18.7(b) eliminates their ability to obtain the equitable remedy of fiduciary removal as well as their right to seek monetary relief to make the Plan whole. Defendants say that the provision "does not necessarily" prevent a prospective plaintiff from seeking the remedy of fiduciary removal in the arbitration. (D.I. 28 at 8 n.13; *see also* Tr. 19–21.) But Defendants agree that § 18.7(b) purports to limit a plaintiff's monetary remedies to relief for

their own individual account, and that it does not permit a plaintiff to seek plan-wide monetary relief. (D.I. 25 at 15.)

Plaintiffs say that the elimination of their right to seek plan-wide monetary relief is an impermissible prospective waiver of their right to the statutory remedy provided by §§ 1109(a) and 1132(a)(2), and is therefore unenforceable. I agree.[3]

[3]  Defendants do not dispute that the Court, not the arbitrator, should consider whether § 18.7(b) effects a waiver of a substantive right. (Tr. 26; *see also* D.I. 26, Ex. A § 18.7(b) ("Any dispute or issue as to the applicability or validity of [§ 18.7(b)] shall be determined solely by the court ....").)

Pared down to its simplest form, the analysis is this: The ERISA statute gives plan beneficiaries the right to sue on behalf of a plan and recover plan-wide damages for a breach of fiduciary duty. 29 U.S.C. §§ 1109(a), 1132(a)(2). But what the statute provides, the arbitration provision takes away: it says that beneficiaries cannot sue on behalf of the Plan and that they cannot recover plan-wide damages. (D.I. 26, Ex. A § 18.7.) The arbitration provision thus eliminates a right to pursue a remedy provided by a federal statute. The FAA does not require a court to enforce a provision in an arbitration agreement that effects an elimination of a statutory right to pursue a remedy. *Williams*, 965 F.3d at 241–42. Moreover, an arbitration provision that eliminates the right to pursue a remedy provided by ERISA is invalid as against public policy. 3F[4] Thus, the clause in § 18.7(b) of the arbitration procedure that purports to bar Plaintiffs from seeking plan-wide relief is invalid and will not be enforced. And because § 18.7(b) says that the entirety of the arbitration provision in § 18.7 "shall be rendered null and void in all respects" if § 18.7(b) is unenforceable (*see* Tr. 26), Defendants' motion to compel arbitration should be denied.

[4]  Such a provision is also likely void under ERISA itself. *See* 29 U.S.C. § 1110(a) ("[A]ny provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.").

My conclusion is consistent with other courts that have recently considered similar provisions. In *Harrison v. Envision Management Holding, Inc. Board of Directors*, 593 F. Supp. 3d 1078 (D. Colo. 2022), the court held that a nearly identical arbitration procedure in an ESOP plan document was unenforceable because it disallowed plan-wide relief under §§ 1109(a) and 1132(a)(2). *Harrison*, 593 F. Supp 3d at 1085 (holding that the plaintiff was "unable to effectively vindicate his statutory cause of action" under §§ 1109(a) and 1132(a)(2) under an arbitration provision that disallowed litigants from seeking plan-wide remedies). Likewise, the court in *Cedeno v. Argent Trust Co.*, No. 20-9987, 2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021), considered another nearly identical arbitration provision and came to the same conclusion. *Cedeno*, 2021 WL 5087898, at *4 (holding that an arbitration provision limiting a prospective plaintiff's relief to losses to his own individual account "is invalid and unenforceable because it purports to limit the available remedies that ERISA explicitly provides"). The opinions in *Harrison* and *Cedeno* are persuasive, and I agree with their reasoning.[5]

[5]  My conclusion is also consistent with the Seventh Circuit's analysis in *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613 (7th Cir. 2021). In that case, the court concluded that a nearly identical arbitration provision was unenforceable because it prohibited equitable remedies that ERISA expressly permits. *Id.* at 621–22. The *Smith* court (unlike Defendants here) interpreted the arbitration provision at issue to preclude a participant from seeking the remedy of fiduciary removal, a remedy authorized by § 1109(a). The court held that the provision operated as a "prospective waiver of a party's right to pursue statutory remedies" and was thus invalid. *Id.* at 621 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19).

**B. Defendants' arguments are unpersuasive.**

*7 Defendants' remaining arguments should be rejected. Defendants contend that a participant in a defined contribution plan does not have a substantive right to recover plan-wide losses; rather, his relief under §§ 1109(a) and 1132(a)(2) is limited to relief for his individual plan account. In support of that proposition, Defendants point to the Supreme Court's decision in *LaRue v. DeWolff, Boberg &*

*Associates,* 552 U.S. 248 (2008). In that case, the Supreme Court held that a participant could obtain relief on behalf of the plan for losses to that participant's own retirement account where the alleged breaches only caused losses to that participant's individual retirement account. But *LaRue* did not say—and the Third Circuit has never said—that an ESOP participant bringing a claim under §§ 1109(a) and 1132(a)(2) may recover only the losses to his retirement account where the alleged breach of fiduciary duty affected the entire plan. 5F[6] *See Cedeno,* 2021 WL 5087898, at *4 (rejecting the argument that *LaRue* stands for the proposition that an individual participant in a defined contribution plan can only seek relief for his personal losses); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009) ("[T]he contention that *LaRue* establishes that there are no 'plan claims' in the defined contribution context is incorrect."). The statute says that a participant may sue to recover "any losses due to the plan." 29 U.S.C. § 1109(a); *LaRue*, 552 U.S. at 253 (explaining that § 1132(a)(2) authorizes plan beneficiaries "to bring actions on behalf of a plan to recover for violations of the obligations defined in [§ 1109(a)]"). Defendants' contention that the statute does not confer on a beneficiary the right to seek a plan-wide remedy is unpersuasive.[7]

[6]   To the contrary, courts have permitted plaintiffs to obtain plan-wide monetary relief on behalf of the plan in cases where a fiduciary duty breach caused loss to the plan. *See, e.g.*, *Browe v. CTC Corp.*, 15 F.4th 175, 197–99 (2d Cir. 2021) (reversing district court's limitation on loss restoration for plaintiffs in defined contribution plan; explaining that courts "are not entitled to disregard [Congress's] legislative judgment" requiring fiduciary to "make good any losses resulting from his breach"); *Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 781 (4th Cir. 2019), as amended (Mar. 22, 2019); *Perez v. Bruister*, 823 F.3d 250, 265–76 (5th Cir. 2016); *Cedeno,* 2021 WL 5087898, at *4 (collecting cases).

[7]   *But see Dorman v. Charles Schwab Corp.*, 780 Fed. App'x 510, 514 (9th Cir. 2019) (unpublished memorandum opinion) (reasoning that *LaRue* stands for the proposition that § 1132(a)(2) claims "are inherently individualized when brought in the context of a defined contribution plan"). I disagree with *Dorman*, and other courts have too. *See Cedeno,* 2021 WL 5087898, at *5 n.5 (S.D.N.Y. Nov. 2, 2021) (expressly rejecting *Dorman*'s interpretation of *LaRue*); *Smith v. Greatbanc Tr. Co.*, No. 20-2350, 2020 WL 4926560, at *4 (N.D. Ill. Aug. 21, 2020) ("This Court respectfully disagrees with [*Dorman's*] interpretation of *LaRue*."), *aff'd*, 13 F.4th 613 (7th Cir. 2021); *cf. Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, No. 19-1925-MN, 2021 WL 4133622, at *5 (D. Del. Sept. 10, 2021) (declining to follow a different aspect of *Dorman*, noting that it "provided no reasoning for its decision").

Moreover, the fact that the statute itself allows a single plaintiff to obtain plan-wide relief makes this case totally different than the class action waiver cases cited by Defendants. For example, in *Italian Colors* and *Epic Systems*, the Supreme Court considered the enforceability of arbitration agreements that contained class action waivers, which operated to prohibit the plaintiff in each case from utilizing the class action procedural device to aggregate his individual claims with the claims of other similarly situated individuals. *See Viking River*, 142 S. Ct. at 1920 (explaining that "class-action procedure allows courts to use a representative plaintiff's individual claim as a basis to adjudicate the individual claims of multiple parties at once, instead of in separate suits" (cleaned up)). In those cases, the arbitration agreements did not prevent the plaintiffs from vindicating their substantive right to the individual remedy provided by the relevant statute, and the Supreme Court held that the class action waivers were enforceable. *See Epic Sys.*, 138 S. Ct. at 1621 (explaining that the FAA "seems to protect pretty absolutely" an arbitration agreement requiring "individualized rather than class or collective action procedures" to resolve an individual employee's Fair Labor Standards Act claim); *Italian Colors*, 570 U.S. at 236 ("The class-action waiver merely limits to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938." (citation omitted)).

**\*8** Here, in contrast, Plaintiffs are not trying to aggregate their individual claims with the individual claims of other Plan beneficiaries. Plaintiffs are asserting a breach of fiduciary duty claim on behalf of the Plan, and they seek a plan-wide remedy, as expressly provided by the statute. Unlike the class action waivers at issue in *Italian Colors* and *Epic Systems*, the arbitration provision here does not merely purport to change the manner in which Plaintiffs' individual claims are decided; rather, it purports to change the nature of the substantive remedy provided by the statute. It deprives Plaintiffs of the right to seek the statutory remedy of plan-wide monetary relief, and it is therefore unenforceable.

I reject Defendants' suggestion that my conclusion is inconsistent with the Third Circuit's holding in *Williams*. In that case, the Third Circuit considered an arbitration agreement that limited a party's substantive claims to those arising under tribal law. *Williams*, 965 F.3d at 238. Because the agreement operated to "prospectively waive" all federal statutory claims, including the plaintiff's RICO claim, the court held that the agreement was unenforceable. *Id.* Defendants suggest that *Williams* stands for the proposition that the "prospective waiver" doctrine only applies to invalidate an arbitration agreement if the agreement entirely forbids a prospective plaintiff from bringing a claim under a statute. (D.I. 25 at 16–17.) I disagree. While that was the problem with the arbitration agreement in that case, neither the Supreme Court nor the Third Circuit has ever so held. And Defendants' position is contrary to the Third Circuit's reasoning in *Williams* that the appropriate framing of the prospective waiver question is whether the arbitration provision effects an elimination of the right to pursue a remedy provided by a statute. *Williams*, 965 F.3d at 241–42; *see also id.* at 238 ("[A]rbitration is only appropriate so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." (citation omitted)); *Harrison*, 593 F. Supp. 3d at 1085 ("[N]othing in ... *Williams* suggests that an arbitration agreement is invalid only if it forecloses *all* causes of action."). The arbitration provision in this case eliminates the statutory right to pursue plan-wide relief. It is therefore unenforceable. *See Harrison*, 593 F. Supp. 3d at 1085 (holding an arbitration provision unenforceable because it "disallows a litigant from seeking plan-wide remedies," resulting in the prospective plaintiff being "unable to effectively vindicate his statutory cause of action in the arbitral forum").

Finally, Defendants contend that "Plaintiffs are asking the Court to find that ERISA and the FAA cannot be harmonized." (D.I. 28 at 4.) That reflects a misunderstanding of Plaintiffs' argument. Plaintiffs are not saying that ERISA conflicts with the FAA. Rather, their argument is that the Plan Document conflicts with ERISA. The Plan Document contains a provision that bars a beneficiary from pursuing a remedy that ERISA provides. That provision is invalid, and the FAA does not require the Court to enforce it.

The Court cannot sever the invalid provision and enforce the remainder of the arbitration procedure because the Plan Document itself says that the invalid provision is not severable. (D.I. 26, Ex. A § 18.7(b).) In other words, the Court is not declining to send this case to arbitration because of something unique about ERISA. ERISA claims are arbitrable. It is the Plan Document's own non-severability provision that keeps this case here in court.

### IV. CONCLUSION

For the reasons set forth above, I recommend that Defendants' Motion to Compel Arbitration and to Stay Pursuant to Sections 3 and 4 of the Federal Arbitration Act, or, in the Alternative, to Dismiss (D.I. 24) be DENIED.

**\*9** This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

**All Citations**

Slip Copy, 2023 WL 387586

**Burnett v. Prudent Fiduciary Services LLC, Slip Copy (2023)**

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.