# Exhibit 1

2023 WL 4281813
Only the Westlaw citation is currently available.
United States Court of Appeals, Third Circuit.

Marlow HENRY, ON BEHALF OF the BSC VENTURES HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, and on behalf of a class of all other persons similarly situated
v.
WILMINGTON TRUST NA; Brian Sass; E. Stockton Croft, IV, Appellants

No. 21-2801
|
Argued: November 9, 2022
|
(Filed: June 30, 2023)

On Appeal from the United States District Court for the District of Delaware (D.C. Civil No. 1-19-cv-1925), District Judge: Honorable Maryellen Noreika

**Attorneys and Law Firms**

Sarah M. Adams [ARGUED], Michael J. Prame, Groom Law Group Chartered, 1701 Pennsylvania Avenue NW, Suite 1200, Washington, DC 20006, Counsel for Appellant Wilmington Trust NA

Mark A. Nebrig, Moore & Van Allen, 100 N Tryon Street, NationsBank Corporate Center, 47th Floor, Charlotte, NC 28202, Kevin J. Connors, Marshall Dennehey Warner Coleman & Goggin, P.C., 1007 N Orange Street, Nemours Building, Suite 600, Wilmington, DE 19801, Counsel for Appellants Brian Sass and E. Stockton Croft, IV

Daniel Feinberg, Feinberg Jackson Worthman & Wasow, 2030 Addison Street, Suite 500, Berkeley, CA 94704, David A. Felice, Bailey & Glasser LLP, 2961 Centerville Road, Suite 302, Wilmington, DE 19808, Ryan T. Jenny, Gregory Y. Porter, Bailey & Glasser LLP, 1055 Thomas Jefferson Street, N.W., Suite 540, Washington, D.C. 20007, Peter K. Stris [ARGUED], Rachana A. Pathak, John R. Stokes, Stris & Maher LLP, 777 S. Figueroa Street, Suite 3850, Los Angeles, CA 90017, Tillman J. Breckenridge, Stris & Maher LLP, 1717 K Street, N.W., Suite 900, Washington, DC 20006, Counsel for Appellee

Before: CHAGARES, Chief Judge, JORDAN and SCIRICA, Circuit Judges

OPINION

CHAGARES, Chief Judge.

*1 Marlow Henry participated in an employee stock ownership plan ("ESOP") sponsored by his employer. After the ESOP purchased stock at what Henry believed was an inflated price, Henry filed a lawsuit against Wilmington Trust, N.A. ("Wilmington Trust"), the plan's trustee, and Brian Sass and E. Stockton Croft, executives of his employer (collectively, the "defendants"). He alleged that the defendants breached their fiduciary duties to the ESOP imposed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and engaged in transactions prohibited by ERISA. The defendants moved to dismiss. They contended that an arbitration provision, added to the ESOP's plan documents after Henry joined the ESOP, barred Henry from pursuing his claims in federal court. The District Court denied the motion to dismiss. For the following reasons, we will affirm the judgment of the District Court.

I.

Henry worked at BSC Ventures Holdings, Inc. ("BSC"), a company that makes custom return envelopes for mass mailings, between 2012 and 2019. In 2015, BSC created an ESOP for its employees. The ESOP is a pension plan subject to the requirements of ERISA. All BSC employees, including Henry, were automatically enrolled in the ESOP and were not permitted to opt out. Wilmington Trust served as the ESOP's trustee. Sass and Croft were executives at BSC who owned BSC stock and provided financial information and projections about BSC to Wilmington Trust.

All ERISA plans must "be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). In accordance with that statutory requirement, a plan document sets forth the structure of the BSC ESOP. ERISA plans must

also "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). The plan document gave BSC "the right to amend the [ESOP] from time to time in its sole discretion," subject to restrictions not relevant here. Appendix ("App.") 144. BSC also reserved the right to terminate the ESOP at any time.

The ESOP purchased $50 million in BSC stock from Sass, Croft, and others in 2016. That purchase was mainly funded by a note payable to BSC. BSC stock was not (and is not) publicly traded, so Wilmington Trust had to value the stock before the ESOP could purchase it. Henry contends that Wilmington Trust breached its fiduciary duty to the ESOP by incurring debt to purchase BSC stock at an inflated price. Henry alleges that the price was excessive given the relative weakness of BSC's business model and the fair market value of the stock. He also contends that Wilmington Trust improperly relied on flawed financial projections provided by self-interested executives Sass and Croft to justify the transaction.

BSC amended the plan document in 2017 to include an arbitration provision. In relevant part, this arbitration provision required that any "claims for breach of fiduciary duty" be "resolved exclusively by binding arbitration."[1] App. 159. The arbitration provision also included a class action waiver. That class action waiver stipulated that claims against the ESOP "must be brought solely [in an] individual capacity and not in a representative capacity or on a class, collective, or group basis." App. 160. It further prohibited a claimant from "seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to anyone other than the claimant. Id. The class action waiver was expressly nonseverable from the rest of the arbitration provision: "[i]n the event a court of competent jurisdiction were to find [the class action waiver's] requirements to be unenforceable or invalid, then the entire [a]rbitration [p]rocedure ... shall be rendered null and void in all respects." App. 160–61.

[1] BSC again amended the arbitration provision in 2019. The 2019 changes are immaterial to this appeal.

*2 Henry filed suit in the United States District Court for the District of Delaware on October 10, 2019. Suing on behalf of a putative class of ESOP participants, he sought several forms of relief, including a declaratory judgment that the defendants breached their fiduciary duties, a declaratory judgment that an indemnification agreement between Wilmington Trust and BSC violates ERISA, disgorgement, attorneys' fees, and "other appropriate equitable relief to the [ESOP] and its participants and beneficiaries." App. 60.

The defendants moved to dismiss in December 2019, arguing that Henry lacked Article III standing to bring his ERISA claims[2] and that, even if he had standing, Henry failed to state a claim for relief because the plan document required him to pursue his claims in arbitration. Henry opposed the motion to dismiss, arguing that the arbitration clause was invalid because it was added unilaterally and he had not consented to it. Henry also argued that the class action waiver — and, because of the nonseverability provision, the arbitration clause as a whole — was invalid because it required him to waive his rights to pursue plan-wide relief authorized by ERISA.[3] After oral argument on the motion, the parties filed supplemental briefing on whether the class action waiver was invalid because it required him to waive his right to pursue plan-wide relief.

[2] The District Court rejected this standing argument. The defendants do not press it on appeal.

[3] Henry does not appear to contest that the ESOP included the amendment procedure required by 29 U.S.C. § 1102(b)(3), nor does he appear to contest that BSC complied with the ESOP's amendment procedure when it added the arbitration provision.

The District Court denied the motion to dismiss. It concluded that it could not dismiss Henry's complaint in favor of arbitration because all parties to an arbitration agreement must manifest assent to the agreement, and Henry had not manifested his assent to BSC's addition of an arbitration provision to the ESOP plan document. Because it disposed of the motion by concluding that Henry had not consented to adding the arbitration clause, the District Court only briefly addressed the class action waiver issue in a footnote. It expressed skepticism that Henry could succeed on that issue. The District Court suggested that only a "clear and express command by Congress that an arbitration provision requiring a class action waiver is void" could establish the invalidity of the class action waiver and indicated that, in its view, the

relevant remedial provisions of ERISA did not amount to the requisite clear statement by Congress. App. 15 n.9 (citing Epic Sys. Corp. v. Lewis, ––– U.S. ––––, 138 S.Ct. 1612, 1628, 200 L.Ed.2d 889 (2018)). The defendants timely appealed.

II.

As a threshold matter, Henry argues that we lack appellate jurisdiction to review the District Court's order denying the defendants' motion to dismiss.[4] "[W]e have an obligation to assure ourselves that jurisdiction exists," Ellison v. Am. Bd. of Orthopaedic Surgery, 11 F.4th 200, 205 (3d Cir. 2021), so we must address Henry's jurisdictional challenge before we may turn to the merits of this appeal. We have jurisdiction to review our own jurisdiction when it is in doubt. Duncan v. Governor of Virgin Islands, 48 F.4th 195, 203 n.6 (3d Cir. 2022).

[4] Because this ERISA case is a "civil action[ ] arising under the ... laws ... of the United States," the District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

The Federal Arbitration Act ("FAA") authorizes us to exercise jurisdiction in appeals "from ... order[s] ... denying a petition [under 9 U.S.C. § 4] to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B). But, as Henry notes, the defendants did not bring a petition to order arbitration to proceed under 9 U.S.C. § 4: they brought a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[5] The ultimate relief sought — a court order declining to adjudicate Henry's claims because an agreement requires that those claims be heard in an arbitral forum — is substantively similar across these two categories of motion. The text of the FAA, however, refers only to motions to compel arbitration. As we have acknowledged, "linguistically, a motion to dismiss ... is a far cry from a motion to compel arbitration." Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 349 (3d Cir. 1997) (quotation marks omitted). And if we cannot rely on 9 U.S.C. § 16(a)(1)(B) as a basis for appellate jurisdiction, we must face the question of whether we have jurisdiction to review the District Court's order denying the defendants' motion to dismiss. Indeed, in most cases, we do not have appellate jurisdiction to review district court orders denying motions to dismiss. This is because our statutory jurisdiction is limited to "appeals from ... final decisions of the district courts of the United States." 28 U.S.C. § 1291. An order denying a motion to dismiss is not a final decision because it does not "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment." Weber v. McGrogan, 939 F.3d 232, 236 (3d Cir. 2019) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

[5] In this case, the defendants could not have enforced the arbitration provision through the procedure set forth in 9 U.S.C. § 4. We have held that 9 U.S.C. § 4 does not permit a district court to enter an order compelling arbitration outside the district where it sits. Econo-Car Int'l., Inc. v. Antilles Car Rentals, Inc., 499 F.2d 1391, 1394 (3d Cir. 1974). Henry brought his lawsuit in Delaware and the arbitration provision requires arbitration to occur in Roanoke, Virginia. The District Court therefore could not have granted a 9 U.S.C. § 4 petition to compel arbitration in this case. Accordingly, a Rule 12(b)(6) motion to dismiss was the appropriate procedural mechanism for enforcing the arbitration provision at issue in this litigation. See Singh v. Uber Techs. Inc., 939 F.3d 210, 214 (3d Cir. 2019) ("[The defendant] moved for the District Court to dismiss the case and compel [the plaintiff] to have it decided by an arbitrator, on the basis of an agreement to arbitrate.").

*3 Although there is some textual appeal to Henry's argument that we have appellate jurisdiction to review only denials of motions styled as petitions to compel arbitration under 9 U.S.C. § 4 — and not denials of other motions that have the effect of declining to enforce an arbitration agreement — that argument departs from our precedent. We have consistently held that under 9 U.S.C. § 16(a), "all orders that have the effect of declining to compel arbitration [are] reviewable." Palcko v. Airborne Express, Inc., 372 F.3d 588, 592 (3d Cir. 2004) (quoting Sandvik AB v. Advent Intern. Corp., 220 F.3d 99, 103 (3d Cir. 2000)). The substance of the motion and order, and not its form, determines its appealability. To determine whether an order is one that, in substance, declines to compel arbitration, "we examine the label and the operative terms of the district court's order, as well as the caption and relief requested in the underlying motion." Devon Robotics,

LLC v. DeViedma, 798 F.3d 136, 146–47 (3d Cir. 2015). If we determine "that the order denied a motion to compel arbitration, then we will exercise jurisdiction even if that order is not final." Bacon v. Avis Budget Grp., Inc., 959 F.3d 590, 597 (3d Cir. 2020) (concluding that the denial of a motion for summary judgment was immediately appealable when the motion was, in substance, a motion to compel arbitration).

In this case, the defendants' motion to dismiss was substantively a motion to compel arbitration, and the District Court's order denying the motion to dismiss was substantively an order denying a motion to compel arbitration. While the defendants' motion to dismiss was not captioned as a motion to compel arbitration, much of their brief in support of their motion to dismiss focused on why Henry's claims were subject to arbitration. The brief explained that the defendants were pursuing a motion to dismiss rather than a motion to compel arbitration because the Delaware-based District Court could not compel arbitration in Virginia as the arbitration provision required. The District Court's order denying the motion to dismiss acknowledged that the defendants' motion to dismiss was "pursuant to a mandatory arbitration clause." App. 20. These documents make clear that the motion to dismiss before the District Court was effectively a motion to compel arbitration. And since the motion to dismiss was in substance a motion to compel arbitration, 9 U.S.C. § 16(a) gives us appellate jurisdiction to review the denial of that motion to dismiss.

### III.

Having confirmed our jurisdiction, we turn to the merits.[6] The defendants argue that the District Court erred in concluding that the arbitration provision was unenforceable because Henry did not consent to it. Henry disagrees, but also argues on appeal that the class action waiver (and, by extension, the arbitration provision as a whole) is not enforceable because it requires him to waive statutory rights and remedies guaranteed by ERISA. We need address only the latter issue — whether the class action waiver amounts to an illegal waiver of statutory remedies — to resolve this appeal.[7] We agree with Henry that the class action waiver is unenforceable because it requires him to waive statutory remedies.[8] And because the class action waiver is expressly nonseverable from the rest of the arbitration provision, we will affirm the District Court's order declining to enforce the arbitration provision.

[6] Since the questions presented in this appeal involve "the validity and enforceability of an agreement to arbitrate," our review is plenary. Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 177 (3d Cir. 2010).

[7] Although the District Court focused on the issue of Henry's consent, "we may affirm on any basis supported by the record, even if it departs from the District Court's rationale." Bedrosian v. United States Dep't of Treasury, Internal Revenue Serv., 42 F.4th 174, 185 (3d Cir. 2022) (quotation marks omitted). We express no position on whether, and under what circumstances, an ERISA plan participant must consent to the addition of an arbitration provision to an ERISA plan document before the plan participant may be bound by it.

[8] We have held that ERISA claims are arbitrable, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1116 (3d Cir. 1993), and this opinion does not undermine that holding. We solely address the question of whether an arbitration clause in an ERISA plan document may prevent a plan participant from pursuing the full range of statutory remedies created by ERISA.

### A.

**\*4** The FAA creates a "liberal federal policy favoring arbitration agreements." Epic Sys. Corp., 138 S. Ct. at 1621 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). But despite this federal policy, arbitration agreements are not enforceable in some cases. One such circumstance is when an arbitration provision functions as a "prospective waiver of a party's right to pursue statutory remedies." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 236, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (emphasis and quotation marks omitted). "Put differently, while arbitration may be a forum to resolve disputes, an agreement to resolve disputes in that forum will be enforced only when a litigant can pursue his statutory rights there." Williams v. Medley Opportunity Fund II, LP, 965 F.3d

229, 238 (3d Cir. 2020) (citations omitted). If an arbitration provision prohibits a litigant from pursuing his statutory rights in the arbitral forum, the arbitration provision operates as a forbidden prospective waiver and is not enforceable. Id.

Henry alleged that the defendants engaged in prohibited transactions and breached their fiduciary duties, in violation of ERISA. ERISA authorizes plan participants to bring suit to remedy breaches of fiduciary duties. 29 U.S.C. § 1132(a)(2). "[A]ctions for breach of fiduciary duty" under § 1132(a) are "brought in a representative capacity on behalf of the plan as a whole." Massachusetts Mut. Life. Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985). The statute also expressly authorizes certain remedies for violations. For instance, ERISA provides that a fiduciary who "breaches any" of his "responsibilities, obligations, or duties" to a plan "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). A court may also order "such other equitable or remedial relief as the court may deem appropriate." Id. That relief may include "removal of [the] fiduciary." Id.

The class action waiver here purports to waive plan participants' rights to seek remedies expressly authorized by statute. Recall that the class action waiver claims to prohibit ESOP participants from bringing a lawsuit that "seek[s] or receive[s] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to any third party. App. 160. But § 1109(a) expressly allows ERISA plan participants to seek such relief. For example, § 1109(a) allows a plan participant to bring a lawsuit seeking removal of a plan fiduciary. Such relief necessarily has plan-wide effect: it is impossible for a court or arbitrator to order a plan's fiduciary removed only for the litigant, while leaving the plan's fiduciary in place for all other participants. See Smith v. Bd. of Directors of Triad Mfg., Inc., 13 F.4th 613, 621–22 (7th Cir. 2021). Or take the clause of § 1109(a) that authorizes a plan member to seek restitution of plan losses from a fiduciary. That provision does not limit restitution to the plaintiff's losses: it "permit[s] recovery of all plan losses caused by a fiduciary breach." LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 261, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008) (Thomas, J., concurring) (emphasis in original). Restitution of "all plan losses" would necessarily result in monetary relief to non-party plan participants. Yet the class action waiver purports to prohibit plan participants from bringing claims that have the "purpose or effect" of providing "monetary ... relief" to third parties. App. 160.

Because the class action waiver purports to prohibit statutorily authorized remedies, the class action waiver and the statute cannot be reconciled. "[W]hat the statute permits, the plan precludes." Smith, 13 F.4th at 621. And when a provision of an arbitration clause purports to waive rights that a statute creates, it is a prohibited prospective waiver, and the provision must give way to the statute. In short, the class action waiver in this case cannot be enforced.[9] Williams, 965 F.3d at 238.

[9] We note that two other Courts of Appeals have addressed the validity of similar or identical waiver provisions in ERISA plan documents, and both have concluded that the provisions are invalid because they purport to waive the right to pursue forms of relief expressly authorized by ERISA. See Harrison v. Envision Mgmt. Holding, Inc., 59 F.4th 1090, 1108–09 (10th Cir. 2023); Smith, 13 F.4th at 621–22.

*5 The defendants argue that the prospective waiver doctrine does not bar enforcement of the class action waiver because Henry's complaint seeks only monetary remedies that can be logically constrained to Henry alone, rather than equitable remedies that are necessarily plan-wide. Not so. It is true that, as the defendants note, Henry's complaint does not explicitly request removal of Wilmington Trust as the plan fiduciary. But Henry's complaint asks the District Court to "[o]rder ... appropriate equitable relief to the Plan and its participants and beneficiaries," App. 60, and ERISA explicitly identifies "removal of [the] fiduciary" as a form of inherently plan-wide relief that a "court may deem appropriate" in a breach of fiduciary duty case, 29 U.S.C. § 1109(a). And even if Henry's complaint is not properly construed as seeking removal of the fiduciary, it unmistakably seeks other forms of relief (such as restitution) that are both expressly authorized by statute and necessarily plan-wide.

The defendants finally argue that the class action waiver does not entirely eviscerate the possibility of plan-wide equitable remedies under ERISA, because even if a plan participant may not seek those remedies, the Department of Labor is not similarly constrained by the class action waiver and is

statutorily authorized to bring suit against the ESOP for plan-wide relief. While ERISA does authorize the Department of Labor to seek relief for breaches of fiduciary duty by ERISA plan fiduciaries, it also expressly authorizes plan "participant[s] [and] beneficiar[ies]" to seek the remedies enumerated in § 1109(a). 29 U.S.C. § 1132(a)(2). The class action waiver requires ESOP participants to waive their statutory right to pursue statutorily authorized remedies. It is therefore unenforceable even if it permits the Department of Labor to pursue those remedies on behalf of the ESOP's participants.

B.

Having concluded that the class action waiver clause of the arbitration provision is an unenforceable prospective waiver of Henry's ERISA rights, we also must determine whether the remaining portion of the arbitration provision is enforceable in the absence of the class action waiver. It is not. The class action waiver is explicitly nonseverable from the rest of the arbitration provision, and the defendants have conceded that the entire arbitration provision must fall with the class action waiver. Oral Argument at 16:10. Because the arbitration provision is void in its entirety, we will affirm the District Court's order declining to enforce it.

IV.

For the foregoing reasons, we will affirm the order of the District Court.

**All Citations**

--- F.4th ----, 2023 WL 4281813

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.