IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON COLEMAN and JESSICA CASEY on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:20-CV-01358-E |
| NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, MIKE PAXTON NICK BOURAS, STERLING INVESTMENT PARTNERS III, L.P., NICOLE PETERSON 2012 IRREVOCABLE TRUST, and BROOKE PETERSON 2012 IRREVOCABLE TRUST, | § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Neil M. Brozen, Robert Peterson, Jr., Vasilia Peterson, Mike Paxton, Nick Bouras, Sterling Investment Partners III, L.P., the Nichole Peterson 2012 Irrevocable Trust, and the Brooke Peterson 2012 Irrevocable Trust's (collectively, "Defendants") Motion to Compel Individual Arbitration (the "Motion to Compel"). (ECF No. 66). Having considered the motion, the response, reply, the parties' respective notices of supplemental authority and responses thereto, the relevant portions of the record, and the relevant law, the Court concludes that the Motion to Compel should be, and therefore is, **DENIED.**

# I. BACKGROUND

## A.    Factual and Procedural Background

This case arises from disputes involving an employee stock ownership plan. Plaintiffs Jason Coleman and Jessica Casey (collectively, "Plaintiffs") are former participants in the RVNB Holdings, Inc. Employee Stock Ownership Plan and initiated this litigation individually and on behalf of a class[1] alleging various violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The factual background detailed below is taken from Plaintiffs' First Amended Complaint. (ECF No. 33).

Plaintiffs are former employees of All My Sons Moving & Storage ("All My Sons"), which was founded in 1993 by Defendant Robert Peterson, Jr. ("Mr. Peterson") and his wife Defendant Vasilia Peterson ("Mrs. Peterson") (collectively, "the Petersons"). At all relevant times, All My Sons was a privately held company. According to the First Amended Complaint, RVNB Holdings, Inc. ("RVNB") was formed as a holding company in March 2012 to purchase 100% of the stockholders' ownership interests in All My Sons. Plaintiffs allege that RVNB then formed the RVNB Holdings, Inc. Employee Stock Ownership Plan (the "Plan")—a defined contribution plan designed to invest in RVNB stock. RVNB adopted the Plan effective October 1, 2012. In December 2012, the Plan purchased from the Petersons—who were parties in interest to the Plan— 100% of the outstanding RVNB stock for $85,000,000. Upon close of the sale of the RVNB stock, RVNB became an employee-owned company. During the period in which it owned RVNB, the Plan's only investment was in RVNB's common stock. As a defined contribution plan and an individual account plan, a separate account was established for each participant.

The Plan named RVNB as the Administrator and a "Named Fiduciary." (ECF No. 67, pg.

---

[1] No class certification has occurred, at this time.

89: 2012 Plan: § 12-1). Accordingly, as members of the RVNB Board of Directors, Mr. Peterson, Mrs. Peterson, and Defendant Mike Paxton ("Paxton") (the Petersons and Paxton collectively, the "Board Defendants") were fiduciaries of the Plan. Plaintiffs also allege that Defendant Nick Bouras ("Bouras")—the Chief Financial Officer of RVNB—was a fiduciary of the Plan because he was one of the persons exercising RVNB's role as Administrator of the Plan. The Plan initially named Reliant Trust Company as its trustee; however, RVNB appointed Argent Trust Company ("Argent") as Plan trustee in 2014. Eventually, the Board Defendants appointed Defendant Neil M. Brozen ("Brozen") as Plan trustee on June 29, 2017, replacing Argent.

Plaintiffs allege the Petersons formed the Plan in 2012 with no intention of sustaining the Plan, but rather using it as a vehicle to reap tax benefits from an eventual sale of RVNB to a private equity group. Plaintiffs allege the Board Defendants and Bouras violated their fiduciary duty to the Plan by causing the Plan to receive less than fair market value for its shares of RVNB. Plaintiffs allege that the Board Defendants appointed a compliant trustee—Brozen—to bless the termination of the Plan in 2017[2] and sell the Plan's RVNB shares back to the company. Plaintiffs allege the Board Defendants and Bouras did this so RVNB could sell substantially all of RVNB's assets to the private equity group Defendant Sterling Investment Partners III, L.P., ("SIP"), through SIP's affiliate company Residential Logistic Solutions ("RLS"). Plaintiffs allege RVNB officers and SIP partners formed RLS to serve as a conduit for SIP's later acquisition of RVNB. Plaintiffs allege:

---

[2] On June 29, 2017, RVNB adopted the 2017 Terminating Amendments to the Plan, terminating the Plan. (ECF No. 67, pg. 41: Decl. of Nick Bouras, ¶ 6; ECF No. 67, pgs. 106-115: Unanimous Written Consent of the Directors of RVNB Holdings, Inc.). Upon termination of the Plan, participants became 100% vested in their company stock and other investment accounts in the Plan. (ECF No. 67, pg. 102: Terminating Amendments, ¶ 3). Under the terms of the Terminating Amendments, while Plan participants were 100% vested upon termination, they could only receive a 50% distribution of their vested interest in their Plan accounts until the issuance of a favorable determination letter from the Internal Revenue Service ("IRS") ruling on the termination of the Plan and the Plan document. (ECF No. 67, pg. 102-103: Terminating Amendments, ¶ 4). Although the Plan was terminated effective June 29, 2017, it remained in existence as a legal entity until after the IRS issued its favorable determination letter in May 2019; all remaining assets of the Plan were distributed during the second half of 2019. (ECF No. 67, pgs. 118: Mar. 2020 Decl. of Robert Peterson, ¶ 6).

(1) RVNB sold its assets to SIP—through RLS—for substantially more than what the Plan received for those assets; and (2) the Board Defendants intentionally "usurp[ed] the Plan's opportunity to sell RVNB directly to [SIP] and profit therefrom." (ECF No. 33, pg. 5, ¶ 12).

Finally, Plaintiffs allege that, after RVNB sold all of its assets to SIP, RVNB became a shell company and the Petersons merged it into RVNB Holdings, LLC ("the LLC")—a Delaware limited liability company formed in 2012. Plaintiffs allege that the LLC has just four members: Mr. Peterson, Mrs. Peterson, the Nichole Peterson 2012 Irrevocable Trust, and the Brooke Peterson 2012 Irrevocable Trust (the trusts together, "the Peterson Trusts"). Plaintiffs allege Mrs. Peterson has the power and authority to direct the actions of the Peterson Trusts with respect to the governance and operation of the LLC. According to the First Amended Complaint, once RVNB was merged into the LLC, the Plan had a new plan sponsor—the LLC—and a new Employer Identification Number. Plaintiffs allege that no members of the alleged class were ever employed by the LLC and the LLC had no employees at any relevant time.

After amendments to the Parties' agreements discussed in the next section, Plaintiffs filed this suit in the United States District Court for the Eastern District of Texas on September 27, 2019. (*See* ECF No. 1). Plaintiffs assert various causes of action under ERISA against Brozen, the Petersons, Paxton, Bouras, SIP, and the Peterson Trusts (collectively, "Defendants"). On May 6, 2020, this case was transferred to this Court pursuant to a forum-selection clause. (ECF No. 49). On June 22, 2020, Defendants moved to compel individual arbitration of Plaintiffs' ERISA claims.

**B.    The Arbitration Procedure and the Motion to Compel**

On May 18, 2018, the four members of the LLC—Mr. Person, Mrs. Peterson on behalf of herself, and Mrs. Peterson on behalf of the two Peterson Trusts—unanimously adopted an amendment to the Plan (the "2018 Amendment"). (ECF No. 67, pg. 5: June 2020 Decl. of Robert

Peterson, ¶¶ 4-7). The 2018 Amendment included, among other things, a forum-selection clause selecting this Court[3] and a "Mandatory and Binding Arbitration Procedure" (the "Arbitration Procedure"). Defendants have moved to compel individual arbitration pursuant to the Arbitration Procedure, the relevant portions of which are excerpted below:

> **Section A-2 - Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"):** As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (iii) any Employee, Participant, or Beneficiary receiving any benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims. . . .

(ECF No. 67, pgs. 8: 2018 Amendment: § A-2). The Arbitration Procedure provides that any "Covered Claims," as defined by the Arbitration Procedure, "shall be settled by binding arbitration." (ECF No. 67, pg. 8: 2018 Amendment, § A-2(a)). The Arbitration Procedure includes a section entitled "No Group, Class, or Representative Arbitrations." (the "Class Action Waiver"). The Class Action Waiver states:

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any employee, participant or beneficiary other than the Claimant, and is not binding on the Plan Administrator or Trustee with respect to any employee, participant or beneficiary other than the Claimant. The requirement that (x) all

---

[3] This case was transferred to this Court from the Eastern District of Texas pursuant to the forum-selection clause in the 2018 Amendment. (*See* ECF No. 49).

Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section A-2, Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section A-6, then the entire Arbitration Procedure (i.e., all of this Section A-2) shall be rendered null and void in all respects. Except as to the applicability and enforceability of the foregoing Class Action Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the existence, scope, validity, enforceability, or performance of this Arbitration Procedure or any of its provisions. Any dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined solely by the court specified in Section A-6. Moreover, nothing in this Arbitration Procedure shall preclude a party from seeking interim or provisional relief or remedies in aid of arbitration from the court specified in Section A-6.

(ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)) (emphasis in original).

Defendants seek to compel Plaintiffs to individually arbitrate their claims pursuant to the Arbitration Procedure and the Class Action Waiver. Plaintiffs oppose individual arbitration on several grounds. First, Plaintiffs argue there is no agreement to arbitrate because: (1) they did not assent to the 2018 Amendment and the Arbitration Procedure contained therein; and (2) the Arbitration Procedure fails for lack of consideration and mutuality. (ECF No. 70, pgs. 15-21). Next, Plaintiffs argue that—even if an arbitration agreement was formed—the Arbitration Procedure is invalid because it conflicts with certain substantive rights, remedies, and standards under ERISA. (ECF No. 70, pgs. 21-35). Specifically, Plaintiffs assert the Class Action Waiver: (1) violates ERISA's anti-cutback rule embodied in ERISA § 204(g), 29 U.S.C. § 1054(g)(1); (2) operates as an unlawful exculpatory provision under ERISA § 410(a), 29 U.S.C. § 1110; (3) prevents the effective vindication of their right to seek Plan-wide relief under ERISA § 502(a), 29 U.S.C. § 1132(a), and § 409, 29 U.S.C. § 1109; (4) alters the standard of review used to review fiduciary actions in arbitration in violation of ERISA § 404(a), 29 U.S.C. 1104(a); and (5)

improperly shifts attorneys' fees in violation of ERISA § 502(g), 29 U.S.C. § 1132(g).

## II. LEGAL STANDARD

### A. The Federal Arbitration Act

The Federal Arbitration Act (FAA) provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute does not permit a trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To assess whether a claim must be arbitrated, the Court conducts a two-step analysis. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019); *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The first step is contract formation—whether the parties entered into *any arbitration agreement at all. Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *see Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citations omitted). If the answer is yes, the Court proceeds to the second step. *Lloyd's Syndicate*, 921 F.3d at 514. The second step involves contract interpretation to determine whether a plaintiff's claim is covered by the arbitration agreement. *Kubala*, 830 F.3d at 201. Ordinarily both steps are questions for the court. *Kubala*, 830 F.3d at 201 (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Courts apply "the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but we do not apply this policy when determining whether a valid agreement exists." *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citing *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073–74 & n. 5 (5th Cir.2002)). In light of the strong federal policy favoring arbitration, "the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

**B.    Delegation Clauses**

When an agreement to arbitrate "contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 202 (citing *First Options*, 514 U.S. at 942 (1995)). "Delegation clauses are enforceable and transfer [a] court's power to decide arbitrability questions to the arbitrator." *Kubala*, 830 F.3d at 202. "[A] valid delegation clause requires the court to refer a claim to the arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202 (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

"[I]f the party seeking arbitration points to a purported delegation clause, the court's analysis is limited." *Kubala*, 830 F.3d at 202. As the Fifth Circuit has explained:

> [The Court] performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

---

MEMORANDUM OPINION AND ORDER                                    Page **8** of **32**

*Kubala*, 830 F.3d at 202 (emphasis added).[4] The Fifth Circuit has further explained that "absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir, 2018) (footnote omitted); *see, e.g.*, *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *2 (5th Cir. Aug. 6, 2021) (discussing the same).

## C.     The Effective Vindication Exception

The Supreme Court has recognized an "'effective vindication' exception" to the enforcement of otherwise valid arbitration agreements under the Federal Arbitration Act. *See Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235 (2013). This exception, which rests on public policy grounds, "finds in its origins the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies[.]'" *Id.* at 236 (emphasis in original) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985)). The question of whether the effective vindication exception applies rests on whether a "prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Id.* at 235 (citation and internal quotation marks omitted). The Supreme Court has said this exception would "certainly" apply when a "provision in an arbitration agreement forbid[s] the assertion of certain statutory rights." *Id.* at 236.

"Although the Supreme Court has repeatedly recognized the existence of the effective vindication exception, it has, to date, declined to actually apply the exception to any case before

---

[4] In determining whether parties entered into an agreement to arbitrate, courts must "distinguish between [(i)] 'validity' or 'enforceability' challenges and [(ii)] 'formation' or 'existence' challenges." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (some internal quotation marks omitted) (quoting *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)).

it." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1098 (10th Cir. 2023) (collecting cases).[5] However, several federal courts have recently invalidated arbitration provisions contained in ERISA employee stock ownership plans under the effective vindication exception because those plans' arbitration language prohibited participants from seeking or obtaining plan-wide relief under ERISA §§ 409(a) and 502(a)(2). *See Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, No. 21-2801, 2023 WL 4281813, at *4-5 (3d Cir. June 30, 2023) (invalidating a defined contribution plan's arbitration agreement that "prohibited a claimant from 'seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief' to anyone other than the claimant" under the effective vindication exception) (quoting arbitration language) (alterations in original); *Harrison*, 59 F.4th at 1107-09 (same); *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 620-623 (7th Cir. 2021) (same); *Cedeno v. Argent Trust Co.*, No. 20-cv-9987, 2021 WL 5087898, at 4-6 (S.D.N.Y. Nov. 2, 2021) (same); *Burnett v. Prudent Fiduciary Servs. LLC*, No. CV 22-270-RGA-JLH, 2023 WL 387586, at *6 (D. Del. Jan. 25, 2023), *report and recommendation adopted sub nom. Burnett v. Prudent Fiduciary Serv.*, LLC, No. CV 22-270-RGA, 2023 WL 2401707 (D. Del. Mar. 8, 2023) (same); *Lloyd v. Argent Tr. Co.*, No. 22CV4129 (DLC), 2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022) (same).

---

[5] *See, e.g.*, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 99 (2012) (declining to hold an arbitration agreement prevented the effective vindication of statutory rights under the Credit Repair Organizations Act because the law's disclosure and nonwaiver provisions did not create a right to sue); *Italian Colors*, 570 U.S. at 235 (recognizing the exception but declining to apply it in the context of the Sherman Antitrust Act where plaintiffs argued that an arbitration agreement's class action waiver resulted in there being "no economic incentive [for plaintiffs] to pursue their antitrust claim individually in arbitration"); *Epic Systems Corp. v. Lewis*, — U.S. —, 138 S.Ct. 1612, 1624-25 (2018) (declining to invalidate an arbitration agreement's class action waiver because the National Labor Relation Act's guarantee of workers' right to engage in concerted activities for the purpose of collective bargaining does not reflect a clearly expressed and manifest congressional intention to displace the FAA and outlaw class and collective action waivers); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (declining to invalidate an agreement to arbitrate statutory claims under the Age Discrimination in Employment Act).

---

### III.  ANALYSIS

In opposing the motion to compel arbitration, Plaintiffs first argue that there is no agreement to arbitrate because they did not assent to the 2018 Plan Amendment and the Arbitration Procedure contained therein. Second, Plaintiffs argue that the Arbitration Procedure unenforceable because its Class Action Waiver prevents the effective vindication of their rights under ERISA. Third, Plaintiffs argue that the Class Action Waiver is not severable from the Arbitration Procedure as a whole.

Upon careful consideration of the Motion to Compel, the briefings, the relevant portions of the record, and the law, the Court concludes that the Class Action Waiver: (1) commits the question of its enforceability to this Court and not the arbitrator; (2) prevents the effective vindication of Plaintiffs' statutory right to seek plan-wide relief under ERISA §§ 502(a)(2) and 409; and (3) is not severable from the overall Arbitration Procedure. For the reasons discussed below, the Court concludes the Arbitration Procedure is unenforceable and **DENIES** the Motion to Compel. Having so concluded, the Court pretermits consideration of Plaintiffs' remaining arguments as to whether: (1) Plaintiffs assented to the Arbitration Procedure; and (2) the Class Action Waiver prevents the effective vindication of Plaintiffs' other statutory rights.

### A.   The Arbitration Procedure Commits the Question of the Enforceability of the Class Action Waiver to this Court

The Court concludes the Arbitration Procedure commits the question of the validity and enforceability of its Class Action Waiver to this Court. Defendants argue the Class Action Waiver contains a delegation clause that commits the question of whether the Class Action Waiver is enforceable to the arbitrator. "The Supreme Court ha[s] recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Reyna v. Int'l Bank of Com.*, 839 F.3d

373, 378 (5th Cir. 2016) (some internal quotation marks omitted) (quoting *Rent-A-Center*, 561

U.S. at 68-69). While Defendants are correct that the Arbitration Procedure contains a delegation

clause, that delegation clause excludes the issue of the Class Action Waiver's enforceability and

commits that issue to this Court.

In arguing that the question of the Class Action's Waiver enforceability is delegated to the

arbitrator, Defendants cite to a portion of the Arbitration Procedure that provides:

> Except as to the applicability and enforceability of the foregoing Class Action
> Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or
> issue of arbitrability with respect to this Arbitration Procedure, including as to the
> jurisdiction of the arbitrator(s) or relating to the existence, scope, validity,
> enforceability, or performance of this Arbitration Procedure or any of its provisions.

(ECF No. 71, pg. 7 n. 5) (citing ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)). Defendants fail

to cite, however, the very next sentence of the Class Action Waiver, which provides that "[a]ny

dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined

solely by the court specified in Section A-6." (ECF No. 67, pgs. 8-10: 2018 Amendment: § A-

2(b)). Section A-6 of the 2018 Amendment specifically identifies this Court as the forum of choice

for challenges to the legal enforceability of the Arbitration Procedure. (ECF No. 67, pg. 13: 2018

Amendment: § A-6)[6]. Thus, the terms of the Arbitration Procedure (1) separates the issue of the

Class Action Waiver's enforceability from its delegation clause and (2) reserves that issue for this

Court.

The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt

Info. Sciences, Inc. v. Bd. of Trustees of Leland Standford Univ.*, 489 U.S. 468, 476 (1989). Instead,

the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other

---

[6] Section A-6 states that, "[t]o the extent . . . any Claimant fails or refuses to comply with the Arbitration Procedure
[or] wishes to challenge the legal enforceability of the Arbitration Procedure, . . . such action or challenge shall be
filed exclusively in the United States District Court for the Northern District of Texas." (ECF No. 67, pg. 13: 2018
Amendment: § A-6).

---

contracts, in accordance with their terms." *Id.* Here, *inter alia*, Plaintiffs challenge the validity and enforceability of the Class Action Waiver on the grounds that it prevents the effective vindication of their statutory rights under ERISA. The Class Action Waiver commits that issue to this Court. As a consequence of the Court's conclusion above, the Court next addresses this challenge.

**B.     The Arbitration Procedure Prevents the Effective Vindication of Plaintiffs' Statutory Rights under ERISA § 502(a)(2)**

Having concluded the Arbitration Procedure commits the question of the Class Action Waiver's validity to this Court, the Court next considers whether the Class Action Waiver prevents the effective vindication of Plaintiffs' statutory rights under ERISA §§ 502(a)(2) and 409(a). The Court considers this question in two parts: (1) whether Plaintiffs have a statutory right to seek Plan-wide relief; and, if so, (2) whether the Arbitration Procedure prevents the effective vindication of that right.

*1.     Whether Plaintiffs' Have a Statutory Right to Seek Plan-Wide Relief under ERISA §§ 502(a)(2) and 409(a)*

ERISA § 502(a)(2) provides that a civil action may be brought "by the Secretary [of Labor], or by a participant, beneficiary[,] or fiduciary for appropriate relief under [ERISA § 409]." 29 U.S.C. § 1132(a)(2). Section 409(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter **shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits** of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall **be subject to such other equitable or remedial relief as the court may deem appropriate**, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added). Plaintiffs' claims implicate § 502(a)(2) and seek plan-wide relief under § 409(a). Plaintiffs allege, *inter alia*, that Brozen, the Board Defendants, and Bouras violated their fiduciary duties to the Plan under ERISA § 404(a), 29 U.S.C. § 1104(a). (ECF No.

---

33, pgs. 22-24). *Inter alia* and as pleaded, Plaintiffs seek relief from the Court requiring Brozen, the Board Defendants, and Bouras: (1) "to make good to the Plan and/or any successor trust(s) the losses resulting from their breach of ERISA and restore any profits they have made through the use of assets of the Plan;" and (2) "provide other appropriate equitable relief to the Plan and its participants and beneficiaries," including surcharge, an accounting of profits, the imposition of a constructive trust, and an equitable lien on any funds wrongfully held by the defendants. (ECF No. 33, pg. 32). Plaintiffs also seek an order from the Court allocating the recovered Plan losses to the individual accounts of the putative class members in order to make them whole for any injury suffered as a result of the fiduciary breaches of Brozen, the Board Defendants, and Bouras. (ECF No. 33, pg. 32). As pleaded, Plaintiffs have invoked ERISA § 502(a)(2) and § 409(a) to recover losses to the entire Plan—not only the losses to their individual account(s).

Plaintiffs argue the Class Action Waiver is void because it prevents the effective vindication of their right to such Plan-wide relief. Defendants argue that the Class Action Waiver does not preclude Plaintiffs from suing in a "representational" capacity on behalf of the Plan. (ECF No. 71, pg. 9). Defendants assert "[t]he representational nature of the ERISA fiduciary breach claims, however, does not mean that Plaintiffs are entitled to litigate on behalf of other Plan participants or other Plan participants' accounts." (ECF No. 71, pg. 9). Defendants contend that the Class Action Waiver is not unlawful because "nothing in ERISA entitles Plaintiffs' to litigate on behalf of class participants." (ECF No. 71, pg. 9). Moreover, Defendants argue that the Class Action Waiver "does not preclude the recovery of 'any losses' to the Plan," but rather requires Plaintiffs to "pursue alleged claims on behalf of themselves and not on a class or collective bases." (ECF No. 71, pgs. 9-10).

However, whether the Class Action Waiver prohibits class arbitration procedures is not the

issue here. Instead, as discussed below, the determinative issue is whether the Class Action Waiver prohibits Plaintiffs from pursuing Plan-wide relief in arbitration. Defendants assert that ERISA § 502(a)(2) claims are not "inherently representative" in the context of defined contribution plans. (ECF No. 94, pg. 4; ECF No. 126, pg. 2). Defendants contend that individual participants in a defined contribution plan may seek relief under ERISA § 502(a)(2) for fiduciary breaches that impair the value of plan assets solely in a participant's individual account. (ECF No. 94, pg. 4; ECF No. 126, pg. 2). Thus, according to Defendants, participants in a defined contribution plan only have an ERISA-recognized interest in their own individual accounts under § 502(a)(2), not in the entire plan. (ECF No. 94, pg. 4-5; ECF No. 126, pg. 2). In so arguing, Defendants refer the Court to the Supreme Court's decision in *LaRue v. DeWolf, Boberg & Assocs.*, 552 U.S. 248 (2008). However, Defendants misread *LaRue* and the Fifth Circuit has rejected Defendants' interpretation.

For its decision in *LaRue*, the Supreme Court relied on its prior opinion in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (2018). *See generally LaRue*, 552 U.S. 248 (discussing *Russell*, throughout). Unlike *LaRue* and the case before the Court, *Russell* involved a plaintiff who was a participant in a defined benefit plan. *LaRue*, 552 U.S. at 255. Defined benefit plans, such as traditional pension plans, promise participants a specified monthly benefit upon retirement. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 98 (2007) ("A defined-benefit plan, as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment.") (citation and internal quotation marks omitted).[7] In *Russell*, the plaintiff received all

---

[7] *See also, Definitions, Retirement Plans*, INTERNAL REVENUE SERVICE, https://www.irs.gov/retirement-plans/plan-participant-employee/definitions (last reviewed or updated Jun. 29, 2023) ("Defined Benefit Plan, also known as a traditional pension plan, promises the participant a specified monthly benefit at retirement. Often, the benefit is based on factors such as the participant's salary, age and the number of years he or she worked for the employer.").

of the benefits to which she was contractually entitled but sought damages stemming from a delay in the processing of her disability claim. *Russell*, 473 U.S. at 136-137. The Supreme Court held § 502(a)(2) did not provide a remedy for this type of individual claim because the text and history of the statute indicate that "its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142. The *Russell* Court concluded that, since "Congress did not intend [§§ 409 and 502(a)(2)] to authorize any relief except for the plan itself," the plaintiff did not have a cause of action under § 502(a)(2) because relief would accrue only to her, without any benefit to the entire plan. *Id.* at 144.

*LaRue*, by contrast, involved a plaintiff who was a participant in a defined contribution plan. *LaRue*, 552 U.S. at 250-51. Unlike defined benefit plans, defined *contribution* plans—such as 401(k) plans and employee stock ownership plans—involve individual accounts that do not pay fixed contractual benefits. *See LaRue*, 552 U.S. at 255-56 (distinguishing defined contribution plans).[8] Instead, participants' benefits in a defined contribution plan are typically tied to the value of the assets in their individual accounts; thus, participants' benefits can turn on plan fiduciaries' particular investment decisions. *Thole v. U.S. Bank N.A.*, — U.S. —, 140 S.Ct. 1615, 1618 (2020); *see Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("A defined contribution plan is one where employees and employers may contribute to the plan, and the employer's contribution is fixed[,] and the employee receives whatever level of benefits the amount contributed on his behalf will provide.") (internal quotation marks omitted). In *LaRue*, the plaintiff alleged that acts

---

[8] A "Defined Contribution Plan is a retirement plan in which the employee and/or the employer contribute to the employee's individual account under the plan. The amount in the account at distribution includes the contributions and investment gains or losses, minus any investment and administrative fees." *See Definitions, Retirement Plans*, INTERNAL REVENUE SERVICE, https://www.irs.gov/retirement-plans/plan-participant-employee/definitions (last reviewed or updated Jun. 29, 2023).

of the plan fiduciary specifically depleted the value of the assets in the plaintiff's own plan account.

*LaRue*, 552 U.S. at 250-51. The *LaRue* Court explained:

> For defined contribution plans, [unlike for defined benefit plans], fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive. . . Consequently, our references to the "entire plan" in *Russell*, which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context.

*Id.* at 255-56. Thus, the Supreme Court held that the *LaRue* plaintiff, unlike the *Russell* plaintiff, did have a cause of action under § 502(a)(2). *Id.* at 256. The *LaRue* Court explained that, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.*

Thus, a plain reading of *LaRue* shows that Defendants have misread its holding—*LaRue* does not hold that defined contribution plan participants "may seek relief under ERISA § 502(a)(2) for fiduciary breaches that impair the value of plan assets *solely* in [the] participant's individual account." (ECF No. 94, pg. 4) (emphasis added). Defendants' insertion of the word "solely" is not supported by the text of § 502(a)(2) and § 409 or the Supreme Court's interpretation those statutes in *LaRue*. Moreover, *LaRue* did not conclude that defined contribution plan participants do not have an ERISA-recognized interest in the assets of the entire plan under § 502(a)(2) and § 409(a). "Far from constraining relief under § 409(a) in a defined contribution plan, *LaRue* makes clear that relief is available wherever it would advance the protection of the entire plan." *Cedeno*, 2021 WL 508789, at *4.

The Fifth Circuit has further rejected Defendants' reading of *LaRue* as discussed in *Perez v. Bruister*, 823 F.3d 250 (2016). In *Perez*, the Fifth Circuit discussed both *Russell* and *LaRue* in the context of employee stock ownership plans—like the one at issue here. The *Perez* court

---

explained:

> The Supreme Court has held that claims for relief under ERISA § 502(a)(2) must inure to the benefit of the plan as a whole, not to individual beneficiaries. *Mass. Mutual Life Ins. Co. v. Russell*, 472 U.S. 134, 139-144, 105 S.Ct. 3085, 3088-91, 87 L.Ed.2d 96 (1985). But the Court expanded on this statutory interpretation **by affording a remedy to a defined contribution plan participant to recoup the impaired value of plan assets "in a participant's individual account [when] caused by a fiduciary breach."** *LaRue v. DeWolff, Boberg, & Assocs.*, 552 U.S. 248, 256, 128 S.Ct. 1020, 1022-23, 169 L.Ed.2d 847 (2008). In this case, the "loss [] to the plan" is the amount that the ESOP overpaid for [the company] stock. Consequently, **the losses suffered by the participants in ESOP are coterminous with those of the plan,** and [the plaintiff's] individual claim is proportional to the claims and losses of fellow participants.

*Id.* at 257-58 (emphasis added).[9] Thus, the Fifth Circuit has recognized that individual plan

participants in defined contribution plans have an ERISA-recognized interest assets of a plan assets

as a whole because the losses suffered by individual plan participants are "coterminous" with the

---

[9] The Fifth Circuit addressed *LaRue* and *Russell* in the context of the defendants' argument that the individual plaintiff did not have standing to sue on behalf of the employee stock ownership plan (the "ESOP") under ERISA §§ 409(a) and 502(a)(2). *Perez*, 823 F.3d at 257-58. The *Perez* defendants argued that "the district court erred by allowing [the individual plaintiff] to pursue a claim on behalf of the ESOP and its beneficiaries without seeking class certification or the court's affording other safeguards for the absent beneficiaries' interests." *Id.* at 257. The Fifth Circuit noted that the defendants raised a "theoretically difficult question" as to whether the individual defendant "was required to sue as a class representative, or the court was required to impose safeguards to ensure that all class members are notified, fairly treated, and not disadvantaged by self-interested prosecution of the claims." *Id.* at 258. The court explained that:

> Although the district court here imposed no such safeguards, this court has implicitly approved the use of class actions to obtain relief for alleged ERISA plan-wide violations. *See, e.g.*, *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 293, 308 (5th Cir. 2000) (ERISA plan beneficiary filed class action to challenge trustees' plan termination agreements) . . . . If [the plaintiff], with only one or two other participants, had pursued this case independently, we would have to confront theses issues. In theory, there is no difference between plan participants and class members vis-à-vis the need to protect absentees' rights in representative litigation. As it is, the [Secretary of Labor's] participation here, and the joinder of the cases for trial and judgment, eliminates concerns about protecting the absent participants' interests.

*Id.* at 258. Thus, the Fifth Circuit recognized that individual participants in a defined contribution plan may sue for plan-wide relief but indicated some concern as to whether the interests of absentee participants and beneficiaries would be adequately protected without class certification-type procedures. This concern is of no moment here because Plaintiffs have moved for class certification. (*See* ECF No. 33, pgs. 28-31). Thus, if litigation in this case proceeds, the Court will have the opportunity to determine whether Plaintiffs satisfy the class representative requirements of Federal Rule of Civil Procedure 23 and adequately represent the interests of the putative class members. Moreover, as will be discussed below, the Class Action Waiver's language is not problematic because it funnels participants away from class arbitration procedures, but because it prevents them from seeking Plan-wide remedies, which the Fifth Circuit recognized that they are entitled to under ERISA § 409(a).

---

loss to the entire plan. *See id.* at 257-58

Numerous courts have recognized that individual participants in a defined contribution plan may seek plan-wide relief under ERISA §§ 409(a) and 502(a)(2). *See, e.g.*, *Browe v. CTC Corp.*, 15 F.4th 175 (2d Cir. 2021) (affirming district court's trial judgment in part with respect to imposing liability under § 502(a)(2) in action brought by individual participant in a defined contribution plan on behalf of the plan); *Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22, 2019) (affirming district court's trial judgment awarding $29.7 million in ESOP losses in action brought by an individual participant on behalf of an ESOP under ERISA §§ 409(a) and 502(a)(2)); *Harrison*, 59 F.4th at 1107-09 (recognizing plaintiff's right to seek plan-wide relief in invalidating a defined contribution plan's arbitration agreement that prohibited such relief under the effective vindication exception); *Smith*, 13 F.4th at 620-623 (7th Cir. 2021) (same); *Cedeno*, 2021 WL 5087898, at *4-6 (same); *Burnett*, 2023 WL 387586, at *6 (same); *Lloyd*, 2022 WL 17542071, at *3-5 (same).

Plaintiffs allege that Plan fiduciaries violated ERISA by repurchasing RVNB stock from the Plan below market value and are seeking, *inter alia*, to recoup the losses to the entire Plan that resulted from that breach. Section 502(a)(2) authorizes plan participants like Plaintiffs to sue plan fiduciaries for violations of § 409(a). Section 409(a), in turn, makes fiduciaries liable for "any losses *to the plan*" resulting from such breaches. 29 U.S.C § 1109(a) (emphasis added). Thus, §§ 502(a)(2) and 409(a) specifically entitles Plaintiffs to sue for the Plan-wide relief they seek. Having concluded that Plaintiffs have a statutory right to seek Plan-wide relief, the Court next addresses whether the Class Action Waiver in the Arbitration Procedure prevents the effective vindication of that right.

2.      *Whether the Class Action Waiver Prevents the Effective Vindication of Plaintiffs' Statutory Rights under ERISA § 502(a)(2)*

The Court concludes the Class Action Waiver is unenforceable because it prevents Plaintiffs from effectively vindicating their statutory right to seek plan-wide relief under ERISA §§ 502(a)(2) and 409(a). As a threshold matter, the Fifth Circuit—like all other circuits that have addressed the question—has held that ERISA claims are generally arbitrable. *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996) ("Congress did not intend to exempt statutory ERISA claims from the dictates of the Arbitration Act"); *see Smith* 13 F.4th at 620 ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable.") (collecting cases). In doing so, however, the Fifth Circuit recognized that arbitration of ERISA claims is appropriate only "[s]o long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." *Kramer*, 80 F.3d at 1084 (citation and internal quotation marks omitted). While the Fifth Circuit has held that ERISA claims are generally arbitrable, it has not addressed the precise question before the Court—whether an arbitration provision can prevent an individual participant from seeking any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to other participants in the ERISA plan.

Numerous federal courts have recently addressed this exact question and invalidated such arbitration provisions under the effective vindication exception because they prospectively waive participants' rights to pursue relief authorized by ERISA §§ 409(a). As discussed below, those courts were faced with arbitration language that is substantively identical to the language in the Class Action Waiver in this proceeding. The Court finds and concludes the well-reasoned opinions of those courts are persuasive and concludes the Class Action Waiver is invalid because it constitutes a "prospective waiver of [Plaintiffs'] *right to pursue* statutory remedies." *Italian Colors*, 570 U.S. at 236 (emphasis in original) (citation and internal quotation marks omitted).

Because the Class Action Waiver prevents Plaintiffs from seeking in arbitration relief specifically authorized by § 409(a), the Arbitration Procedure is "an arbitration agreement forbidding the assertion of certain statutory rights." *Id.* And, according to the Supreme Court, the effective vindication exception "certainly cover[s]" such agreements. *Id.*

First, the Arbitration Procedure's Class Action Waiver encompasses the claims asserted and relief sought by Plaintiffs in their Amended Complaint. The Arbitration Procedure defines "Covered Claims" as:

> Any claim by a Claimant which arises out of, relates to, or concerns this Plan, . . . , including without limitation, any claim for benefits under the Plan, . . . ; any claim asserting a breach of, or failure to follow, the Plan . . . ; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code. . . .

(ECF No. 67, pgs. 8: 2018 Amendment: § A-2(a)). A "Claimant" is defined as "an Employee, Participant, or Beneficiary." (ECF No. 67 pg. 8: 2018 Amendment: § A-1(a)). As participants in the Plan who are "asserting a breach of, or failure to follow the Plan" and "a breach of or failure to follow, any provision of ERISA," Plaintiffs' claims are covered by the Arbitration Procedure. (ECF No. 67, pgs. 8: 2018 Amendment: § A-2(a)). The Arbitration Procedure provides that these claims "shall be settled by binding arbitration." (ECF No. 67, pgs. 8: 2018 Amendment: § A-2(a)).

The Class Action Waiver purports to limit remedies that ERISA expressly authorizes. The Class Action Waiver states, in relevant parts, that:

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or

> equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any employee, participant or beneficiary other than the Claimant, and is not binding on the Plan Administrator or Trustee with respect to any employee, participant or beneficiary other than the Claimant. . . .

(ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)) (emphasis in original). The Court concludes that the Class Action Waiver—in preventing Plaintiffs from "seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to anyone other than themselves—prevents the effective vindication of Plaintiffs' right to seek plan-wide relief. (ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)).

Recently, the Tenth Circuit addressed this question in *Harrison v. Envision Management Holding, Inc. Board of Directors*. *See generally Harrison*, 59 F.4th 1090. In *Harrison*, the Tenth Circuit considered arbitration language that was substantively identical to the language before the Court, holding such language prevented the effective vindication of the plaintiff's rights under §§ 409(a) and 502(a)(2). *See Harrison*, 59 F.4th at 1104-1106 (reciting arbitration language). Referring to the first sentence of the class action waiver before it—which is word-for-word identical to the Class Action Waiver before this Court—the Tenth Circuit noted that:

> The prohibition on class or collective actions, in our view, is not cause for invoking the effective vindication exception. Indeed, as the Seventh Circuit has noted, the Supreme "Court has blessed that maneuver many times, including under the National Labor Relations Act." *Smith*, 13 F.4th at 622. But the prohibition on a claimant proceeding in a representative capacity is more problematic, at least where the claimant alleges that the named defendants violated fiduciary duties that resulted in plan-wide harm and not just to the claimant's own account and the claimant seeks relief under [§ 502(a)(2)]. As the Sixth Circuit recently concluded, "[t]he weight of authority suggests that [such] claims should be thought of as Plan claims, not [the plaintiff's] claims." *Hawkins v. Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022). If the Sixth Circuit is correct on that point, then [the arbitration clause's] prohibition on a claimant proceeding in a representative capacity is inconsistent with, and prevents a claimant from effectively vindicating the remedies afforded by, § 1132(a)(2). We ultimately do not need to decide that question because, as we shall proceed to discuss, the second sentence of Section 21(b) prevents Harrison from effectively vindicating the statutory remedies cited in his complaint.

*Id.* (footnote omitted). The Tenth Circuit rested its decision on the second and third sentences of the class action waiver before it—both of which are substantively identical to the Arbitration Procedure's Class Action Waiver in this proceeding.[10] The *Harrison* court concluded that the second sentence "would clearly prevent Harrison from obtaining at least some forms of relief that he seeks in his complaint pursuant to [§ 502(a)(2)] . . . because [those] forms of relief would have the purpose or effect of providing additional benefits or monetary or other relief to all Plan participants and would thus be barred." *Id.* (internal quotation marks omitted, some non-substantive alterations incorporated). The Tenth Circuit determined that its conclusion was confirmed by the third sentence of the class action waiver. *Id.* The Tenth Circuit explained that the class action waiver before it was:

> [Written] in a manner intended to foreclose any such plan-wide relief. In other words, [the class action waiver] **is not problematic because it requires Harrison to arbitrate his claims, but rather because it purports to foreclose a number of remedies that were specifically authorized by Congress in the ERISA provisions cited by Harrison.** Because [the class action waiver], if enforced, would prevent Harrison from vindicating in the required arbitral forum the statutory causes of action listed in his complaint, we conclude that the effective vindication exception applies in this case. Indeed, it is not clear what remedies Harrison would be left with if [the class action waiver] is enforced as written. And, in fact, [the class action waiver] effectively prevents any claimant from pursuing the types of claims that Harrison asserts in his complaint.

*Id.* (emphasis added)

The Tenth Circuit relied on the Seventh Circuit's recent decision in *Smith v. Board of Directors of Triad Manufacturing, Inc. See generally Smith*, 13 F.4th at 615. In *Smith*, the Seventh

---

[10] The only difference between the second sentence in the Arbitration Procedure's Class Action Waiver here and the second sentence in the arbitration provision's class action waiver in *Harrison* is that the *Harrison* language inserts the word "Eligible" before "Employee, Participant, or Beneficiary other than the Claimant" and the Class Action Waiver does not. *Harrison*, 59 F.4th at 1106. The only differences between the third sentence in the *Harrison* class action waiver and the Arbitration Procedure's Class Action Waiver are: (1) the *Harrison* class action waiver refers to "arbitrator(s)" rather than a single "arbitrator"; and (2) again inserts "Eligible" before "Employee, Participant, or Beneficiary." *Id.* at 1107. These differences are immaterial and do not diminish the persuasive value of the Tenth Circuit's analysis.

---

MEMORANDUM OPINION AND ORDER                                    Page **23** of **32**

Circuit applied the effective vindication exception to arbitration language identical the arbitration language in *Harrison*, and thus substantively identical to the Arbitration Procedure before the Court.[11] The arbitration provision in *Smith*—like the Arbitration Procedure here and the arbitration provision in *Harrison*—prevented claimants from "seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to anyone other than themselves. *Id.*

Like the Tenth Circuit in *Harrison*, the Seventh Circuit held that, while ERISA claims are generally arbitrable, this language constituted a prospective wavier of plan participants' right to pursue statutory remedies for plan-relief under ERISA §§ 502(a)(2) and 409(a). *Id.* At 621. The *Smith* court explained:

> [I]ndividualized arbitration [is not] inherently incompatible with ERISA. Because Smith participated in a defined contribution plan, ***LaRue***, and not *Russell*, **governs, and the Court made clear in *LaRue* that § 1132(a) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account.**" 552 U.S. at 256, 128 S.Ct. 1020 (emphasis added) . . . . The bottom line is that our holding turns on the impermissible relief, and not the chosen vehicle, for ERISA claims under the plan here.

*Id.* At 622 (emphasis added in bold). In other words, the Seventh Circuit held "that the plain text of [ERISA § 409(a)] and the terms of the arbitration provision cannot be reconciled: What the statute permits, the plan precludes." *Id.* at 621.

Recently, the Third Circuit joined the Seventh and Tenth Circuits in holding that arbitration language identical to the language before the Court in this case is unenforceable under the effective

---

[11] *See Smith v. Greatbanc Tr. Co.*, No. 20 C 2350, 2020 WL 4926560, at *1-2 (N.D. Ill. Aug. 21, 2020) (reciting arbitration language), *aff'd sub nom. Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021). The only differences between the language in the arbitration provision in *Smith* and the Arbitration Procedure are the same differences between the language in the Arbitration Procedure and the language in *Harrison*. *See* n. 10.

---

vindication exception. *Henry*, 2023 WL 4281813, at \*4-5.[12] As with the class action waivers in *Smith*, *Harrison*, and this proceeding, the Third Circuit considered an employee stock ownership plan's class action waiver that "prohibited claimants from 'seek[ing] or receiv[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief' to anyone other than the claimant." *Id.* at \*1 (alterations in original). Like the Seventh and Tenth Circuits, the Third Circuit concluded that this language could not be enforced because it "purports to waive rights that a statute creates." *Id.* at \*4 (citing *Harrison*, 59 F.4th at 1108-09; *Smith*, 13 F.4th at 621-22). In addition to the Third Circuit, a handful of federal district court have followed the lead of the Seventh and Tenth Circuits in the wake of *Smith* and *Harrison* and have invalidated arbitration provisions with substantively identical class action waivers under the effective vindication exception. *See Cedeno*, 2021 WL 5087898, at \*4-6; *Burnett*, 2023 WL 387586, at \*6; *Lloyd*, 2022 WL 17542071, at \*3.[13]

Defendants argue that these courts are mistaken. Specifically, Defendants argue the reasoning in both *Smith* and *Harrison*: (1) run afoul of the Supreme Court's decision in *LaRue*; and (2) are rejected by the Supreme Court's recent decisions in *Viking River Cruises, Inc. v. Moriana*, — U.S. —, 142 S.Ct. 1906 (2022), and *Thole v. U.S. Bank N.A.* For the reasons discussed

---

[12] The class action waiver before the Third Circuit in *Henry* is identical to the Arbitration Procedure's Class Action Waiver before the Court in this case. *See* Defendant-Appellants' Appendix at 159-60, *Henry*, 2023 WL 4281813, ECF No. 26-3.

[13] *But see Holmes v. Baptist Health S. Fla., Inc*., No. 21-22986-CIV, 2022 WL 180638, at \*2-3 (S.D. Fla. Jan. 20, 2022) (declining to invalidate arbitration provision given: (1) the 11th Circuit has never applied the effective vindication exception and indicated a hesitancy to do so; and (2) the language at issue deviated from the language in *Smith* insofar as it did prohibited "additional benefits or monetary relief to any person" other than claimant but did not prohibit "other relief" like the removal of a fiduciary) (citing *Smith*,13 F.4th at 616); *Robertson v. Argent Tr. Co.*, No. CV-21-01711-PHX-DWL, 2022 WL 2967710, at \*8-10 (D. Ariz. July 27, 2022) (declining to apply the effective vindication exception because: (1) the arbitration language, unlike *Smith* and *Harrison*, did not preclude participants from seeking equitable remedies; and (2) the court found no indication that ERISA bars plan participants from choosing to waive collective action when an individualized remedy is still available) (citing *Smith*, 13 F.4th at 615-623; *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 593 F. Supp. 3d 1078 (D. Colo. 2022), *aff'd*, 59 F.4th 1090 (10th Cir. 2023); *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019)).

---

above, the Court rejects Defendants' reading of *LaRue*, *see supra* III.B.1., and the Court declines to repeat its reasoning in this section. Additionally, for the reasons discussed below, the Court is unpersuaded by Defendants' argument that *Viking River* and *Thole* reject the reasoning underpinning the Tenth and Seventh Circuits' decisions in *Harrison* and *Smith*.

Both *Viking River* and *Thole* are materially distinguishable from the case at hand. In *Viking River*, the Supreme Court dealt with the question of whether the FAA preempted a California Supreme Court decision interpreting the California Private Attorney General Act ("PAGA"), which allowed "aggrieved employees" to bring civil actions against former employers for violations of state labor law on behalf of the State of California. *Viking River*, 142 S.Ct. at 1916-17.[14] The California Supreme Court interpreted PAGA as requiring the invalidation of employment agreements that: (1) waived an employee's representational standing to bring a PAGA claim against a former employer on behalf of the state in a judicial or arbitral forum; and (2) required employees to only arbitrate or litigate PAGA claims for violations of state labor law that employee personally suffered. *Viking River*, 142 S.Ct. at 1917-18 (citing *Iskanian v. CLS Transportation Los Angeles*, LLC, 59 Cal. 4th 348, at 383 (2014)). The *Viking River* Court held the first rule was not preempted by the FAA because "[n]othing in the FAA establishes a categorical rule mandating the enforcement of waivers of standing to assert claims on behalf of absent principals." *Id.* at 1922. The Supreme Court interpreted the second rule as an expansive rule of mandatory claim joinder and found that it was preempted by the FAA—holding that the rule "unduly circumscribe[d] the freedom of parties to determine the issues subject to arbitration and

---

[14] Believing that the relevant state agency did not have sufficient resources to reach the desired level of compliance through enforcement actions for violations of state labor law, the California legislature empowered "aggrieved employees"—defined as including "any person who was employed by the allege violator and against whom one or more of the alleged violations was committed"—to bring a civil suit and obtain civil penalties that previously could have only been recovered by the State in an enforcement action. *Viking River*, 142 S.Ct. 1914-15 (citing CAL. LAB. CODE § 2699(a)-(c)).

the rules by which they will arbitrate." *Id.* at 1923 (citation and internal quotation marks omitted).

    *Viking River* deals with a conflict between the FAA and state law. For this reason alone, it is inapposite. Unlike *Viking River*, in this proceeding, there is no conflict between the FAA and any law—state or federal. "[T]he conflict in need of harmonization is not between the FAA and ERISA; it is between ERISA and the [Arbitration Procedure], which precludes certain remedies that [§§ 502(a)(2) and 409(a)] expressly permit." *Smith*, 13 F.4th at 622-23; *see also Harrison*, 59 F.4th at 1110 (the question is not whether "the FAA and ERISA conflict in any way," but whether "the specific provisions of the arbitration section of the Plan effectively prevent [participants] from vindicating statutory remedies that are outlined in ERISA"); *Cedeno*, 2021 WL 508798, at * 6 ("[T]here is in fact a clear statutory right for a participant to seek Plan-wide relief under §§ 409(a) and 502(a)(2), and there is no conflict with the FAA because there is no provision of the FAA that prevents a participant from seeking such remedies."). Because this case involves a conflict between an arbitration agreement and the rights of defined contribution plan participants under ERISA—and not a conflict between the FAA and state law—the Court concludes that the Supreme Court's ruling in *Viking River* is inapposite.

    Defendants' reliance on *Thole* is misplaced because that case is also entirely distinguishable from the case at hand. Defendants argue that "any attempt to analogize a claim under ERISA § 502(a)(2) to the first form of 'representative' PAGA action[s] [in *Viking River*] necessarily fails" because the Supreme Court held in *Thole* that participants in an ERISA-governed retirement plan did not have representational standing to sue under § 502(a)(2). (ECF No. 126, pg. 3) (citing to *Thole*, 140 S.Ct. 1618-20). However, in *Thole*, the plaintiffs were participants in a defined *benefit* plan—not a defined *contribution* plan. *Thole*, 140 S.Ct at 1618. The *Thole* plaintiffs filed a putative class action, alleging mismanagement of the defined benefit plan; however, the

plaintiffs had been paid all of their monthly pension benefits and had not suffered any monetary injury. *Id.* The Supreme Court held that they did not have representational standing to sue on behalf of their plan because they had not suffered an injury in fact giving them a sufficiently concrete interest in the outcome of the litigation. *Id*. at 1620. As the Supreme Court pointed out in the second sentence of its opinion, "[o]f decisive importance to [that] case" was that "*the plaintiffs' retirement plan [was] a defined benefit plan, not a defined contribution plan.*" *Id.* at 1618 (emphasis added). Thus, because the *Thole* plaintiffs continued to receive their contractually-fixed benefits, those plaintiffs had no concrete stake in a case alleging fiduciary mismanagement of the defined benefit plan. *Id.* at 1620.

As discussed above, the Supreme Court has made clear that participants' interest their ERISA plan's assets differ based on whether the plan is a defined contribution or a defined benefit plan. *Compare Russell*, 473 U.S. at 139-45 (a participant in a defined benefit plan cannot bring an individual claim under § 502(a)(2)), *with LaRue*, 552 U.S. at 253-56 (a participant in a defined contribution plan *can* bring such a claim under § 502(a)(2)). Unlike the *Thole* plaintiffs, Plaintiffs in this proceeding have a concrete interest in the outcome of this litigation. Plaintiffs allege, *inter alia*, that Plan fiduciaries—Brozen, the Board Defendants, and Bouras—violated their duties to the Plan under ERISA by selling the Plan's assets—RVNB common stock—for less than fair market value. Thus, the loss to the Plan is the amount that RVNB allegedly underpaid to repurchase the company's stock. "Consequently, the losses suffered by the participants of the [Plan] are coterminous with those of the [Plan]," and Plaintiffs' individual stake in their claims seeking Plan-wide relief are "proportional to the claims and losses of fellow participants." *Perez*, 823 F.3d at 258.

Nevertheless, Defendants argue that the Supreme Court required the *Thole* plaintiffs to

---

"demonstrate their own injury for Article III standing[] *because* a participant's claim under [§] 502(a)(2) is ***not*** similar to an 'agent or proxy' type of 'representative' action." (ECF No. 126, pg. 4 n. 1) (second emphasis in original). In other words, Defendants contend that representative standing does not require a plaintiff to have suffered their own injury in fact. However, the Supreme Court has explained:

> [I]n order to claim "the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving" them "a sufficiently concrete interest in the outcome of the issue in dispute." *Hollingsworth v. Perry*, 570 U.S. 693, 708, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013) (internal quotation marks omitted); *cf. Gollust v. Mendell*, 501 U.S. 115, 125–126, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) (suggesting that shareholder must "maintain some continuing financial stake in the litigation" in order to have Article III standing to bring an insider trading suit on behalf of the corporation); *Craig v. Boren*, 429 U.S. 190, 194–195, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (vendor who "independently" suffered an Article III injury in fact could then assert the rights of her customers).

*Thole*, 140 S.Ct. at 1620. Thus, *Thole* states that, for those plaintiffs to have had representative standing, they had to show they suffered an injury in fact—not, as Defendants propose, that representative plaintiffs *either* suffer an injury in fact *or* have representational standing. As adjudicated, the *Thole* plaintiffs did not suffer an injury in fact and could therefore not assert representational standing. *Id.* By contrast, Plaintiffs here and representational plaintiffs in PAGA suits *have* suffered injuries in fact. Here, as alleged, Plaintiffs have suffered an injury as the diminished value of the assets in Plaintiffs' accounts. In representative PAGA actions, the injury in fact was the state labor law violation the employee personally suffered. *See Viking River*, 142 S.Ct. at 1941 ("PAGA limits statutory standing to 'aggrieved employees'—a term defined to include 'any person who was employed by the alleged violator and *against whom one or more of the alleged violations was committed.*'") (emphasis added) (citing Cal. Lab. Code § 2699(c)). Thus, even if the Court were to assume *arguendo* that the dichotomy at play in *Viking River* was relevant to this proceeding, the Court is not convinced *Thole* illustrates that the Class Action

Waiver is similar to the waivers that the Supreme Court blessed in *Viking River*.

The Court agrees with those courts which have concluded that language like that of the Class Action Waiver before the Court improperly forecloses statutory remedies under ERISA §§ 502(a)(2) and 409(a). The Court bases this conclusion on the portion of the Class Action Waiver that prevents claimants from seeking or receiving "any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant or beneficiary other than the Claimant." (ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)). The Court agrees with the considered opinions of the Third Circuit, Seventh Circuit, and Tenth Circuit—this language would prevent Plaintiffs from obtaining at least some forms of relief they seek under ERISA § 490(a), particularly an order requiring Plan fiduciaries to "make good to the Plan and/or any successor trust(s) the losses resulting from their breaches of ERISA and restore any profits they have made through the use of plan assets." (ECF No. 33, pgs. 31-33); *see Henry*, 2023 WL 4281813, at *4; *Smith*, 13 F.4th at 621-23; *Harrison*, 59 F.4th at 1108-09.

The Court reiterates that the problem with the Class Action Waiver is not that it prohibits class arbitration of Plaintiffs' statutory claims under ERISA. As noted in *Smith*, the Supreme Court "has blessed that arbitration maneuver many times." *Smith* 13 F.4th at 622 (citing *Epic Systems*, 138 S.Ct at 1632 (National Labor Relations Act); *Italian Colors*, 570 U.S. at 238-39 (Sherman Act); *CompuCredit*, 565 U.S. at 100 (Credit Repair Organization Act); *Gilmer*, 500 U.S. at 35 (Age Discrimination in Employment Act)). Instead, the problem is that the Class Action Waiver prohibits statutory remedies that are specifically authorized under ERISA. The Court's decision "turns on the impermissible relief, and not the chosen vehicle, for ERISA claims under the plan here." *Smith* 13 F.4th at 622. The Supreme Court has made clear that a "prospective waiver of a party's *right to pursue* statutory remedies" in arbitration are unenforceable, on public policy

grounds. *Italian Colors*, 570 U.S. at 235-36 (emphasis in original) (citations and internal quotation marks omitted). While the Supreme Court has declined to invalidate any arbitration agreements on under this "effective vindication exception," it has explained that the exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id.* While such provisions are rare, the Court concludes the Class Action Waiver does just that—it prevents Plaintiffs from seeking the Plan-wide relief they are statutorily entitled to pursue under §§ 502(a)(2) and 409(a). Thus, it the Court must conclude the Class Action Waiver is unenforceable under the effective vindication doctrine. *See id*.

**C.      The Class Action Waiver Is Not Severable from the Arbitration Procedure**

The unenforceable Class Action Waiver is not severable from the Arbitration Procedure as a whole. The Class Action Waiver, in relevant part, states:

> The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section A-2, Mandatory and Binding Arbitration Procedure ("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section A-6, then the entire Arbitration Procedure (i.e., all of this Section A-2) shall be rendered null and void in all respects.

(ECF No. 67, pg. 9: 2018 Amendment: § A-2(b)) (emphasis added). For the reasons discussed above, the Class Action Waiver's prohibition on Plaintiffs' right to seek or receive any remedy that has the purpose or effect of providing relief to anyone other than Plaintiff is unenforceable. As the Class Action Wavier itself states, this prohibition is a material and non-severable term of the Arbitration Procedure. Thus, because the Class Action Waiver is an unenforceable prospective waiver of Plaintiffs' statutory rights, the entire Arbitration Procedure outlined in the 2018 Plan Amendment is "rendered null and void in all respects." (ECF No. 67, pg. 9: 2018 Amendment:

§ A-2(b)). "In other words, Defendants are precluded from arguing that [Plaintiffs are] required to submit [their] claims to arbitration without the remedy limitations outlined in the [Class Action Waiver]." *Harrison*, 59 F.4th 1112.

## IV. CONCLUSION

The Court concludes that the Arbitration Procedure's Class Action Waiver is unenforceable because it prospectively waives Plaintiffs' statutory right to seek Plan-wide relief under ERISA §§ 502(a)(2) and 409(a). Because the Class Action Waiver is not severable from the Arbitration Procedure, the Court must conclude the entire Arbitration Procedure is unenforceable. As such, the Court **DENIES** Defendants' Motion to Compel Arbitration. (ECF No. 66).

**SO ORDERED:** July 12, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE