# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| **JASON COLEMAN and JESSICA CASEY**, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>        **Plaintiffs,**<br><br>v.<br><br>**NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, MIKE PAXTON, NICK BOURAS, STERLING INVESTMENT PARTNERS III, L.P., NICOLE PETERSON 2012 IRREVOCABLE TRUST, and BROOKE PETERSON 2012 IRREVOCABLE TRUST,**<br><br>        **Defendants.** | **Case No. 3:20-CV-01358-E** |

## PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................................ 2

  A.    Background and Motion Practice................................................................................ 2

  B.    Discovery ................................................................................................................... 4

  C.    The Parties' Settlement Efforts .................................................................................. 5

III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS ........................................ 6

  A.    Benefits to the Class.................................................................................................. 6

  B.    Notice and Administration......................................................................................... 7

  C.    Case Contribution Awards to the Named Plaintiffs and Attorneys' Fees and Costs.......... 7

  D.    Release of Claims ...................................................................................................... 8

  E.    Notice and Proposed Schedule of Events ................................................................. 8

IV.    ARGUMENT ................................................................................................................. 10

  A.    The Court Should Certify the Settlement Class....................................................... 10

    1.    The Class satisfies the requirements of Rule 23(a).......................................... 10

    2.    The claims meet the requirements of certification under Rule 23(b)(1)........... 17

  B.    The Court Should Grant Preliminary Approval of the Settlement Because it is Fair, Reasonable, and Adequate. ............................................................................................ 21

    1.    The standards for preliminary approval are met. ............................................. 21

    2.    The class is adequately represented, the negotiations were at arm's length, and there is no suggestion of collusion. ....................................................................................... 24

    3.    The complexity, expense, and likely duration of the litigation. ..................... 24

    4.    The stage of the proceedings and the amount of discovery completed. ......... 28

    5.    The effectiveness of the proposed method of distributing relief to the Class............... 28

    6.    The terms of the proposed award of attorneys' fees. ...................................... 29

    7.    The proposal treats class members equitably relative to each other............... 29

V. CONCLUSION ...................................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................................16

*Bywaters v. United States*,
  196 F.R.D. 458 (E.D. Tex. 2000).................................................................. 11-12

*Chesemore v. Alliance Holdings, Inc.*,
  276 F.R.D. 506 (W.D. Wis. 2011)..............................................................15

*In re Chinese-Manufactured Drywall Products Liability Litig.*,
  424 F. Supp. 3d 456 (5th Cir. 2020) ...................................................... 21-23

*Feret v. Corestates Fin. Corp.*,
  C.A. No. 97–6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998)...........................18

*Hill v. Hill Bros. Constr. Co., Inc.*,
  No.: 3:14-CV-213-SA-RP, 2018 WL 280536 (N.D. Miss. Jan. 3, 2018)..............................15

*In re Ikon Office Solutions, Inc.*,
  191 F.R.D. 457 (E.D. Pa. 2000)...................................................... 20-21

*Jones v. Singing River Health Servs. Found.*,
  865 F.3d 285 (5th Cir. 2017) .....................................................................23

*Su v. Peterson, et al.*,
  Case No. 3:22-cv-01869-BW (N.D. Tex.)...............................................................1

*Kindle v. Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016)..........................................................................12

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ...................................... 24, 27-28

*Knight v. Lavine*,
  No. 12-611, 2013 WL 427880 (E.D. Va. Feb. 4, 2013) ....................................19

*Lee v. Metrocare Servs.*,
  No. 3:13-CV-2349-O, 2015 WL 13729679 (N.D. Tex. July 1, 2015)....................................27

*Lively v. Dynegy, Inc.*,
  No. 05-00063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ...................................................15

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) ...........................................................................12

*ODonnell v. Harris County, Texas*,
    No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019)........................... 22-24

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)...........................................................................................20

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) ............................................................................20

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ................................................................ 23-24, 28

*Spence v. Am. Airlines, Inc.*,
    No. 4:23-CV-00552-O, 2024 WL 3635309 (N.D. Tex. May 22, 2024)
    .......................................................................................... 13, 15, 17-19

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) .......................................................................14, 16

*Villagran v. Cent. Ford, Inc.*,
    524 F. Supp. 2d 866 (S.D. Tex. 2007) ..............................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................................12

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981) ...........................................................................11

**Statutes**

29 U.S.C. § 1109, ERISA 409 ...............................................................................14, 20

28 U.S.C. §§ 1711–1715 ("CAFA") ......................................................................... 9-10

29 U.S.C. § 1132, ERISA 502 ....................................................... 1, 2, 14-15, 18, 20

**Federal Rules of Civil Procedure**

Rule 23(a)................................................................................................10-11, 14, 16-17

Rule 23(b) .......................................................................................................... 10, 17-21

Rule 23(e).........................................................................................................21-24, 28-29

Rule 23(g) .....................................................................................................................17

Plaintiffs Jason Coleman and Jessica Casey ("Plaintiffs"), individually and as Class Representatives, hereby move for an order certifying a settlement class for settlement purposes; preliminarily approving a class action settlement agreement between Plaintiffs and Defendants Neil M. Brozen, Robert Peterson, Jr., Vasilia Peterson, Mike Paxton, Nick Bouras, Sterling Investment Partners III, L.P., Nicole Peterson 2012 Irrevocable Trust, and Booke Peterson 2012 Irrevocable Trust ("Class Action Defendants" and together with Plaintiffs, the "Parties"); approving Class Notice to the Settlement Class; and setting a date for a Fairness Hearing.[1]

## I.    INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.*, ("ERISA") class action (the "Class Action"). The Parties have agreed to resolve all matters in controversy between them in the Class Action and a separate but related enforcement action filed by the Department of Labor ("DOL") and pending in this District (the "Secretary's Action")[2] for the sum total of $14,000,000, inclusive of a penalty under ERISA § 502(l), 29 U.S.C. § 1132(l). Responsibility for payment of the $14,000,000 (the "Settlement Payment") shall be as follows: (a) Defendant Neil Brozen shall pay, or

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

[2] *Julie A. Su, Acting Secretary, United States Department of Labor v. Robert Peterson, Vasilia Peterson, Paul Generale, Neil Brozen, Nicole Peterson 2012 Irrevocable Trust, Brooke Peterson 2012 Irrevocable Trust, and the RVNB Holdings, Inc. Employee Stock Ownership Plan*, Case No. 3:22-cv-01869-BW.

cause to be paid $7,000,000; and (b) other Defendants in the Class Action and Secretary's Action shall cumulatively pay, or cause to be paid, $7,000,000. From the Settlement Payment, $1,272,727.27 will be paid to the DOL to satisfy the civil penalty under ERISA § 502(l) ("Civil Penalty Amount") and $12,727,272.73 ("Class Settlement Amount") will be paid to a common fund established for the benefit of the class members ("Qualified Settlement Fund"). Should the Court grant approval, every eligible Class Member will receive their portion of the Net Settlement Amount[3] according to a pro rata Plan of Allocation.

The proposed settlement ("Settlement") satisfies all the criteria for preliminary approval and provides an excellent result for the Settlement Class. For these reasons, discussed in more detail below, Plaintiffs request that the Court grant this motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Background and Motion Practice

This proposed class action is brought on behalf of participants and beneficiaries of the RVNB Holdings, Inc. Employee Stock Ownership Plan ("Plan"). The Complaint alleges that Neil Brozen ("Brozen" or the "Trustee"), in his capacity as Trustee, and other Defendants (individuals and trusts) who were involved in a

---

[3] The Net Settlement Fund consists of the Class Settlement Amount, plus accrued interest, minus (a) any Court-approved Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Court-approved Case Contribution Awards.

series of transactions, violated ERISA. Plaintiffs initiated the Class Action in the Eastern District of Texas on September 27, 2019. (Dkt. 1). The initial Complaint named as Defendants Brozen, Robert Peterson Jr. ("Peterson"), Vasilia Peterson ("Vasilia"), Paul Generale ("Generale"), Mike Paxton ("Paxton"), Nick Bouras ("Bouras"), and Sterling Investment Partners III, L.P ("SIP"). On April 3, 2020, Plaintiffs filed an Amended Complaint (Dkt. 33), removing Generale as a Defendant and adding the Nicole Peterson 2012 Irrevocable Trust and the Brooke Peterson 2012 Irrevocable Trust (the "Peterson Trusts").

In Counts I and II of the Amended Complaint, Plaintiffs alleged that Brozen violated ERISA in connection with the ESOP Transaction by, *inter alia*, causing the Plan to sell its shares of RVNB stock for below fair market value, terminating the Plan, and quickly selling the RVNB stock for Defendants' own benefit. (Am. Compl. ¶¶ 99–125). In Counts III and IV Plaintiffs alleged that the other Defendants violated ERISA by participating in or having knowledge of Brozen's violation of ERISA's prohibited transaction rules. (*Id*. ¶¶ 126-146). Defendants deny these allegations, deny any wrongdoing or liability, and have vigorously defended themselves in this Class Action. Defendants do not admit wrongdoing of any kind regarding the ESOP Termination or this Class Action.

The Parties engaged in extensive motion practice. Defendants filed a motion to Transfer Venue on March 16, 2020 (Dkt. 27) which was fully briefed (Dkt. 37,

38, 42) and granted on May 6, 2020 (Dkt. 49). Defendants filed a Motion to Stay Discovery on April 14, 2020 (Dkt. 36) which was briefed (Dkt. 43, 44) but never ruled on. Defendants filed a Motion to Compel Individual Arbitration (Dkt. 66) on June 22, 2020 ("Motion to Compel"). The Motion to Compel was fully briefed and included numerous notices of, and responses to, supplemental authority (Dkt. 70–71, 74–75, 78–79, 83, 86, 89–90, 93–94, 97–98, 111–114, 117–118, 124–126, and 128–129). The District Court denied the Motion to Compel on July 12, 2023. (Dkt. 130). Defendants appealed that decision on August 11, 2023 (Dkt. 135) automatically staying all proceedings in this Court. Oral arguments were held on the Motion to Compel in the Fifth Circuit on March 11, 2024, but the decision was stayed pending resolution of this Settlement.

## B. Discovery

The Parties completed substantial document discovery through an informal process that involved Defendants and the DOL. After the District Court denied Defendants' Motion to Compel, and while Defendants' appeal of that decision was pending in the Fifth Circuit, the Parties to the Class Action and Secretary's Action began discussing settlement. As part of that process, Plaintiffs requested, and Defendants agreed to produce, categories of documents to inform and evaluate a potential resolution. Plaintiffs received and reviewed, *inter alia*: presentations prepared by RVNB's advisors that were provided to RVNB and the Trustee;

RVNB's Board of Directors meeting minutes; discussions among the Trustee and its advisors related to the ESOP Transaction including the terms, valuation, and negotiation; transaction documents containing the terms of the ESOP Transaction; opinion letters provided by the Trustee's advisors; valuation reports prepared by the Trustee's financial advisors; diligence reports prepared by the Trustee's legal advisor; handwritten notes taken by the Trustee during the ESOP Transaction process; and minutes from the Trustee's meetings related to the ESOP Transaction. *See* Declaration of Gregory Porter, attached hereto as Exhibit A, ("Porter Decl."), ¶ 15. Plaintiffs' Counsel is experienced in litigating ESOP cases and therefore understands the key information needed to evaluate Plaintiffs' claims—that information was produced during the informal discovery process. *Id*. ¶¶ 7-13, 15 and Exhibit 4 to Porter Decl. Plaintiffs' Counsel also retained and consulted an expert in private company purchase and sale transaction who prepared preliminary analyses regarding the terms and process of the ESOP Transaction and advised Plaintiffs' Counsel during settlement negotiations. *Id*. ¶ 6.

### C. The Parties' Settlement Efforts

The Parties to the Class Action and Secretary's Action mediated this matter for three days with Maxine Aaronson, an experienced mediator with over 30 years of experience including expertise in ERISA and other employee benefit disputes. Porter Decl. ¶ 16. The Parties drafted and submitted comprehensive mediation

statements to Mediator Aaronson that focused all sides on the key issues. *Id*. Counsel for the Parties attended a three-day mediation in Dallas, Texas, from July 9 to July 11, 2024. *Id*. The attendees vigorously engaged in the mediation process, during which all attendees' counsel made presentations to the entire group and individually to Mediator Aaronson. *Id*. After much deliberation, discussion, and compromise, the Parties to the Class Action and Secretary's Action agreed to resolve the disputes according to the terms laid out in the Settlement Agreement, attached as Exhibit 1 to the Porter Declaration. *Id*.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below. The proposed Settlement Class is defined as: all vested Participants in the RVNB Holdings, Inc. Employee Stock Ownership Plan as of June 29, 2017, the date of the termination of the Plan, or their Beneficiaries or Alternate Payees. With the exception of Nick Bouras, all Defendants are excluded from the Settlement Class and Defendants' Successors-In-Interest. Nick Bouras, or his Beneficiaries or Alternate Payees, shall be a member of the Settlement Class.

### A. Benefits to the Class

Defendants have agreed to pay $14,000,000: $1,272,727.27 to the DOL (the "ERISA Penalty") and $12,727,272.73 into a Qualified Settlement Fund (the "Class Settlement Amount"). Settlement Agmt., ¶¶ 7.1–7.4. The funds remaining after

deduction from the Class Settlement Amount for (a) all Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Case Contribution Awards shall constitute the "Net Settlement Amount." *Id.* ¶¶ 1.23, 7.2.5, 10.1, 10.3. The Net Settlement Amount will be distributed to the Class Members pursuant to the Plan of Allocation, attached as Exhibit 5 to the Porter Declaration. *Id.* ¶ 8.2.2. Each Class Member's Settlement Credit Amount shall be equal to the Net Settlement Amount multiplied by the percentage of Company stock held in the Class Member's Plan account as of June 29, 2017. *Id.*

### B. Notice and Administration

The Settlement Administrator, Simpluris, shall be responsible for disseminating Class Notice, establishing a website for case documents, and establishing a telephone support line . If the Court grants final approval of the Settlement, the Settlement Administrator shall also implement the Plan of Allocation, including effectuating rollover requests by Class Members and mailing checks to other Class Members.

The Settlement Administrator shall also serve as Escrow Agent and shall be responsible for establishing and maintaining a Qualified Settlement Fund to hold the Gross Settlement Amount.

### C. Case Contribution Awards to the Named Plaintiffs and Attorneys' Fees and Costs

Subject to Court approval, Plaintiffs' Counsel's fees, costs and expenses, and

7

Case Contribution Awards to the two Named Plaintiffs shall be paid from the Gross Settlement Amount. Settlement Agmt. ¶¶ 10.1, 10.3. Plaintiffs shall petition the Court for Case Contribution Awards not to exceed $20,000 for each Named Plaintiff in recognition of their service to the Class. *Id.* ¶ 10.3. Plaintiffs' Counsel will also petition the Court for an award of Attorneys' Fees and Expenses in an amount not exceeding 15% of the Class Settlement Amount. *Id.* ¶ 10.1.

## D. Release of Claims

In exchange for payment of the Class Settlement Amount by Defendants and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs, the Settlement Class, and the Plan will release the Defendants and other Released Parties from any claims that pertain to the Plan and/or relating to the 2017 stock redemption or asset sale transaction referenced in the Complaint and Amended Complaint. The Released Parties, Released Claims, and the covenant not to sue are set forth in full in the Settlement Agreement. Settlement Agmt. ¶¶ 3.1–3.6.

## E. Notice and Proposed Schedule of Events

The Settlement Agreement provides that Plaintiffs' Counsel will provide, or cause to be provided, the names, last known addresses of members of the Settlement Class, and number of allocated to the Plan account of each member of the Settlement Class to the Settlement Administrator. *Id.* ¶ 2.1.3.1. Plaintiffs and Defendants shall use reasonable efforts to respond timely to written requests, including by e-mail,

from the Settlement Administrator for any readily accessible data that they have

from obtained from discovery, the settlement process, or through other reasonable

efforts that is reasonably necessary to determine the feasibility of administering the

Plan of Allocation or to implement the Plan of Allocation. *Id*. ¶ 2.1.3.1.1.

The proposed Class Notice (Exhibit A to the Settlement Agmt.) provides all

the information necessary to inform Class Members about the nature of the Class

Action, the terms of the Settlement, and the procedures for entering an appearance

to be heard or to object to the Settlement. In addition, key court documents, including

the Amended Complaint, the Settlement Agreement, preliminary approval papers,

Plaintiffs' Motion for Award of Attorneys' Fees, and Plaintiffs' Motion for Final

Approval will be posted on the settlement website. The Class Notice will be mailed

to the Settlement Class and shall be posted on a website for the Settlement Class.

For returned mail, the Settlement Administrator will engage in standardized

processes to identify and locate Class Members. The proposed schedule is set forth

below:

| Event | Timing |
|-------|--------|
| CAFA Notice | Within ten (10) days of Named Plaintiffs filing the Preliminary Approval Motion |
| Preliminary Approval Hearing | TBD |
| Settlement Administrator to receive Class list, Class contact information, and share information | At least twenty-one (21) days prior to the deadline for mailing notice |
| Mail and post on Settlement website the | At least ninety (90) days before the |

| Settlement Notice | Fairness Hearing |
|---|---|
| Motion for award of attorneys' fees and expenses, and Case Contribution Awards for Named Plaintiffs | No later than forty-five (45) days before the Fairness Hearing |
| Motion for final approval of settlement | No later than forty-five (45) days before the Fairness Hearing |
| Objections to the Settlement, to the requested Attorneys' Fees and Costs, Case Contribution Awards, and/or Administrative Expenses | Must be received by the Court on or before thirty (30) days before the Fairness Hearing |
| Notice of intention to appear at Fairness Hearing | Must be postmarked at least fourteen (14) calendar days before the Fairness Hearing |
| Fairness Hearing | TBD (at least 90 days from the mailing of Class Notice to the Settlement Class and the date of mailing of CAFA Notices) |

## IV.    ARGUMENT

### A. The Court Should Certify the Settlement Class

As part of the Settlement, the Parties request that the Court certify the proposed Settlement Class, defined in Section III above, for purposes of settlement only.

Certification of a class is required where the plaintiff demonstrates the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. As in other ERISA class actions, those requirements are easily met here.

### 1.  The Class satisfies the requirements of Rule 23(a)

Rule 23(a) provides that a class must satisfy four preconditions: (1) the class

is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### a. The Settlement Class is sufficiently numerous.

As to numerosity, the Fifth Circuit has held that "though the number of class members alone is not determinative of whether joinder is impracticable, a class consisting of 100 to 150 members is within the 'range that generally satisfies the numerosity requirement.'" *Bywaters v. United States*, 196 F.R.D. 458, 465 (E.D. Tex. 2000) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir.1999)); *see also Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (noting that courts have certified classes with as few as twenty-five or thirty members). The Plan's Form 5500 for 2017 indicates that at the beginning of 2017, the Plan had approximately 1,436 participants. Porter Decl., ¶ 17 and Exhibit 3 to Porter Decl.. Accordingly, numerosity is easily satisfied.

### b. There are common questions of law and fact.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Fifth Circuit has held that the test for commonality "is not demanding" and is established where "there is at least one issue, the resolution of which will

affect all or a significant number of the putative class members.'" *Bywaters*, 196 F.R.D. at 466–67 (citing *Mullen*, 186 F.3d at 625); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Commonality exists if the plaintiffs' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

Claims that a stock was improperly valued or sold at an incorrect price, such as those at issue here, satisfy the commonality requirement. *See Ludlow v. BP, P.L.C.*, 800 F.3d 674, 684 (5th Cir. 2015) (commonality exists in case alleging stock price was affected by company misrepresentations); *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (common issues exist where plaintiff alleged ESOP stock sold for less than fair market value).

Commonality is also satisfied here because Defendants' alleged violations of ERISA are the same for all Class Members. Defendants either did or did not engage in prohibited transactions under ERISA with respect to the termination of the Plan and sale of the Plan's RVNB stock. Thus, Defendants' actions and inactions with respect to the transactions at issue either resulted in, or did not result in, ERISA violations toward the whole class. "[C]ourts typically find a defendant's liability under ERISA to be a question common to all class members "because a breach of

12

fiduciary duty affects all participants and beneficiaries." *Spence v. Am. Airlines, Inc.*, No. 4:23-CV-00552-O, 2024 WL 3635309, at *6 (N.D. Tex. May 22, 2024) (citation omitted)

Thus, common issues in this case include: whether Brozen served as Trustee in the Plan's sale of RVNB stock ("stock sale"); whether Brozen was an ERISA fiduciary of the Plan; whether Peterson, Vasilia, Paxton and Bouras were fiduciaries and parties in interest to the Plan; whether Brozen engaged in prohibited transactions under ERISA by causing the Plan to sell RVNB stock to parties in interest to the Plan; whether Brozen engaged in a good faith valuation of the RVNB stock in connection with the stock sale; whether Brozen caused the Plan to sell RVNB stock for less than fair market value; whether Brozen engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the stock sale; whether Brozen engaged in a prohibited transaction under ERISA by receiving consideration for his own account in the stock sale; whether Brozen breached his fiduciary duty to undertake an appropriate and independent investigation of the fair market value of RVNB stock in 2017; whether Peterson, Vasilia, and Paxton breached their fiduciary duties by appointing Brozen as trustee of the Plan; whether Bouras, Peterson, Vasilia, and Paxton breached their fiduciary duties by orchestrating a multi-stage transaction that usurped the Plan's opportunity to sell its RVNB stock at a higher price than it received; whether Defendants

13

breached their fiduciary duties by orchestrating the stock sale, causing the Plan to sell its employer stock, and allowing others to usurp projected company growth; whether Bouras, Peterson, Vasilia, and Paxton, as parties in interest, participated in the prohibited transactions; whether SIP III is liable for participating in the various breaches and violations of ERISA alleged herein; whether the Peterson Trusts are liable as parties in interest for unlawfully receiving Plan assets; the amount of losses suffered by the Plan and its participants as a result of the ERISA violations; and the appropriate relief for Defendants' violations of ERISA.

### c. The typicality requirement of Rule 23(a) is met.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality does not require a "complete identity of claims"; "rather, the critical inquiry is whether the [named plaintiff's] claims have the same essential characteristics of those of the putative class." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Where "claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.*; *see also Villagran v. Cent. Ford, Inc.*, 524 F. Supp. 2d 866, 883 (S.D. Tex. 2007).

By definition, a prohibited transaction claim brought under ERISA §§ 409(a), 502(a)(2) is brought on behalf of the plan and any recovery must be paid "to such plan." 29 U.S.C. §§ 1109(a), 1132(a)(2). Thus, courts generally find that ERISA

14

cases arising under § 502(a)(2) meet the typicality requirement because "the named plaintiffs assert that they, like the other members of the Settlement Class, suffered an economic loss arising out of Defendants' alleged ERISA violations. Their interests are aligned with the Settlement Class members." *Ramirez v. J.C. Penney Corp.*, Inc., No. 6:14-cv-601, 2017 WL 6462355, at *2 (E.D. Tex. Nov. 30, 2017) (approving ERISA settlement involving ESOP); *see also Lively v. Dynegy, Inc.*, No. 05-00063, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007) (because action is brought "on behalf of the Plan," plaintiff's claims are typical of the claims of class members); *Spence*, 2024 WL 3635309, at *7 ("In ERISA cases, the inherently representative nature of such actions means that the named plaintiff's claims are "necessarily typical of those of the rest of the class.")

Here, Plaintiffs were participants in the Plan during the relevant period. The Plan's primary asset was RVNB stock. In *Neil v. Zell*, an ERISA case arising from ESOP transactions, the court held that the named plaintiffs satisfied the typicality requirement because they "held the same investment as did all other members of the … ESOP"—employer stock. 275 F.R.D. 256, 261 (N.D. Ill. 2011); *Ramirez*, 2017 WL 6462355 (plaintiffs were typical because they suffered the same economic loss as a result of the transaction); *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 510 (W.D. Wis. 2011) (certifying class in ERISA case involving ESOP, finding named plaintiffs satisfied typicality); *Hill v. Hill Bros. Constr. Co., Inc.*, No.: 3:14-

CV-213-SA-RP, 2018 WL 280536, at *5 (N.D. Miss. Jan. 3, 2018) (approving settlement of ERISA case involving ESOP and certifying class for settlement purposes).

In addition, the damages sought here are losses and other relief on behalf of the Plan as a whole. Typicality is met.

### d. The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The purpose of the "adequacy" requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The Fifth Circuit has held that this inquiry requires the court to consider: "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Stirman*, 280 F.3d at 563 (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) and *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). All of these requirements are met here. Moreover, Plaintiffs' "interests are tightly aligned with those of all other class members due to the inherently representative nature of ERISA claims. Indeed, it is the general rule that there is 'a relatively low likelihood of intra-class conflict in fiduciary breach actions because the recovery is to the Plan, not to the

16

individual Plaintiffs." *Spence*, 2024 WL 3635309, at *8 (citations omitted).

Proposed Class Representatives Casey and Coleman have been actively engaged in the litigation, and they have provided documents to counsel used to draft the Complaints. *See* Porter Decl. ¶ 18. They have regularly conferred with counsel on the progress of the case. *Id*. They have no conflicts. *Id*. The Named Plaintiffs assert claims on the Plan's behalf and request no individual relief. *Id*. Therefore, the adequacy requirement of Rule 23(a)(4) is met.

Plaintiffs' Counsel in this case are well-qualified and experienced as described in detail in the Declaration of Gregory Porter. Porter Decl. ¶¶ 7–13 and Exhibit 4 to Porter Decl.; Declaration of Jack Edwards, attached hereto as Exhibit B, ¶ 4 and Exhibit 1 to Edwards Decl. Not only do these attorneys have extensive experience litigating class actions, including numerous ESOP cases, they have worked diligently to litigate the claims here. Porter Decl. ¶¶ 6, 15-17. There should be no question that Plaintiffs' Counsel brought sufficient skill and resources to litigate this case. Thus, Plaintiffs' Counsel satisfy Rules 23(a)(4) and 23(g).

## 2. The claims meet the requirements of certification under Rule 23(b)(1).

In addition to meeting the requirements of Rule 23(a), claims must meet at least one of the three provisions of Rule 23(b). The claims meet the requirement of Rule 23(b)(1).

"Courts have found that the 'language of subdivision (b)(1)(A), addressing

the risk of inconsistent adjudications, speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike." *Spence*, 2024 WL 3635309, at *10. "Class certification is routine in ERISA cases because it furthers the purpose of ERISA section 502(a)(2), acting as a procedural safeguard to ensure that recovery inures to the benefit of the Plan as a whole." *Id.* at *2 (internal quotations omitted); *Ramirez*, 2017 WL 6462355, at *3 ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") (citing *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009)). ERISA actions meet the requirements of Rule 23(b)(1) because "defendants often provide 'unitary treatment to all members of [a] putative class'" and "the rights of absent 'class member[s] [are often] … implicated by litigation brought by other class members.'" *Feret v. Corestates Fin. Corp.*, C.A. No. 97–6759, 1998 WL 512933, at *13 (E.D. Pa. Aug. 18, 1998).

### a. Class certification under Rule 23(b)(1)(A) is appropriate.

Rule 23(b)(1)(A) provides that a class may be certified if prosecuting separate actions would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for the party opposing the class. "Courts have found that the language of subdivision (b)(1)(A), addressing the risk of inconsistent

adjudications, speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike." *Spence*, 2024 WL 3635309, at *10 (N.D. Tex. May 22, 2024) (citation omitted). That is why courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary-breach actions since "the distinctive representative capacity aspect of ERISA suits to remedy a breach of fiduciary duty makes litigation of this kind a paradigmatic example of a Rule 23(b)(1) class." *Id.* (citing *Chavez v. Plan Benefit Servs., Inc.*, No. 17-cv-00659, 2022 WL 1493605, at *20 (W.D. Tex. Mar. 29, 2022); *see also Neil*, 275 F.R.D. at 267-68; *Knight v. Lavine*, No. 12-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013).

The risk of inconsistent adjudications is apparent in this case. For example, two central issues in this case are whether the Defendants caused the plan to sell its shares of RVNB for less than fair market value in 2017 and what steps Brozen undertook to determine that value. Separate lawsuits over these issues could result in different outcomes. Inconsistent adjudications of the true fair market value of RVNB stock at the time the Plan was terminated and the Plan's shares sold obtained by similarly-situated participants would make it impossible for the Plan administrator to treat similarly-situated participants alike. Accordingly, certification under Rule 23(b)(1)(A) is appropriate.

**b. Class certification under Rule 23(b)(1)(B) is appropriate.**

Certification under Rule 23(b)(1)(B) is appropriate where "any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (emphasis added). One example of an action ideally suited for certification under Rule 23(b)(1) is "the adjudication of the rights of all participants in a fund in which the participants have common rights." *Id.* at 834 n.14. Rule 23(b)(1)(B) is designed for "an action which charges a breach of trust by a[ ] ... trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment. That precisely describes the claims here.

Claims involving a fiduciary's breach of ERISA's prohibited transaction rules must be brought in a representative capacity on behalf of the plan under § 502(a)(2) for § 409 relief. 29 U.S.C. §§ 1109, 1132(a)(2); *Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016). Thus, courts recognize that ERISA cases are the classic examples of Rule 23(b)(1)(B) class actions. *See, e.g.*, *Ramirez*, 2017 WL 6462355, at *3 ("Breach of fiduciary duty claims brought pursuant to ERISA typically fall under Rule 23(b)(1)(B)."). This is particularly true for cases involving an ESOP. *See, e.g.*, *In re*

*Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 466-67 (E.D. Pa. 2000) (certifying 23(b)(1) class).

The key issues in the case thus focus on Defendants' conduct—principally, whether and how they caused the complained of prohibited transactions, the adequacy of its investigation into the value of RVNB stock, the information used in its valuations, and the conclusions drawn from that information. Thus, a judgment that Defendants breached ERISA would apply to the Plan as a whole and impact all class members equally. Further, any money recovered will be paid to the Plan, meaning that resolution of these issues will affect all participants in the Plan.

## B. The Court Should Grant Preliminary Approval of the Settlement Because it is Fair, Reasonable, and Adequate.

### 1. The standards for preliminary approval are met.

Rule 23(e) provides that a class action cannot be settled without court approval and notice to the class. At preliminary approval, the court must determine whether the settlement justifies giving notice of the settlement to the class. Rule 23(e)(1).

Rule 23, as amended in 2018, provides specific direction to federal courts considering whether to grant preliminary approval of a class action settlement and approve the issuance of notice. Fed. R. Civ. P. 23(e), Committee Notes. The court must be satisfied that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see In re Chinese-Manufactured Drywall Products Liability*

*Litig.*, 424 F. Supp. 3d 456, 481 (5th Cir. 2020); *ODonnell v. Harris County, Texas*, No. H-16-1414, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019).

"Under Rule 23, review of a proposed class action settlement generally involves two hearings, the first of which is a 'preliminary fairness' evaluation made by the Court," and "within the Fifth Circuit is it routine to conduct a preliminary fairness evaluation prior to the issuance of notice." *In re Chinese-Manufactured Drywall Products Liability Litig.*, 424 F. Supp. 3d at 484. "The Court is required to render a determination on the fairness, reasonableness, and adequacy of the Settlement Agreement." *Id.* The factors that provide guidance regarding this determination are as follows:

(A)  the class representatives and counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Rule 23(e)(2); *see also In re Chinese-Manufactured Drywall Products Liability Litig.*, 424 F. Supp. 3d at 485; *ODonnell*, 2019 WL 4224040 at *8 (citing Fed. R. Civ. P. 23(e)).

Prior to the 2018 amendments, the Fifth Circuit traditionally evaluated class action settlements using the six factors outlined in *Reed v. Gen. Motors Corp.*, (the Reed factors):

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citation omitted); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017); *In re Chinese-Manufactured Drywall Products Liability Litig.*, 424 F. Supp. 3d at 485.

Plaintiffs will address each of these factors to the extent they are applicable, many of which overlap.[4]

Ultimately, to approve the proposed settlement the court must determine that it is fair, reasonable and adequate. *See Jones*, 865 F.3d at 293.

---

[4] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and since Class Notice has not yet been sent, the opinion of the Class (*Reed* factor #6) cannot be evaluated yet.

### 2. The class is adequately represented, the negotiations were at arm's length, and there is no suggestion of collusion.

Rule 23(e)(2)(A), requiring adequate representation by the Plaintiffs and their counsel is addressed in Section IV(A)(1)(d) above. In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were at arm's length, extensive and hard fought, with the assistance of a professional, experienced class action mediator. *See* Section II(C) above; Porter Decl. ¶ 16. Similarly, the arm's length nature of the negotiations, and the vigorous litigation of the Action, establish a lack of collusion, the first *Reed* factor. *See ODonnell*, 2019 WL 4224040, at *9. As the court observed in *ODonnell*, like here, there is no suggestion of fraud or collusion in this case, where "[t]he proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length." *Id.* In such cases, the court may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Id.* (citing *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018)).

### 3. The complexity, expense, and likely duration of the litigation.

Rule 23(e)(2)(C)(i) and the second and fourth *Reed* factor, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation. This factor requires a court to determine whether the settlement falls within "a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656

(N.D. Tex. 2010) (quoting *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007)).

Here, the litigation would be even more lengthy and expensive if this Action were to proceed further. Plaintiffs faced significant risks. Plaintiffs and Defendants had vastly different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. Plaintiffs' core allegations regarding the stock sale rested on facts that were strongly contested by Defendants, including whether the stock sale was in the best interest of the Plan, whether the Plan received maximum value for its stock, and whether there were negative facts that were ignored by or not sufficiently investigated by Brozen during the due diligence and negotiation process.

Defendants vigorously denied all of the allegations, asserted affirmative defenses, and otherwise defended its actions with respect to the stock sale. Defendants pointed to evidence that in their view supported the conclusion that they had no liability. If the Action were to proceed through trial, Plaintiffs would have to overcome these defenses and arguments.

Plaintiffs and Defendants also strongly disagree on the proper measure of damages. Defendants contend that the Plan and its participants were not harmed at all. Plaintiffs, on the other hand, argued that the Plan incurred significant financial damage from the underpayment to the Plan during the stock sale. The Parties have exchanged position papers supporting their differing views of what a proper measure

of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time the Parties reached their Settlement, and the uncertainty put both Parties at great risk.

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

Further, the Parties' dispute over Defendants' motion to compel arbitration remained unresolved. On July 12, 2023, the Court denied Defendants' motion to compel arbitration. On August 11, 2023, Defendants filed a notice of interlocutory appeal of the Court's denial. The case has been stayed pending resolution of the appeal. The United States Court of Appeals for the Fifth Circuit heard oral argument on March 11, 2024, but has not issued an opinion. Even if affirmed on appeal, Plaintiffs would still face a trial on the merits, likely followed by an appeal on the merits. In sum, Plaintiffs and the Settlement Class may have waited several years for ultimate resolution and recovery.

Before the Parties reached trial, they would have to expend substantial time and effort to proceed through formal discovery, brief and argue summary judgment motions, prepare the joint pretrial exhibit list, including identification of relevant exhibits and litigating any motions *in limine*. And, regardless of the outcome, there

26

likely would have been appeals that followed, further delaying resolution and causing more expense.

In light of the inherent uncertainty, and potential for delay, a settlement of $12,272,727.27—approximately $8,500 per participant[5] before fees and other costs are applied—is a good result for the Class. As courts in this Circuit have noted, "in the context of a class action settlement, compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Klein*, 705 F. Supp. 2d at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n.69 (5th Cir. 1978)). "Inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *6 (N.D. Tex. July 1, 2015) (internal citations omitted). A certain recovery for the class now, far outweighs the mere possibility of future relief after years of costly litigation. *See Klein*, 705 F. Supp. 2d at 651 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.") (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $12,272,727.27 outweighs the uncertain possibility of a greater

---

[5] Based on Form 5500 for 2017

amount in the future, particularly given the amount of time it would take—including discovery, trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Plan participants.

### 4. The stage of the proceedings and the amount of discovery completed.

This *Reed* factor requires the Court to evaluate whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Klein*, 705 F. Supp. 2d at 653 (citing *Ayers*, 358 F.3d at 373).

In this case, as described in Section II(B) above, the Parties engaged in a thorough informal discovery process, focused on the most important documents, regarding the facts and claims in this Action, including culling and reviewing relevant documents and working with an expert consultant.

### 5. The effectiveness of the proposed method of distributing relief to the Class.

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the Settlement Agreement contemplates Plaintiffs' Counsel providing, or causing to be provided, the names and last known addresses of members of the Settlement Class, and the number of vested shares of RVNB stock that were allocated to their ESOP account to the Settlement Administrator. Settlement Agmt. ¶ 2.1.3.1. Plaintiffs and Defendants shall use reasonable efforts to respond timely to written requests, including by e-mail, from the Settlement Administrator for any

readily accessible data that is reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation. *Id*. at ¶ 2.1.3.1.1. The Settlement Administrator will use that information and follow the Plan of Allocation which is based on a pro rata allocation premised on each Class Members' percentage of vested RVNB shares. *Id*. at ¶ 8.2.2. All Class Members will receive a check directly from the Settlement Administrator if they do not opt to rollover their Settlement Credit Amount.

### 6. The terms of the proposed award of attorneys' fees.

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III(C), Plaintiffs' Counsel will file an application seeking an award of attorneys' fees and expenses in an amount not exceeding 15% of the Class Settlement Amount and distributed from the common fund. Settlement Agmt. ¶ 10.1.

### 7. The proposal treats class members equitably relative to each other.

As described in Section III(B) above, the Parties have agreed, subject to Court approval, to a Notice Plan, which calls for individual mailed notice to the Settlement Class. This notice and the manner in which it will be disseminated satisfies Rule 23(e)(1) and constitutional due process concerns. As noted above, the ultimate allocation will be premised on the percentage of shares held by each Class Member. For illustrative purposes, if it is assumed that (i) the Net Settlement Amount equals

$10 million, (ii) the total shares of stock allocated to Participants' Plan accounts on June 29, 2017 equals 52,000 shares; and (iii) Class Member A Plan account held 100 shares, then Class Member A's Settlement Credit Amount equals $19,230. This is because Class Member A's percentage of the stock allocated to Plan Participants' Accounts equals 0.1923% (100/52,000=0.001923), and the Net Settlement Amount multiplied by 0.1923% equals $19,230 ($10,000,000*0.001923=$19,230).

Plaintiffs request that the Court approve Simpluris as Settlement Administrator and Escrow Agent. Simpluris has extensive experience in the administration of settlements of this type. *See* Simpluris Resume, attached as Exhibit 2 to the Porter Decl.

Finally, the Parties request that the Court schedule a Fairness Hearing on Plaintiffs' motion for final approval of the Settlement and motion of an award of reasonable attorneys' fees and Case Contribution Awards to the Named Plaintiffs, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Class Members to object, and considering final approval of the Settlement.

## V. CONCLUSION

The proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully requests that the Court issue an Order: (a) granting preliminary approval of the Settlement Agreement, attached to the

Porter Declaration as Exhibit 1; (b) certifying the Settlement Class for settlement purposes, and appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel; (c) approving the proposed Class Notice, Exhibit A to the Settlement Agreement; (d) appointing Simpluris as the Settlement Administrator and Escrow Agent; (e) approving the Plan of Allocation; and (f) setting a date for a Fairness Hearing.

Dated: January 9, 2025

/s/ *Gregory Y. Porter*
Gregory Y. Porter
Ryan T. Jenny
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
202-463-2101
Fax: 202-463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

Patrick Muench
Bailey & Glasser LLP
318 W Adams St
Suite 1512
Chicago, IL 60606
312-500-8680
Email: pmuench@baileyglasser.com

J Douglas Uloth
Uloth, P.C.
5080 Spectrum Drive
Suite 1000 East
Addison, TX 75001
469/791/0411

31

Fax: 888/780-5946
Email: douguloth@ulothlaw.com

John Saul Edwards, Jr
Ajamie LLP
711 Louisiana Street
Suite 2150
Houston, TX 77002
713-860-1600
Fax: 713-860-1699
Email: jedwards@ajamie.com

Thomas R Ajamie
Ajamie LLP
711 Louisiana
Suite 2150
Houston, TX 77002
713/860-1600
Fax: 713/860-1699
Email: tajamie@ajamie.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that this motion contains 7,189 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates, but including footnotes.

*/s/ Gregory Y. Porter*
Gregory Y. Porter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of January 2025, a copy of the foregoing document was served on all counsel of record via ECF.

*/s/ Gregory Y. Porter*
Gregory Y. Porter
