# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| JASON COLEMAN and JESSICA CASEY, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | |
| **Plaintiffs,** | |
| v. | Case No. 3:20-CV-01358-E |
| NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, MIKE PAXTON, NICK BOURAS, STERLING INVESTMENT PARTNERS III, L.P., NICOLE PETERSON 2012 IRREVOCABLE TRUST, and BROOKE PETERSON 2012 IRREVOCABLE TRUST, | |
| **Defendants.** | |

## PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR FINAL APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## Table of Contents

I.    INTRODUCTION ............................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

   A.    Background and Motion Practice ................................................................. 2

   B.    Discovery ...................................................................................................... 3

   C.    The Parties' Settlement Efforts .................................................................... 4

   D.    Key Terms of Settlement ............................................................................. 5

   E.    Notice Reached Over 96% of the Class; There are no Objections ............. 6

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED ...................................................................................................... 7

   A. The Settlement Class is adequately represented, negotiations were at arm's length, and there is no suggestion of collusion ..................................................................... 9

   B. The relief obtained is substantial, especially considering the complexity, expense, and likely duration of the litigation, and the probability of success. ......................................... 11

   C. The factual record was well developed through discovery, and the litigation was sufficiently advanced. ......................................................................................... 14

   D.    The proposed method of distributing relief to the Class is highly effective; Settlement benefits are automatic. ........................................................................................ 14

   E.    The terms of the proposed award of attorneys' fees. ................................ 15

   F.    The proposal treats Class Members equitably relative to each other. ....... 15

   G.    The opinions of Class Counsel, Class Representatives, and absent Class Members. 15

IV.    THE CLASS IS APPROPRIATELY CERTIFIED FOR SETTLEMENT PURPOSES ............................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
    No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)..............................................8

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ......................................................................................13, 14

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ..............................................................................................9

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ...........................................................................................13

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ..................................................................................7, 15

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Jan. 13, 2020) .........................................13

*Hale v. State Farm Mut. Automobile Ins. Co.*,
    No. 12-0660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) .................................................14

*Hays v. Eaton Grp. Attorneys, LLC*,
    No. 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019)........................................................14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ....................................................................7, 9, 10

*Horton v. Goose Creek Indep. Sch. Dist.*,
    690 F.2d 470 (5th Cir. 1982) ..............................................................................................9

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ...................................................................... *passim*

*Lee v. Metrocare Servs.*,
    No. 3:13-CV-2349, 2015 WL 13729679 (N.D. Tex. July 1, 2015).......................................13

*ODonnell v. Harris County, Texas*,
    No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ............................9, 10, 11, 15

*Pettway v. Am. Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978) ...........................................................................................13

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ...............................................................................8, 11, 14, 15

*Smith v. Krispy Kreme Doughnut Corp.*,
    No. 05-cv-187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) .................................................11

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) ...............................................................................................9

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) ...................................................................................11

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ...............................................................................................7

*United States v. City of Miami, Fla.*,
    614 F.2d 1322 (5th Cir. 1980) .............................................................................................7

*Vaughn v. Am. Honda Motor Co.*,
    627 F. Supp. 2d 738 (E.D. Tex. 2007) .................................................................................7

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................................7

*Welsh v. Navy Fed. Credit Union*,
    No. 16-CV-1062, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018)........................................11

**Statutes**

Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").............. *passim*

ERISA § 502(l), 29 U.S.C. § 1132(l)........................................................................................1

**Federal Rules of Civil Procedure**

Rule 23 .....................................................................................................................................2, 9

Rule 23(a)..................................................................................................................................16

Rule 23(b)(1).............................................................................................................................16

Rule 23(e).................................................................................................................................7, 8

Rule 23(e)(1).............................................................................................................................6

Rule 23(e)(2).........................................................................................................................1, 7, 8

Rule 23(e)(2)(A)........................................................................................................................9

Rule 23(e)(2)(B)........................................................................................................................10

Rule 23(e)(2)(C)(i)....................................................................................................................11

iii

Rule 23(e)(2)(C)(ii)........................................................................................................14

Rule 23(e)(2)(C)(iii).......................................................................................................15

Rule 23(e)(2)(c)(iv)..........................................................................................................9

Rule 23(e)(2)(D) ............................................................................................................15

Rule 23(e)(3) ....................................................................................................................8

Pursuant to Federal Rule of Civil Procedure 23 and this Court's preliminary approval of settlement, Dkt. 143, Plaintiffs Jason Coleman and Jessica Casey ("Plaintiffs"), individually and as Class Representatives, respectfully request that the Court grant final approval of the class action settlement reached among Plaintiffs and Defendants Neil M. Brozen, Robert Peterson, Jr., Vasilia Peterson, Mike Paxton, Nick Bouras, Sterling Investment Partners III, L.P., Nicole Peterson 2012 Irrevocable Trust, and Brooke Peterson 2012 Irrevocable Trust ("Defendants" and together with Plaintiffs, the "Settling Parties").[1]

## I.    INTRODUCTION

Subject to the Court's approval, the Settling Parties have entered an agreement to settle this Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., ("ERISA") class action (the "Class Action"). The Settling Parties have agreed to resolve all matters in controversy between them in the Class Action for the sum total of $14,000,000, inclusive of a penalty under ERISA § 502(l), 29 U.S.C. § 1132(l). Should the Court grant approval, every eligible Class Member will receive their portion of the Net Settlement Amount[2] according to a *pro rata* Plan of Allocation (an average of approximately $10,859.45 per Class Member before any fees and expenses). *See* Declaration of Gregory Y. Porter ¶ 17, attached as Exhibit 1 (listing 1,172 Class Members with vested shares) ("Porter Decl."). The proposed Settlement satisfies all the criteria for final approval found in Rule 23(e)(2) and under Fifth Circuit law and provides an excellent result for the Class.

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Settlement Agreement filed herewith.

[2] The Net Settlement Fund consists of the Class Settlement Amount, plus accrued interest, minus (a) any Court-approved Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Court-approved Case Contribution Awards.

1

The Court granted Plaintiffs' motion for preliminary approval and approved class notice on January 30, 2025 ("Preliminary Approval Order"), Dkt. 143. The Settling Parties have fulfilled all their obligations under the Preliminary Approval Order, and Plaintiffs now ask the Court to: (1) grant final approval of the Settlement; (2) grant final certification of the Settlement Class for settlement purposes only; (3) find that the Settlement Notice satisfies the requirements of due process and Rule 23; (4) find the Settlement to be fair, reasonable, an adequate; (5) dismiss on the merits and with prejudice all claims asserted against Defendants; (6) approve the awards of Plaintiffs' Counsel Attorneys' Fees in the amount of $1,909,090.90 and Costs and expenses in the amount of $62,366.91 as requested in their separately filed motion for attorneys' fees and costs; (7) approve the settlement administration expenses necessary to effectuate the Settlement; and (8) award $20,000 to Plaintiffs Jason Coleman and Jessica Casey as Case Contribution Awards.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Background and Motion Practice

This class action is brought on behalf of participants and beneficiaries of the RVNB Holdings, Inc. Employee Stock Ownership Plan ("Plan"). The Complaint alleges that Neil Brozen ("Brozen" or the "Trustee"), in his capacity as Trustee, and other Defendants (individuals and trusts) who were involved in a series of transactions, violated ERISA. Plaintiffs initiated the Class Action in the Eastern District of Texas on September 27, 2019. (Dkt. 1). The initial Complaint named as Defendants Brozen, Robert Peterson Jr. ("Peterson"), Vasilia Peterson ("Vasilia"), Paul Generale ("Generale"), Mike Paxton ("Paxton"), Nick Bouras ("Bouras"), and Sterling Investment Partners III, L.P ("SIP"). On April 3, 2020, Plaintiffs filed an Amended Complaint (Dkt. 33), removing Generale as a Defendant and adding the Nicole Peterson 2012 Irrevocable Trust and the Brooke Peterson 2012 Irrevocable Trust (the "Peterson Trusts").

2

In Counts I and II of the Amended Complaint, Plaintiffs alleged that Brozen violated ERISA in connection with the ESOP Transaction by, *inter alia*, causing the Plan to sell its shares of RVNB stock for below fair market value, terminating the Plan, and quickly selling the RVNB stock for Defendants' own benefit. (Am. Compl. ¶¶ 99–125). In Counts III and IV, Plaintiffs alleged that the other Defendants violated ERISA by participating in or having knowledge of Brozen's violation of ERISA's prohibited transaction rules. (*Id.* ¶¶ 126-146). Defendants deny these allegations, deny any wrongdoing or liability, and have vigorously defended themselves in this Class Action. Defendants do not admit wrongdoing of any kind regarding the ESOP Termination or this Class Action.

The Parties engaged in extensive motion practice. Defendants filed a motion to Transfer Venue on March 16, 2020 (Dkt. 27) which was fully briefed (Dkt. 37, 38, 42) and granted on May 6, 2020 (Dkt. 49). Defendants filed a Motion to Stay Discovery on April 14, 2020 (Dkt. 36) which was briefed (Dkt. 43, 44) but never ruled on. Defendants filed a Motion to Compel Individual Arbitration (Dkt. 66) on June 22, 2020 ("Motion to Compel"). The Motion to Compel was fully briefed and included numerous notices of, and responses to, supplemental authority (Dkt. 70–71, 74–75, 78–79, 83, 86, 89–90, 93–94, 97–98, 111–114, 117–118, 124–126, and 128–129). The District Court denied the Motion to Compel on July 12, 2023. (Dkt. 130). Defendants appealed that decision on August 11, 2023 (Dkt. 135), automatically staying all proceedings in this Court. Oral arguments were held on the Motion to Compel in the Fifth Circuit on March 11, 2024, but the decision was stayed pending resolution of this Settlement.

## B. Discovery

The Parties completed substantial document discovery through an informal process that involved Defendants and the DOL. After the District Court denied Defendants' Motion to

Compel, and while Defendants' appeal of that decision was pending in the Fifth Circuit, the Parties to the Class Action and Secretary's Action began discussing settlement. As part of that process, Plaintiffs requested, and Defendants agreed to produce, categories of documents to inform and evaluate a potential resolution. Plaintiffs received and reviewed, *inter alia*: presentations prepared by RVNB's advisors that were provided to RVNB and the Trustee; RVNB's Board of Directors meeting minutes; discussions among the Trustee and its advisors related to the ESOP Transaction including the terms, valuation, and negotiation; transaction documents containing the terms of the ESOP Transaction; opinion letters provided by the Trustee's advisors; valuation reports prepared by the Trustee's financial advisors; diligence reports prepared by the Trustee's legal advisor; handwritten notes taken by the Trustee during the ESOP Transaction process; and minutes from the Trustee's meetings related to the ESOP Transaction. *See* Porter Decl. ¶ 15. Plaintiffs' Counsel is experienced in litigating ESOP cases and therefore understands the key information needed to evaluate Plaintiffs' claims—that information was produced during the informal discovery process. *Id.* ¶¶ 7-13, 15; Exhibit 4 attached to the Declaration of Gregory Porter in Support of the Preliminary Approval Motion; Declaration of John S. Edwards, Jr., Exhibit C, attached as Exhibit 2 ("Ajamie Decl."). Plaintiffs' Counsel also retained and consulted an expert in private company purchase and sale transaction who prepared preliminary analyses regarding the terms and process of the ESOP Transaction and advised Plaintiffs' Counsel during settlement negotiations. *Id.* ¶ 6.

### C. The Parties' Settlement Efforts

The Parties to the Class Action and Secretary's Action mediated this matter for three days with Maxine Aaronson, an experienced mediator with over 30 years of experience including expertise in ERISA and other employee benefit disputes. Porter Decl. ¶ 16. The Parties drafted

4

and submitted comprehensive mediation statements to Mediator Aaronson that focused all sides

on the key issues. *Id.* Counsel for the Parties attended a three-day mediation in Dallas, Texas,

from July 9 to July 11, 2024. *Id.* The attendees vigorously engaged in the mediation process,

during which all attendees' counsel made presentations to the entire group and individually to

Mediator Aaronson. *Id.* After much deliberation, discussion, and compromise, the Parties to the

Class Action and Secretary's Action agreed to resolve the disputes according to the terms laid

out in the Settlement Agreement, attached as Exhibit 1 to the Porter Declaration in Support of the

Preliminary Approval Motion. *Id.*

### D. Key Terms of Settlement

Each of the material terms of the Settlement Agreement are summarized in Plaintiffs'

Motion for Preliminary Approval, Dkt. 140, at 6–10. In brief, Defendants have agreed to pay

$14,000,000: $1,272,727.27 to the DOL (the "ERISA Penalty") and $12,727,272.73 into a

Qualified Settlement Fund (the "Class Settlement Amount"). Dkt. 140-2, Settlement Agmt., ¶¶

7.1–7.4. The funds remaining after deduction from the Class Settlement Amount for (a) all

Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Case Contribution

Awards shall constitute the "Net Settlement Amount." *Id.* ¶¶ 1.23, 7.2.5, 10.1, 10.3. The Net

Settlement Amount will be distributed to the Class Members pursuant to the Plan of Allocation.

*Id.* ¶ 8.2.2; Exhibit 5 to the Declaration of Gregory Porter in Support of the Preliminary

Approval Motion. Each Class Member's Settlement Credit Amount shall be equal to the Net

Settlement Amount multiplied by the percentage of Company stock held in the Class Member's

Plan account as of June 29, 2017. *Id.*

The proposed Settlement Class is defined as: all vested Participants in the RVNB Holdings,

Inc. Employee Stock Ownership Plan as of June 29, 2017, the date of the termination of the Plan,

or their Beneficiaries or Alternate Payees.. Dkt. 140-2, Settlement Agmt., ¶ 1.47. With the exception of Nick Bouras, all Defendants are excluded from the Settlement Class and Defendants' Successors-In-Interest. *Id.* Nick Bouras, or his Beneficiaries or Alternate Payees, shall be a member of the Settlement Class. *Id.*

### E. Notice Reached Over 96% of the Class; There are no Objections

Class members are entitled to notice of any proposed settlement and an opportunity to object before it is finally approved by the court. For this reason, Rule 23(e)(1) requires that when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Here, the Notice Plan approved by the Court was implemented by the Parties. On or about April 23, 2025, Settlement Administrator Simpluris mailed the Class Notice to all 1,172 Settlement Class Members, as required by the Settlement Agreement. Dkt. 140-2, Settlement Agmt. ¶ 2.1.3.1; Declaration of Lisa Pavlik of Simpluris, attached as Exhibit 3, ("Simpluris Decl.") ¶¶ 5–6. As of June 6, 2025, 339 Class Notices for 339 Class Members were returned by the United States Postal Service as undeliverable. Simpluris Decl. ¶ 7. 315 Notices, representing 315 Class Members, have been re-mailed based on updated addresses obtained through searches performed by Simpluris or through forwarded mail. *Id.* ¶ 7. 21 Notices have been returned as undeliverable. *Id.* ¶¶ 7–8. As of June 6, 2025, Notices mailed to 1130 Class Members (representing approximately 96.4% of the Class) have not been returned as undeliverable and Notices to 21 Class Members were undeliverable and an updated address was not found. *Id.* ¶ 8. The Class Notice, attached to the Simpluris Declaration as Exhibit A, is clear and straightforward, and provided Class Members with sufficient information to inform them about the nature of the Action, the terms of the Settlement, and the procedures for entering

an appearance to be heard or to object to the Settlement. *Id.*, Exhibit A. The Class reaction to the

Settlement has been positive. As of June 6, 2025, no objections have been received. *Id.* ¶ 9.

Simpluris also established a settlement website with detailed information about the

Settlement. *Id.* ¶ 10. The website address—https://RVNBESOPSettlement.com—was printed on

all Notices. *Id.* The settlement website provides links to key documents, lists important dates and

deadlines, and provides contact information for Simpluris and Class Counsel. *Id.* An email

address—info@RVNBESOPSettlement.com—as well as a toll-free telephone number were

included in the Notice for the purpose of allowing Settlement Class Members to reach Simpluris

to make inquiries regarding the Settlement. *Id.* ¶¶ 11–12. Simpluris' fees and expenses are

expected to be approximately $26,416.00 through the end of the settlement process. *Id.* ¶ 13.

### III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

Courts favor class action settlements. *See Vaughn v. Am. Honda Motor Co.*, 627 F. Supp.

2d 738, 746 (E.D. Tex. 2007); *United States v. City of Miami, Fla.*, 614 F.2d 1322, 1332 (5th

Cir. 1980). There is a strong presumption in favor of fairness when a class settlement is

"'reached in arm's-length negotiations between experienced, capable counsel after meaningful

discovery.'" *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp.

2d 1040, 1063 (S.D. Tex. 2012) (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96,

116 (2d Cir. 2005)); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) ("strong

presumption" in favor of settlement); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D.

Tex. 2007).

Rule 23(e) provides that to be approved, a settlement must be fair, adequate, and

reasonable. Rule 23(e)(2); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th

Cir. 2012); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL

387409, at *3 (S.D. Tex. Jan. 30, 2019).

The 2018 Amendments to Rule 23(e) direct courts to determine if a settlement is fair,

reasonable, and adequate. It provides that courts should consider whether:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class,

including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of

payment;[3] and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendments, the Fifth Circuit traditionally evaluated class action

settlements using the six factors outlined in *Reed v. Gen. Motors Corp.* (the Reed factors):

(1) the existence of fraud or collusion behind the settlement; (2) the complexity,
expense, and likely duration of the litigation; (3) the stage of the proceedings
and the amount of discovery completed; (4) the probability of plaintiffs' success
on the merits; (5) the range of possible recovery; and (6) the opinions of the
class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citation omitted); *see also Klein*,

705 F. Supp. 2d at 649.

---

[3] Class Counsel addressed the reasonableness of their requested attorneys' fees and expenses in
their separately filed fee application.

Plaintiffs will address each of these factors to the extent they are applicable, many of which overlap.[4] *See ODonnell v. Harris County, Texas*, No. H-16-1414, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019) (because the Rule 23 and Reed factors overlap, "courts in this circuit often combine them in analyzing class settlements").

Ultimately the decision whether to approve the settlement involves a balance. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063; *see also Klein*, 705 F. Supp. 2d at 650 (when considering approval, a court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial") (internal quotation marks omitted).

## A. The Settlement Class is adequately represented, negotiations were at arm's length, and there is no suggestion of collusion.

Rule 23(e)(2)(A) requires adequate representation by Plaintiffs and their counsel. The Fifth Circuit has held the adequacy inquiry requires the court to consider: "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) and *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). Each of these requirements is met here.

Both Jason Coleman and Jessica Casey have been exemplary class representatives. They have been actively engaged in the litigation, and they have provided documents to counsel used to draft the Complaints. Porter Decl. ¶ 34. They have regularly conferred with counsel on the

---

[4] There is no agreement required to be produced under Rule 23(e)(2)(c)(iv).

progress of the case. *Id.* They asserted claims on the Plan's behalf and requested no individual relief. *Id.* They were prepared to continue the case and testify at trial. They have no conflicts with the class and assert no claims for individual relief. They obtained an excellent result for the Class, a result that would not have been possible without them. They have diligently and zealously represented the Class.

Plaintiffs' Counsel have and will continue to adequately represent the Class. They are well-qualified and experienced as described in Porter Decl. ¶¶ 7–13; Exhibit 4 attached to the Declaration of Gregory Porter in Support of the Approval Motion; and Exhibit C of the Ajamie Decl. Not only do these attorneys have extensive experience litigating class actions, including numerous ESOP cases, they have worked diligently to litigate the claims here. Porter Decl. ¶¶ 6, 15-16. They have brought more than sufficient skill and resources to litigate this case, as also described in their separately filed Motion for Award of Attorneys' Fees.

In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were arm's length, hard fought, and at times contentious, conducted with the assistance of a professional class action mediator, experienced in the legal issues and nuances of ERISA class actions. *See* Section II(C) above; Porter Decl. ¶ 16. As above, there is typically a presumption of fairness that a settlement is fair and reasonable when it is the result of arm's length negotiations between experienced counsel. *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063 (citations omitted). The arm's length nature of the negotiations, and the vigorous litigation of the Action, also establish a lack of collusion, the first Reed factor. *ODonnell v. Harris County, Texas*, No. H-16-1414, 2019 WL 4224040, at *9–10 (S.D. Tex. Nov. 21, 2019). As the court observed in *ODonnell*, there is no suggestion of fraud or collusion in a case, like this one, where "[t]he proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length." *Id.* Thus, the court

10

may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Id.* (citing *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018)).

### B. The relief obtained is substantial, especially considering the complexity, expense, and likely duration of the litigation, and the probability of success.

Rule 23(e)(2)(C)(i), and the second, fourth, and fifth *Reed* factors, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation. These factors require a court to determine whether, in light of the risks and costs, the settlement falls within "a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Id.* at 656 (quoting *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007)). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651.

***Complexity and Risk***. As described in Plaintiffs' Motion for Award of Attorneys' Fees, "ERISA law is highly complex," *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-cv-187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007), and this case is no exception. Plaintiffs' core allegations regarding the stock sale rested on facts that were strongly contested by Defendants, including whether the stock sale was in the best interest of the Plan, whether the Plan received maximum value for its stock, and whether there were negative facts that were ignored by or not sufficiently investigated by Brozen during the due diligence and negotiation process.

Defendants vigorously denied all of the allegations, asserted affirmative defenses, and otherwise defended its actions with respect to the stock sale. Defendants pointed to evidence that in their view supported the conclusion that they had no liability. If the Action were to proceed through trial, Plaintiffs would have to overcome these defenses and arguments.

11

Regarding damages, Plaintiffs and Defendants also strongly disagreed. Defendants contend that the Plan and its participants were not harmed at all. Plaintiffs, on the other hand, argued that the Plan incurred significant financial damage from the underpayment to the Plan during the stock sale. The Parties have exchanged position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time the Parties reached their Settlement, and the uncertainty put both Parties at great risk.

Further, the Parties' dispute over Defendants' motion to compel arbitration remained unresolved. On July 12, 2023, the Court denied Defendants' motion to compel arbitration. On August 11, 2023, Defendants filed a notice of interlocutory appeal of the Court's denial. The case has been stayed pending resolution of the appeal. The United States Court of Appeals for the Fifth Circuit heard oral argument on March 11, 2024, but has not issued an opinion. Even if affirmed on appeal, Plaintiffs would still face a trial on the merits, likely followed by an appeal on the merits. In sum, Plaintiffs and the Settlement Class may have waited several years for ultimate resolution and recovery.

***Expense and Delay***. These issues, among others, show that continuing to litigate this case to verdict would require the investment of even more time and resources by the Parties, beyond the sizeable amounts already expended. Combined, Plaintiffs' counsel have committed over 1,600 hours of time to this case so far, representing approximately $1,019,924.00 in lodestar, and have incurred over $61,000 in expenses. Porter Decl. ¶¶ 24, 26, 32. Before the Parties reached trial, they would have to expend additional time, effort, and resources to continue discovery, brief dispositive motions, and prepare for trial.

These fact intensive inquiries would have led to a battle of experts and conflicting evidence

12

and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

Even if the case proceeded to trial, no doubt lengthy appeals would follow, which would delay the class receiving any relief for years. And even winning on appeal would not guarantee success.

*Results Obtained*. In light of the inherent uncertainty, and potential for delay, a settlement of $12,272,727.27—approximately $10,859.45 per participant before fees and other costs are applied—is a good result for the Class and is greater than recoveries in other ERISA cases. *See* Porter Decl. ¶ 18, chart of average class member gross recoveries in ERISA cases, ranging from $129 to $2,291. In contrast, for example, in the *Ramirez* case, the court approved a settlement of $4.5 million for 55,000 class members, and awarded fees of 30%. *Ramirez*, 2017 WL 6462355, at *4. As courts in this Circuit have noted, "in the context of a class action settlement, 'compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial.'" *Klein*, 705 F. Supp. 2d at 649 (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n.69 (5th Cir. 1978)). "Inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Lee v. Metrocare Servs.*, No. 3:13-CV-2349, 2015 WL 13729679, at *6 (N.D. Tex. July 1, 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

A certain recovery for the class now, far outweighs the mere possibility of future relief after years of costly litigation. *See Klein*, 705 F. Supp. 2d at 651 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.") (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800,

2020 WL 256132, at \*7 (N.D. Ga. Jan. 13, 2020) (weighing reasonableness of settlement benefits that are certain and available now against years of litigation and uncertainty).

### C. The factual record was well developed through discovery, and the litigation was sufficiently advanced.

The third *Reed* factor requires the Court to evaluate whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Klein*, 705 F. Supp. 2d at 653 (citing *Ayers v. Thompson*, 358 F.3d at 373). To assess the fairness of a proposed settlement, there must be sufficient information. *Manual for Complex Litig.* (Fourth), § 22.921 (2004); *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88, 2019 WL 427331, at \*10–11 (M.D. La. Feb. 4, 2019).

In this case, as described above in Section II(A) and (B), the Parties completed comprehensive discovery, including expert discovery, briefed substantive and dispositive motions, and were preparing for trial when they reached a settlement in principle. They fully understood the strengths and weaknesses of their positions before they entered into mediation.

### D. The proposed method of distributing relief to the Class is highly effective; Settlement benefits are automatic.

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the proposed method for distributing relief to Settlement Class Members is effective and equitable. Plaintiffs' Counsel has provided the names and last known addresses of members of the Settlement Class, and the number of vested shares of RVNB stock that were allocated to their ESOP account to the Settlement Administrator. Dkt. 140-2, Settlement Agmt. ¶ 2.1.3.1. The Settlement Administrator will use that information and follow the Plan of Allocation. *Id.* ¶ 8.2.2. All Class Members will receive a check directly from the Settlement Administrator if they do not opt to rollover their Settlement Credit Amount. *Id.*; *see Hale v. State Farm Mut. Automobile Ins. Co.*, No. 12-0660,

14

2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (finding distribution method involving direct payments to class members whose addresses are known to the parties, plus small number of claim forms for others, to be sufficiently effective). No claims are required.

**F.  The terms of the proposed award of attorneys' fees.**

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. In accordance with the Settlement Agreement, Plaintiffs' Counsel has filed a separate application for an award of attorneys' fees in an amount not exceeding 15% of the Class Settlement Amount, plus reimbursement of litigation expenses, which addresses the reasonableness of the fees requested. Dkt. 140-2, Settlement Agmt. ¶ 10.1.

**G.  The proposal treats Class Members equitably relative to each other.**

Rule 23(e)(2)(D) requires that the court consider whether the proposal treats class members equitably relative to each other. Under the Plan of Allocation, distributions to the Class Members will be *pro rata*, based on the number of vested shares he or she held in the Plan. No individual Class Members will receive preferential treatment but instead all will receive payments in accordance with the same formula contained in the Plan of Allocation.

**H.  The opinions of Class Counsel, Class Representatives, and absent Class Members.**

The sixth *Reed* factor considers the opinions of counsel, the plaintiffs, and the class. "The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also ODonnell v. Harris County*, 2019 WL 6219933, at *13 (court must give class counsel's opinion appropriate weight, noting that class counsel tends to be most familiar with the case).

Class Counsel's reasons for support of the Settlement Agreement are detailed in this memorandum and in the Porter Decl. No objections have been received to date. Simpluris Decl. ¶

9. However, pursuant to the Preliminary Approval Order, Dkt. 143, the objection deadline is June 23, 2025. If any objections are received before the deadline, Class Counsel will address those in a supplemental filing. Porter Decl. ¶ 35.

## IV.    THE CLASS IS APPROPRIATELY CERTIFIED FOR SETTLEMENT PURPOSES

The Court preliminarily certified the Class for settlement purposes when it granted preliminary approval and approved the issuance of class notice. Dkt. 143. For the reasons contained in the brief in support of preliminary approval (Dkt. 140 at 10–21), which have not changed, the Class meets all the requirements of Rule 23(a) and 23(b)(1).

Specifically, the Class is sufficiently numerous because it encompasses 1,172 Class Members. It satisfies commonality because the alleged violations of ERISA based on the improper value of RVNB stock are the same as to all Class Members. The Settlement Class satisfies typicality and adequacy because Plaintiffs' claims arise from the same facts as other Settlement Class Members, and they have no conflict with the Settlement Class. The requirements of Rule 23(b)(1)(A) and (B) are met because prosecuting separate actions would create a risk of inconsistent adjudications, and an individual adjudication would apply to the Plan as a whole.

For the foregoing reasons, the Settlement Agreement should be finally approved. A proposed Final Judgment and Order Approving Class Settlement and Dismissal With Prejudice is attached as Exhibit 4. The certificate of conference is attached as Exhibit 5.

Dated: June 6, 2025

/s/ Patrick O. Muench
Patrick O. Muench
**Bailey & Glasser LLP**
318 W Adams St
Suite 1512
Chicago, IL 60606
Phone: 312-500-8680
Fax: 304-342-1110
Email: pmuench@baileyglasser.com

16

Gregory Y. Porter
Ryan T. Jenny
James L. Kaufman
**Bailey & Glasser, LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Phone: 202-463-2101
Fax: 202-463-2103
Email: gporter@baileyglasser.com
      rjenny@baileyglasser.com

J Douglas Uloth
**Uloth, P.C.**
5080 Spectrum Drive
Suite 1000 East
Addison, TX 75001
Phone: 469-791-0411
Fax: 888-780-5946
Email: douguloth@ulothlaw.com

John Saul Edwards, Jr
Ajamie LLP
711 Louisiana Street
Suite 2150
Houston, TX 77002
Phone: 713-860-1600
Fax: 713-860-1699
Email: jedwards@ajamie.com

Thomas R Ajamie
Ajamie LLP
711 Louisiana
Suite 2150
Houston, TX 77002
Phone: 713-860-1600
Fax: 713-860-1699
Email: tajamie@ajamie.com

*Attorneys for Plaintiffs*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of June 2025, a copy of the foregoing document was served on all counsel of record via ECF.

*/s/ Patrick O. Muench*
Patrick O. Muench

18