**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **JASON COLEMAN and JESSICA CASEY,** on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | |
| **Plaintiffs,** | |
| **v.** | **Case No. 3:20-CV-01358-E** |
| **NEIL M. BROZEN, ROBERT PETERSON, JR., VASILIA PETERSON, MIKE PAXTON, NICK BOURAS, STERLING INVESTMENT PARTNERS III, L.P., NICOLE PETERSON 2012 IRREVOCABLE TRUST, and BROOKE PETERSON 2012 IRREVOCABLE TRUST,** | |
| **Defendants.** | |

**PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM OF LAW IN
SUPPORT OF ATTORNEYS' FEES AND EXPENSE REIMBURSEMENT,
<u>SETTLEMENT ADMINISTRATION EXPENSES, & CASE CONTRIBUTION AWARDS</u>**

## Table of Contents

I.   INTRODUCTION ...................................................................................... 1

II.   BACKGROUND AND SETTLEMENT ...................................................... 2

   A.   Background .......................................................................................... 2

   B.   The Settlement ..................................................................................... 2

III.   ARGUMENT ............................................................................................. 3

   A.   Legal Standard for Attorneys' Fee Awards ......................................... 3

   B.   The Court Should Use the Percentage of the Fund Method Here ......... 4

   C.   Counsel's Fee Request is Reasonable Under the Percentage Approach ..... 7

      1.   Class Counsel's Requested Fee is Reasonable Because it Constitutes 15% of the Benefits Obtained for the Class ....................... 7

      2.   Application of the Johnson Factors Confirms the Fee is Reasonable ..... 9

   D.   The Lodestar Cross-Check Confirms the Reasonableness of the Fee ..... 17

   E.   Class Counsel's Request to be Reimbursed $62,366.91 in Expenses Advanced to the Class is Reasonable and Appropriate ....................... 21

IV.   CASE CONTRIBUTION AWARDS OF $20,000 ARE APPROPRIATE ...... 21

V.   THERE HAVE BEEN NO OBJECTIONS TO THE PROPOSED DISTRIBUTIONS ....................................................................................23

VI.   CONCLUSION ........................................................................................ 23

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019).......................................5, 6, 7

*Amara v. Cigna Corp.*,
  534 F. Supp. 2d 288 (D. Conn. 2008) .....................................................................................11

*In re Arthrocare Corp. Sec. Litig.*,
  No. 08-cv-574, 2012 WL 12951371 (W.D. Tex. June 4, 2012) ...............................................22

*In re Auto. Refinishing Paint Antitrust Litig.*,
  No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) .................................................................22

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ...................................................................................................15

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
  772 F.3d 125 (2d Cir. 2014).....................................................................................................22

*Billitteri v. Sec. Am., Inc.*,
  No. 3:09-cv-01568, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) .............................14, 16, 21

*Blum v. Stenson*,
  465 U.S. 886 (1984)..................................................................................................................18

*Boeing Co. v. VanGemert*,
  444 U.S. 472 (1980)....................................................................................................................3

*Boxell v. Plan for Group Ins. of Verizon Commun., Inc.*,
  No. 1:13-CV-089 JD, 2015 WL 4464147 (N.D. Ind. July 21, 2015) ......................................18

*Braud v. Transport Serv. Co.*,
  No. 05-1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) ....................................................16

*In re Catfish Antitrust Litig.*,
  939 F. Supp. 493 (N.D. Miss. 1996)........................................................................................21

*City of Omaha Police & Fire Ret. Sys. v. LHC Group*,
  No. 6:12-cv-1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015)...............................................16

*City of San Antonio, Texas v. Hotels.com, L.P.*,
  No. 5:06-cv-00381, 2017 WL 1382553 (W.D. Tex. Apr. 17, 2017) .......................................19

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997).........................................................................................16

*In re Conn's, Inc. Sec. Litig.*,
No. 4:14-cv-00548 (KPE), slip op. (S.D. Tex. Oct. 11, 2018), ECF No. 194 ........................22

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ............................................................ *passim*

*Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 3:02-cv-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ............................ *passim*

*Frommert v. Conkright*,
No. 00-CV-6311L, 2016 WL 7186489 (W.D.N.Y. Dec. 12, 2016) ......................................18

*Frost v. Oil States Energy Servs.*,
No. 4:15–cv–1100, 2015 WL 12780763 (S.D. Tex. Nov. 19, 2015)......................................8

*Garza v. Sporting Goods Props., Inc.*,
No. 93-cv-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ..................................................21

*In re Heartland Payment Sys.*,
851 F. Supp. 2d at 1086–87 .................................................................5, 7, 17, 18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..............................................................................................14

*High St. Rehab., LLC v. Am. Specialty Health Inc.*,
No. 2:12-cv-07243, 2019 WL 4140784 (E.D. Pa. Aug. 29, 2019).........................................9

*Jenkins v. Trustmark Nat'l Bank*,
300 F.R.D. 291 (S.D. Miss. 2014) ..........................................................................8

*Johnson v. Eaton*,
80 F.3d 148 (5th Cir. 1996) ..................................................................................14

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ......................................................................... *passim*

*Kelly v. Johns Hopkins Univ.*,
No. 1:16-cv-2835, 2020 WL 434473 (D. Md. Jan. 28, 2020) ................................................21

*King v. United SA Fed. Credit Union*,
744 F. Supp. 2d 607 (W.D. Tex. 2010)....................................................................16

*Klein v. O'Neal*,
705 F. Supp. 2d 632 (N.D. Tex. June 14, 2010) .......................................................8, 15, 20

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-cv-02781, 2015 WL 4246879 (D. Minn. July 13, 2015)...............................................9

*Lee v. Metrocare Servs.*,
　No. 3:13-CV-2349-O, 2015 WL 13729679 (N.D. Tex. July 1, 2015)....................................15

*In re Marsh ERISA Litig.*,
　265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................8, 11

*McBean v. City of New York*,
　233 F.R.D. 377 (S.D.N.Y. 2006) .........................................................................................22

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
　No. 08-cv-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) .........................................................8

*MidCap Media Fin., LLC v. Pathway Data, Inc.*,
　No. 1:15-cv-0060, 2020 WL 2326243 (W.D. Tex. May 11, 2020) ........................................18

*MidCap Media Fin., LLC v. Pathway Data, Inc.*,
　No. 1:15-60, 2018 WL 7890668 (W.D. Tex. Dec. 19, 2018) .................................................19

*Migis v. Pearle Vision, Inc.*,
　135 F.3d 1041 (5th Cir. 1998) .............................................................................................14

*Pettway v. Am. Cast Iron Pipe Co.*,
　576 F.2d 1157 (5th Cir. 1978) .............................................................................................15

*Ramirez v. J.C. Penney Corp., Inc.*,
　No. 6:14-CV-601, 2017 WL 6462355 (E.D. Tex. Nov. 30, 2017) ................................ *passim*

*In re Remeron Direct Purchaser Antitrust Litig.*,
　No. 03-cv-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ...................................................22

*Savani v. URS Prof'l Sols. LLC*,
　121 F. Supp. 3d 564 (D.S.C. 2015).......................................................................................22

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
　No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012)....................................................9

*Schwartz v. TXU Corp.*,
　No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..................................5, 6

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
　91 F. Supp. 2d 942 (E.D. Tex. 2000) .............................................................................. *passim*

*Sierra Club v. Energy Future Holdings Corp.*,
　No. 12-108, 2014 WL 12690022 (W.D. Tex. Aug. 29, 2014)...............................................19

*Silverman v. Motorola Solutions, Inc.*,
　739 F.3d 956 (7th Cir. 2013) ...............................................................................................16

*Slipchenko v. Brunel Energy, Inc*.,
    No. 11-cv-1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015).................................................19

*Smith v. Krispy Kreme Doughnut Corp*.,
    No. 05-cv-187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007).................................................11

*Smith v. Tower Loan of Miss., Inc.*,
    216 F.R.D. 338 (S.D. Miss. 2003) ..................................................................................8, 21

*Spano v. Boeing Co*.,
    No. 06-cv-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016)..........................9, 20

*Stevens v. SEI Investments Co.*,
    No. 18-cv-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020)..................................................8

*Swain v. Wilmington Trust, N.A.*,
    No. 17-cv-071-RGA-MPT (D. Del. June 9, 2020) ...............................................................18

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) .............................................................................16, 20

*Union Asset Mgmt. Holding A.G. v. Dell, Inc*.,
    669 F.3d 632 (5th Cir. 2012) .....................................................................................4, 5, 17

*Vaughn v. Am. Honda Motor Co.*,
    627 F. Supp. 2d 738 (E.D. Tex. 2007)................................................................................20

*Welsh v. Navy Fed. Credit Union*,
    No. 5:16–CV–1062–DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ..........................5

*Will v. Gen. Dynamics Corp*.,
    No. 06–698–GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)...........................................9

*Wolfe v. Anchor Drilling Fluids USA Inc.*,
    No. 4:15-CV-1344, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015)..........................................7

*Young v. Verizon's Bell Atlantic Cash Balance Plan*,
    783 F. Supp. 2d 1031 (N.D. Ill. 2011) ...............................................................................20

## Statutes

ERISA .............................................................................................................................. *passim*

## Other Authorities

Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303 (2006).............................22

Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their
    Fee Awards, 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 811 (2010) .........................8

Rule 23(e)(3)................................................................................................................23

*Third Circuit Task Force Report*, 108 F.R.D. 237, 246................................................................6

## I.    INTRODUCTION

Class Counsel's efforts on behalf of Jason Coleman, Jessica Casey, and the Class resulted in an outstanding settlement for the participants in the RVNB Holdings, Inc. Employee Stock Ownership Plan (the "Plan" or the "ESOP") of $12,727,272.73 into a Qualified Settlement Fund. The funds remaining after deduction from the Class Settlement Amount for (a) all Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Case Contribution Awards shall constitute the "Net Settlement Amount." The Net Settlement Amount will be distributed to the Class Members pursuant to the Plan of Allocation, attached as Exhibit 5 to the Porter Declaration in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement and Certification of Settlement Class, Dkt. 140. If the Court approves all requested fees and awards, the Net Settlement Amount[1] for distribution to Class Members will be approximately $10,301,759.80 (averaging $8,789.90 per Class Member). This Court preliminarily approved the Settlement. Dkt. 143.

To compensate them for their efforts, Class Counsel request a fee of 15% of the Class Settlement Amount, or $1,909,090.90. The amount requested is well within the market rate for similar cases, taking into account the complexity and risk, the results, and the quality of work. The fee is within the range of fees awarded in similar cases and is supported by the relevant *Johnson* factors. A lodestar crosscheck confirms the reasonableness of the request. Class Counsel's lodestar totals approximately $1,019,924.00. The requested fee represents a multiplier of approximately 1.87, well below multipliers approved in other cases.

---

[1] The Net Settlement Amount consists of the Class Settlement Amount, plus accrued interest, minus (a) any Court-approved Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Court-approved Case Contribution Awards.

Class Counsel also request reimbursement of their expenses of $62,366.91, and a Case Contribution Award of $20,000 for Jason Coleman and Jessica Casey for their time and effort in bringing this Class Action and helping to secure the Settlement benefits for Plan participants. Without them, there would have been no case at all and no settlement.

## II.    BACKGROUND AND SETTLEMENT

### A.  Background

Plaintiffs incorporate by reference the background information contained in Plaintiffs' Unopposed Motion and Incorporated Memorandum of Law for Preliminary Approval of Settlement, Dkt. 140 (the "Approval Motion"). The Approval Motion demonstrates that the Settling Parties in this litigation vigorously advocated their respective positions and that the Settlement was the product of extensive arm's length negotiations.

### B.  The Settlement

The proposed Settlement will apply to all participants in the Plan and the beneficiaries of such participants as of June 29, 2017, the date of the termination of the Plan. Settlement Agmt. ¶ 1.47.[2] With the exception of Nick Bouras, all Defendants are excluded from the Settlement Class and Defendants' Successors-In-Interest. *Id.* Nick Bouras, or his Beneficiaries or Alternate Payees, shall be a member of the Settlement Class. *Id.*

Defendants have agreed to pay $14,000,000: $1,272,727.27 to the DOL (the "ERISA Penalty") and $12,727,272.73 into a Qualified Settlement Fund (the "Class Settlement Amount"). Settlement Agmt. ¶¶ 7.1–7.4. The funds remaining after deduction from the Class Settlement Amount for (a) all Attorneys' Fees and Costs; (b) all Administrative Expenses; and

---

[2] The Settlement Agreement was attached as Exhibit 1 to the Declaration of Gregory Porter in Support of the Approval Motion (Dkt. 140).

(c) any Case Contribution Awards shall constitute the "Net Settlement Amount." *Id.* ¶¶ 1.23, 7.2.5, 10.1, 10.3. The Net Settlement Amount will be distributed to the Class Members pursuant to the Plan of Allocation. *Id.* ¶ 8.2.2; Exhibit 5 to the Declaration of Gregory Porter in Support of the Approval Motion. Each Class Member's Settlement Credit Amount shall be equal to the Net Settlement Amount multiplied by the percentage of Company stock held in the Class Member's Plan account as of June 29, 2017. *Id.*

Before subtracting the expenses, fees, and costs listed above, each of the approximately 1,172 Class Members will receive $10,859.45 on average. Declaration of Gregory Y. Porter ¶ 17, attached as Exhibit 1 ("Porter Decl."). If the Court approves all requested fees and awards, the Net Settlement Amount[3] for distribution to Class Members will be approximately $10,301,759.80 (averaging $8,789.90 per Class Member). *Id.*

The Settlement fully resolves Plaintiffs' claims that Defendants violated ERISA in connection with the redemption of stock held by the Plan following the termination of the Plan on June 29, 2017, and subsequent sale of RVNB's assets (the "ESOP Transaction").

### III.    ARGUMENT

#### A. Legal Standard for Attorneys' Fee Awards

Under the common-fund doctrine, class counsel are entitled to a reasonable fee drawn from the common fund created by a settlement for the benefit of the class. *See, e.g.*, *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 962 (E.D. Tex. 2000) (citing *Boeing).* To determine a reasonable fee, courts in this Circuit use the percentage of fund method or the lodestar method, the latter of which multiplies the

---

[3] The Net Settlement Amount consists of the Class Settlement Amount, plus accrued interest, minus (a) any Court-approved Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Court-approved Case Contribution Awards.

number of hours reasonably expended counsel by hourly rates and an adjustment if warranted. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 745 (S.D. Tex. 2008); *Union Asset Mgmt. Holding A.G. v. Dell, Inc*., 669 F.3d 632, 644 (5th Cir. 2012) ("We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases.").

Regardless of which fee method is used, courts also apply the twelve *Johnson* factors to assess the reasonableness of the fee. *Dell*, 669 F.3d at 643; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by attorneys because they accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19; *Dell,* 669 F.3d at 644.

**B.  The Court Should Use the Percentage of the Fund Method Here**

Most federal courts use the percentage of the fund approach in common fund cases like this. *In re Enron Corp.*, 586 F. Supp. 2d at 748. Although the Fifth Circuit does not require the percentage method (as some circuits do), it is "amenable to its use, so long as the *Johnson* framework is utilized to ensure that the fee awarded is reasonable." *Dell*, 669 F.3d at 643. In *Dell*, the controlling authority on common fund fees in class actions here, the court "endorse[d] the district courts' continued use of the percentage method cross-checked with the *Johnson* factors." *Id.* The court recognized that "district courts in this Circuit regularly use the percentage

4

method blended with a *Johnson* reasonableness check" and that for some district courts it is the "preferred method." *Id.* (collecting cases); *see also Shaw*, 91 F. Supp. 2d at 964 (percentage method is "superior" to lodestar method for assessing reasonableness of fees); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *26, (N.D. Tex. Nov. 8, 2005) ("[T]here is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").

Both before and after *Dell*, courts in this circuit used the percentage of fund methodology to assess fees in a wide variety of class actions. *See Ramirez v. J.C. Penney Corp., Inc.*, No. 6:14-CV-601, 2017 WL 6462355, at *5 (E.D. Tex. Nov. 30, 2017) (in ERISA ESOP settlement, awarding fees based on percentage); *Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1075 (S.D. Tex. 2012) (using percentage method to approve fees in data breach case); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (using percentage method in class action against payment processor; collecting cases); *Welsh v. Navy Fed. Credit Union*, No. 5:16–CV–1062–DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) (using percentage method in overdraft fee class litigation); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *8 (N.D. Tex. Apr. 25, 2018) (applying percentage method in securities class action); *In re Enron Corp.*, 586 F. Supp. 2d at 748 (same).

These courts and others recognize that the percentage of fund approach has distinct advantages over lodestar in a common fund case, especially where, as here, the value of the relief obtained is certain. In *Shaw*, Judge Heartfield explained: "the lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed." *Shaw*, 91 F. Supp. 2d at 964. Judge

5

Heartfield noted it can be "exceptionally difficult" for a court to review and assess the reasonableness of time entries that cover the lifespan of a complex case. *Id.* Further, the percentage method rewards efficiency and aligns the interests of lawyers and the class, whereas lodestar encourages "foot dragging." *Id.* (citing *Third Circuit Task Force Report*, 108 F.R.D. 237, 246); *see also Schwartz*, 2005 WL 3148350, at *25, *29 (lodestar creates incentive to "run up the bill" and disincentives early settlement). Other courts fault the lodestar method's failure to fully compensate counsel in a common fund case for the risk of nonpayment, and failure to pay lawyers the market rate for their services, as reasons to prefer to a percentage. *In re Enron Corp.*, 586 F. Supp. 2d at 747; *Shaw*, 91 F. Supp. 2d at 965.

The Court should use the percentage method in this case for similar reasons. This is a common fund case, the amount recovered is certain—$12,727,272.73 —and the amount of each Class Members' claim and share is mathematically calculable. *See Schwartz*, 2005 WL 3148350, at *25. Class Counsel undertook the case on an entirely contingent basis (advancing substantial case expenses from their own pockets) under an agreement with the Plaintiffs that Class Counsel would seek a percentage-based fee of up to one third. Porter Decl. ¶¶ 21–22. Class Counsel bore all the risk of non-payment. The results obtained are significant. And applying a lodestar framework would impose a great burden on this Court given the more than 1,600 hours counsel have spent on this litigation. Porter Decl. ¶¶ 24, 26. Thus, the requested fee should be assessed based on a percentage of the Fund, using the *Johnson* factors to confirm its reasonableness. *See Al's Pals Pet Care*, 2019 WL 387409, at *4 (confirming reasonableness of one-third fee using *Johnson* factors).

Some courts also use a lodestar cross-check against a percentage-based fee, to ensure that the fee does not result in a windfall. *See In re Enron Corp.,* 586 F. Supp. 2d at 751 (purpose of

6

lodestar cross-check is to avoid windfall). The lodestar cross-check entails a more limited review than a full lodestar analysis. *Erica P. John Fund*, 2018 WL 1942227, at *9 (citing *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1086–87 (S.D. Tex. 2012)) (the lodestar cross-check does not require a court to "scrutinize counsel's billing records with the thoroughness required were the lodestar method applied by itself"). To do a detailed review of the time records "would undermine the utility of the percentage fee." *In re Enron Corp.,* 586 F. Supp. 2d at 825.

The requested fee is also reasonable under the lodestar cross-check.

### C. Counsel's Fee Request is Reasonable Under the Percentage Approach

#### 1. Class Counsel's Requested Fee is Reasonable Because it Constitutes 15% of the Benefits Obtained for the Class

Although the Fifth Circuit has not set a specific benchmark for attorneys' fees in class actions, courts here routinely refer to ranges of 25% to 33% as commonly approved, though higher ranges have been accepted as well. *Shaw*, 91 F. Supp. 2d at 972 ("fees in the range from twenty-five percent (25%) to thirty-three and thirty-four one-hundredths percent (33.34%) have been routinely awarded in class actions").[4] And in *Erica P. John Fund*, when awarding a fee of one-third, the court noted that "numerous courts in this Circuit have awarded fees in the 30% to 36% range," listing more than 20 of them. 2018 WL 1942227, at *9.

Other courts in this jurisdiction have awarded fees in a similar range in common fund cases. In *Al's Pals Pet Care*, 2019 WL 387409, at *4–5, the court awarded fees of one-third of a $15 million settlement in a case against a credit card processor, noting one third is an "oft-awarded percentage in common fund class action settlements in this Circuit," and citing nine other cases awarding similar fees, including: *Wolfe v. Anchor Drilling Fluids USA Inc.,* No. 4:15-CV-1344,

---

[4] *Shaw* was a "mega-fund" case with a common fund of $1B; as the court pointed out, percentages in mega-fund cases usually go down as the amount of the fund goes up. The court ultimately awarded a fee of 15% of the fund. *Id.*

2015 WL 12778393, at *3 (S.D. Tex. Dec. 7, 2015) (awarding fees of 40% in FLSA case); *Frost v. Oil States Energy Servs.*, No. 4:15–cv–1100, 2015 WL 12780763, at *2 (S.D. Tex. Nov. 19, 2015) (40% fee in FLSA case); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) (awarding fees of one-third in over-draft fee class action against bank); c*f. Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 369 (S.D. Miss. 2003) ("[I]t is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third however, awards commonly fall between 20% at the lower end, and 50% at the higher end.").

And in *Ramirez*, 2017 WL 6462355, at *5, report and recommendation adopted, 2017 WL 6453012, at *1 (E.D. Tex. 2017), another ERISA class action based on an ESOP, the court noted that "[i]t is not unusual for attorney's fees awarded under the percentage method to range between 25% to 30% of the fund or more." *Id.* (approving requested fee of 30%); *see also Klein v. O'Neal*, 705 F. Supp. 2d 632 (N.D. Tex. June 14, 2010) (approving requested fees of 30%).[5]

In sum, Class Counsel obtained $12,727,272.73 in benefits to the Class. Class Counsel's requested fee of $1,909,090.90 is only 15% of the benefits available to the class, which is well below the range of fees commonly approved.

The fee is also lower than fees approved in other complex ERISA class actions throughout the country. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (awarding one third fee in ERISA 401(k) class action); *Stevens v. SEI Investments Co.*, No. 18-cv-4205, 2020 WL 996418, at *12 (E.D. Pa. Feb. 28, 2020) (awarding one third of settlement fund) citing *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010)

---

[5] In addition to these cases, a study of class action settlements approved by federal judges in 2006 and 2007, based on 668 decisions, found that (i) fee awards ranging from 30% to 35% of the recovery constitute the most common category, and (ii) in the vast majority of cases, fee awards equaled or exceeded 25%. Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 811 (2010).

(awarding one-third fee)); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *1 (D.N.J. May 31, 2012) (awarding one third fee in ERISA case alleging defendants breached their fiduciary duties to Plan, particularly with regard to the Plan's holdings of Schering–Plough stock); *High St. Rehab., LLC v. Am. Specialty Health Inc.*, No. 2:12-cv-07243, 2019 WL 4140784, at *10 (E.D. Pa. Aug. 29, 2019) (awarding 33% fee in ERISA class action regarding health insurance benefits); *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781, 2015 WL 4246879, at *2, 4 (D. Minn. July 13, 2015) (awarding one third fee and noting courts have consistently awarded one-third fees in ERISA breach of fiduciary duty cases); *Spano v. Boeing Co.*, No. 06-cv-743-NJR-DGW, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016); *Will v. Gen. Dynamics Corp.*, No. 06–698–GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (one-third fee consistent with market rate).

## 2.  Application of the Johnson Factors Confirms the Fee is Reasonable

Once the court confirms the requested fee does not exceed the appropriate range, the court should use the applicable *Johnson* factors to see whether the fee is fair, reasonable, and adequate. *Erica P. John Fund,* 2018 WL 1942227, at *10. The applicable factors support the fee here—in particular, the results obtained, the time invested, and the complexity and risk involved, support the 15% fee.[6]

### a.  The ERISA Claims Asserted Required Substantial Time and Labor

Class Counsel have committed a combined total of 1,605.2 hours to bring this litigation to a conclusion. Porter Decl. ¶¶ 24, 26; Declaration of John S. Edwards, Jr. ¶ 4, attached as Exhibit 2

---

[6] *Johnson* factor 11—the nature and length of the professional relationship with the client—is not relevant in a class action such as this one, where the professional relationship did not precede representation in this Action.

("Ajamie Decl."). These hours were reasonable and necessary to the vigorous prosecution and successful resolution of this complex class action.

As stated in the accompanying Porter Declaration, and described in detail in Sections II and IV(B)(3) of the Approval Motion, the work performed by Class Counsel and their staff included: investigating and preparing the Complaint and Amended Complaint, meeting and conferring with defense counsel regarding informal discovery and case management reviewing document productions discussed below, successfully defending against Defendants' motion to compel arbitration, engaging an expert in private company purchase and sale transaction who prepared preliminary analyses regarding the terms and process of the ESOP Transaction and advised Plaintiffs' Counsel during settlement negotiations, participating in a three day mediation process, participating in extensive briefing, and representing Plaintiffs at hearings and case conferences. Porter Decl. ¶ 6.

Briefly, discovery included review of, *inter alia*: presentations prepared by RVNB's advisors that were provided to RVNB and the Trustee; RVNB's Board of Directors meeting minutes; discussions among the Trustee and its advisors related to the ESOP Transaction including the terms, valuation, and negotiation; transaction documents containing the terms of the ESOP Transaction; opinion letters provided by the Trustee's advisors; valuation reports prepared by the Trustee's financial advisors; diligence reports prepared by the Trustee's legal advisor; handwritten notes taken by the Trustee during the ESOP Transaction process; and minutes from the Trustee's meetings related to the ESOP Transaction. *Id.* ¶ 15. Plaintiffs' Counsel also retained and consulted an expert in private company purchase and sale transaction who prepared preliminary analyses regarding the terms and process of the ESOP Transaction and advised Plaintiffs' Counsel during settlement negotiations. *Id.* ¶ 6.

Plaintiffs also successfully opposed Defendants' Motion to Compel Individual Arbitration. Dkt. 66. The Motion to Compel was fully briefed and included numerous notices of, and responses to, supplemental authority. Dkt. 70–71, 74–75, 78–79, 83, 86, 89–90, 93–94, 97–98, 111–114, 117–118, 124–126, and 128–129. The District Court denied the Motion to Compel on July 12, 2023. Dkt. 130. Defendants appealed that decision on August 11, 2023, Dkt. 135, automatically staying all proceedings in this Court. Oral arguments were held on the Motion to Compel in the Fifth Circuit on March 11, 2024, but the decision was stayed pending resolution of this Settlement.

Finally, Class Counsel prepared for and engaged in a three-day mediation and spent weeks documenting the Settlement after the mediation. Porter Decl. ¶ 16.

The time and labor involved justify the requested fee. *See Ramirez*, 2017 WL 6462355, at *5 (finding fee of 30% justified where the ERISA case was time-sensitive and complex, requiring considerable expertise and risk by Class Counsel).

### b.  The Case Presented Novel and Difficult Issues

The novelty and difficulty of a case's issues is a significant factor in awarding attorneys' fees. This case presented several layers of challenges that support the requested fee. First, "ERISA law is highly complex." *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-cv-187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007); *Amara v. Cigna Corp.*, 534 F. Supp. 2d 288, 296 (D. Conn. 2008) ("ERISA and the regulations under it, are often lamentably obscure – to describe them as a tangled web does not do them justice."). Each ERISA class action presents new and significant challenges. This case was no exception.

Second, ERISA class actions, particularly those involving employee stock ownership plans, are a relatively recent development. *In re Marsh ERISA Litig.*, 265 F.R.D. at 147–48. Unlike, for example, securities fraud class actions, which have been litigated since the 1940s and as to

which there is a large body of appellate case law, ERISA class action law is still developing. *Id.* The relatively unsettled nature of the law applicable to Plaintiffs' claims makes litigating these claims more difficult and requires the use of multiple experts.

Third, Plaintiffs' core allegations regarding the stock sale rested on facts that were strongly contested by Defendants, including whether the stock sale was in the best interest of the Plan, whether the Plan received maximum value for its stock, and whether there were negative facts that were ignored by or not sufficiently investigated by Brozen during the due diligence and negotiation process.

Fourth, Defendants vigorously denied all of the allegations, asserted affirmative defenses, and otherwise defended its actions with respect to the stock sale. Defendants pointed to evidence that in their view supported the conclusion that they had no liability. If the Action were to proceed through trial, Plaintiffs would have to overcome these defenses and arguments.

Fifth, Plaintiffs and Defendants also strongly disagree on the proper measure of damages. Defendants contend that the Plan and its participants were not harmed at all. Plaintiffs, on the other hand, argued that the Plan incurred significant financial damage from the underpayment to the Plan during the stock sale. The Parties have exchanged position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time the Parties reached their Settlement, and the uncertainty put both Parties at great risk.

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

Further, the Parties' dispute over Defendants' motion to compel arbitration remained

unresolved. On July 12, 2023, the Court denied Defendants' motion to compel arbitration. On August 11, 2023, Defendants filed a notice of interlocutory appeal of the Court's denial. The case has been stayed pending resolution of the appeal. The United States Court of Appeals for the Fifth Circuit heard oral argument on March 11, 2024, but has not issued an opinion. Even if affirmed on appeal, Plaintiffs would still face a trial on the merits, likely followed by an appeal on the merits. In sum, Plaintiffs and the Settlement Class may have waited several years for ultimate resolution and recovery.

### c.    Obtaining a Successful Outcome Required Skilled and Experienced Class Counsel

Plaintiffs' Counsel in this case are well-qualified and experienced as described in detail in the Declaration of Gregory Porter. Porter Decl. ¶¶ 7–13 and Exhibit 4 attached to the Declaration of Gregory Porter in Support of the Approval Motion; Ajamie Decl., Exhibit C. Not only do these attorneys have extensive experience litigating class actions, including numerous ESOP cases, they have worked diligently to litigate the claims here. Porter Decl. ¶¶ 6, 15-16. There should be no question that Plaintiffs' Counsel brought sufficient skill and resources to litigate this case.

Defendants are also represented by effective and experienced counsel from large firms. McDermott Will & Emery LLP has approximately 1,348 attorneys, and Holland & Knight LLP has approximately 2,200 attorneys. Because of their experience, Plaintiffs' Counsel were able to efficiently and successfully handle the complex legal and factual issues this case presented on behalf of the Class, despite vigorous and resourced opposition, which further demonstrates their skill and experience.

### d.    Class Counsel was Precluded from Taking on Other Work as a Result of this Litigation and the Time Limitations it Imposed

The time Class Counsel spent on this case, on a purely contingent basis, was time that could not be spent on other cases. The schedule imposed by this case, and the extraordinary commitment

of time and labor the case required, combined to preclude Class Counsel from taking on other matters while this case was in active litigation. Porter Decl. ¶ 22. This factor weighs in favor of the fee requested. *See Shaw*, 91 F. Supp. 2d 970.

### e. The Fee is Consistent with the Customary Fee for Similar Work and is Entirely Contingent

Class Counsel took this case on a wholly contingent fee basis, and they have not received any compensation for their work to this point. Porter Decl. ¶ 20. *See Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568, 2011 WL 3585983, at *7 (N.D. Tex. Aug. 4, 2011) (noting relevance of contingency fee). The fact that their compensation is contingent on obtaining a result for the Class is particularly relevant given the complexity and difficulty presented by the ESOP cases, and the possibility of non-recovery. *Id.* Not only has counsel invested hundreds of hours of legal work, with no guarantee of payment, they have incurred hundreds of thousands of dollars in expenses. Class Counsel did so with the very real possibility of no recovery or a very limited recovery. Finally, the fee is consistent with fees awarded in similar cases, as described above in Part III.C.1.

### f. The Results Obtained by Plaintiffs and Class Counsel are Exemplary

The Fifth Circuit has repeatedly held, as have other courts including the Supreme Court, that the most important factor in determining the reasonableness of a fee award is the results obtained. *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998); *Johnson v. Eaton,* 80 F.3d 148, 152 (5th Cir. 1996); *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees"); *see also Shaw,* 91 F. Supp. 2d at 971.

In light of the inherent uncertainty, and potential for delay, a settlement of $12,272,727.27—approximately $10,859.45 per participant before fees and other costs are applied—is a good result for the Class and is greater than recoveries in other ERISA cases. *See*

14

Porter Decl. ¶ 18, chart of average class member gross recoveries in ERISA cases, ranging from $129 to $2,291. In contrast, for example, in the *Ramirez* case, the court approved a settlement of $4.5 million for 55,000 class members, and awarded fees of 30%. *Ramirez*, 2017 WL 6462355, at *4.

As courts in this Circuit have noted, "in the context of a class action settlement, compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Klein*, 705 F. Supp. 2d at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n.69 (5th Cir. 1978)). "Inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *6 (N.D. Tex. July 1, 2015) (internal citations omitted). A certain recovery for the class now, far outweighs the mere possibility of future relief after years of costly litigation. *See Klein*, 705 F. Supp. 2d at 651 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.") (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).

### g. The Case Presented Substantial Risk

As above, Class Counsel's work in this case involved a number of complex and difficult legal and factual issues, with uncertain outcomes, due in part to the unsettled nature of the law regarding ESOP claims. *See Ramirez*, 2017 WL 6462355, at *5 (noting risk involved in bringing ESOP claims). In addition, the fact intensive inquiries underlying the Parties' opposing positions on damages would have led to a battle of experts and conflicting evidence and testimony, which would have placed the outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

As stated previously, the Parties' dispute over Defendants' motion to compel arbitration remained unresolved, creating substantial risk for Plaintiffs' recovery.

Moreover, Defendants have substantial resources and could likely afford a vigorous and prolonged defense. "'Undertaking expensive litigation against ... well-financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee." *Erica P. John Fund*, 2018 WL 1942227, at *12 (quoting *Braud v. Transport Serv. Co.*, No. 05-1898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010)).

Lawyers should be compensated for the risk of nonpayment when accepting a case on a contingency basis. In "[r]ecognizing the contingent risk of nonpayment in [class action] cases, courts have found that class counsel ought to be compensated … for risk of loss or nonpayment assumed by carrying through with the case." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859-60 (E.D. La. 2007) (citing *In re Combustion, Inc.,* 968 F. Supp. 1116, 1132 (W.D. La. 1997)); *see also Billitteri*, 2011 WL 3585983, at *7 (finding the contingency fee arrangement of a class action "particularly relevant" to the *Johnson* analysis "considering the difficulty presented by the facts and legal questions in [such] case[s] and the very real risk of obtaining no recovery at all"); *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 618 (W.D. Tex. 2010) (finding the fact that "[c]lass counsel undertook [the] case on a contingency fee basis" relevant to the *Johnson* analysis); *City of Omaha Police & Fire Ret. Sys. v. LHC Group*, No. 6:12-cv-1609, 2015 WL 965696, at *7 (W.D. La. Mar. 3, 2015) (accord).

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citation omitted). If the Court had ruled against Plaintiffs at any juncture—either at the pleading stage,

16

class certification, dispositive motions, or on appeal—Class Counsel would receive nothing for the time and expenses they invested in the case. There were many opportunities for this case to be derailed, and Class Counsel's willingness and ability to persist and bear those risks weigh in favor of the requested award.

### h. Awards in Similar Cases

As discussed in Part III.C.1 above, the fee in this case is well within the range of fees awarded in similar cases here and across the country.

### D. The Lodestar Cross-Check Confirms the Reasonableness of the Fee

When the Fifth Circuit in *Dell* affirmed the district court's use of a percentage fee coupled with a *Johnson* factors analysis to confirm reasonableness, it did not also require a lodestar cross-check. 669 F.3d at 643. Nonetheless, some courts after *Dell* have done so.

As above, typically, "courts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records." *Erica P. John Fund*, 2018 WL 1942227, at *9 (citing *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1086–87). Meticulous review of time entries is not required. *Erica P. John Fund,* at *9.[7] Courts can rely on summary reports. *Heartland Payment Sys.*, at 1086–87.

As of this date, Class Counsel has spent approximately 1,605.2 hours combined litigating this case, not including all time that will be spent on final approval briefing and this fee application, Porter Decl. ¶¶ 24, 26; Declaration of John S. Edwards, Jr. ¶ 4, resulting in a combined lodestar of $1,019,924.00. The hourly rates contained in the Porter Decl. ¶ 26, and Ajamie Decl. ¶ 4, are reasonable for litigation of this nature. Porter Decl. ¶ 30. The same rates

---

[7] Though not required, Class Counsel will submit their detailed billing records to the Court prior to the Fairness Hearing if the Court so requests.

were recently approved in a similar ERISA case, *Swain v. Wilmington Trust, N.A.,* No. 17-cv-071-RGA-MPT, (D. Del. June 9, 2020), brought by Bailey & Glasser. *Id.* ¶ 31.

"[T]to determine the reasonable hourly rate for the movant's attorney, courts must consider the attorney's regular rate as well as the prevailing market rate, which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *MidCap Media Fin., LLC v. Pathway Data, Inc.,* No. 1:15-cv-0060, 2020 WL 2326243, at *2 (W.D. Tex. May 11, 2020) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)). "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *In re Heartland,* 851 F. Supp. 2d at 1087 (citations omitted) (rates ranging from $90/hour for paralegal work to $825/hour for lead counsel were reasonable).

With regard to the relevant community for comparison, ERISA litigation is typically performed on a national level (as this is a national class), and several courts have noted that an ERISA attorney's work is not normally compensated based solely on the rates in the area in question. *See, e.g., Boxell v. Plan for Group Ins. of Verizon Commun., Inc.*, No. 1:13-CV-089 JD, 2015 WL 4464147, at *9 (N.D. Ind. July 21, 2015) ("ERISA is a specialized field with a limited number of attorneys who specialize in representing plaintiffs seeking disability benefits, and Ms. Boxell has adequately established that there is a national market for the services of those attorneys"); *Frommert v. Conkright*, No. 00-CV-6311L, 2016 WL 7186489, at *7 (W.D.N.Y. Dec. 12, 2016) ("in certain highly specialized areas of law, such as ERISA, the relevant legal community is national in scope."... "[T]he hourly rates to be applied here are not strictly bound by what would be typical for counsel from this district.").

18

Indeed, the *Enron* court acknowledged this principal concluding that counsel in that case who was a leading securities class action litigator, with nationwide experience and success, was entitled to an enhanced fee above the rates charged by local plaintiffs' attorneys. *In re Enron Corp.*, 586 F. Supp. 2d at 790 ("This Court finds that there is no comparable Houston firm on par with Coughlin Stoia in securities class action litigation" and counsel's successful track record was a factor in the recovery obtained, justifying an enhanced rate).

The rates contained in counsel's declarations are within the range of rates recently approved by and reported to courts in similar cases in this jurisdiction for ERISA and other class actions.[8] *See* Porter Decl. ¶¶ 30–31. For example, in the *Ramirez* ESOP class action, though the fee was based on a percentage, plaintiffs' counsel reported rates ranging from $550 to $950 per hour. Declaration of Samuel E. Bonderoff, [Ramirez] ECF No. 81, at ¶ 17. In *City of San Antonio, Texas v. Hotels.com, L.P.*, No. 5:06-cv-00381, 2017 WL 1382553, at *11 (W.D. Tex. Apr. 17, 2017) a class action against hotel booking sites for failing to pay hotel taxes, the magistrate approved rates of $625 an hour in 2017 for lawyers with more than 20 years' experience; *see also Sierra Club v. Energy Future Holdings Corp.*, No. 12-108, 2014 WL 12690022, at *6 (W.D. Tex. Aug. 29, 2014) (awarding out-of-district counsel in a Clean Air Act case $925 per hour after finding that rate reasonable given their home market); *MidCap Media Fin., LLC v. Pathway Data, Inc.*, No. 1:15-60, 2018 WL 7890668, at *2 (W.D. Tex. Dec. 19, 2018) (approving a $755 hourly rate in a breach-of-contract case) ); *Slipchenko v. Brunel Energy, Inc.*, No. 11-cv-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (in ERISA class action, finding "Cohen Milstein's billing rates—ranging from $240–$260 for paralegals, $415–$530 for associates, and $635–$775 for

---

[8] An "accepted method of compensating for a long delay in paying for attorneys' services is to use their current billing rates in calculating the lodestar." *In re Enron Corp.,* 586 F.Supp.2d at 763.

partners—are generally comparable to the rates charged by the Texas-based defense counsel in this action.")

ERISA class actions in other jurisdictions support the rates underlying counsel's fee request here. *See Spano*, 2016 WL 3791123, at *3 (under lodestar cross check, court found that reasonable rates were: for attorneys with 25 years of experience, $998 per hour; for attorneys with 15–24 years, $850 per hour; for attorneys with 5–14 years, $612 per hour; for attorneys with 2–4 years, $460 per hour; for paralegals and law clerks, $309 per hour); *Young v. Verizon's Bell Atlantic Cash Balance Plan,* 783 F. Supp. 2d 1031, 1037 (N.D. Ill. 2011) (nine-year-old ERISA case approving rates up to $750/hour). Class Counsel anticipates incurring additional time to bring the Settlement to a conclusion.

The amount of time spent was reasonable as well. This case was actively litigated through discovery, motions practice, working with an expert, and negotiation and settlement. The time reported was necessary to the successful outcome of this case. In addition, the reported time was adjusted in the exercise of billing judgment, omitting time spent that may have been duplicative, or non-essential, as well as for time-keepers with fewer than 10 hours. Porter Decl. ¶¶ 27–28.

The requested fee will result in a lodestar enhancement of 1.87, which is within the range, and in fact below enhancements approved by courts in similar cases. *See Klein*, 705 F. Supp. 2d at 680–81 (applying multiplier of 2.5 to lodestar due to risks entailed and zealous efforts of the attorneys that resulted in a significant recovery for the class); *Vaughn v. Am. Honda Motor Co.,* 627 F. Supp. 2d 738, 751 (E.D. Tex. 2007) (applying a multiplier of 2.26, citing risk, contingency basis, and issues that were novel and complex under the Odometer Act); *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 869 (E.D. La. 2007) (lodestar multiplier in range of 2.5 to 3.5 appropriate in case given time involved, excellent results obtained, and lawyers skill and

experience, in case involving oil spill); *Garza v. Sporting Goods Props., Inc.,* No. 93-cv-108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) ("The range of multipliers in large and complicated class actions have ranged from 2.26 to 4.5.").

### E. Class Counsel's Request to be Reimbursed $62,366.91 in Expenses Advanced to the Class is Reasonable and Appropriate

Attorneys whose work creates a common fund are routinely reimbursed for the reasonable expenses they incurred to bring the case. *Billitteri*, 2011 WL 3585983, at *10 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."). "Reimbursable expenses include court costs, transcripts, travel, contractual personnel, document duplication, [and] expert witness fees." *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020). Counsel is reimbursed for these expenses "in addition to the fee percentage." *Id*.

In prosecuting this matter, combined Class Counsel have incurred $62,366.91 in out-of-pocket expenses for the benefit of the Class by the time of final approval. Porter Decl. ¶ 32; Ajamie Decl. ¶ 6. These expenses include experts' fees, travel costs, external copying/printing fees, discovery costs, legal research expenses, mediators, outside delivery services, and filing fees. Porter Decl. ¶ 32. As detailed in Class Counsel's accompanying declarations, each expense was actually incurred, and was both reasonable and necessary to prosecute this Action. They are the sort of expenses that attorneys in non-contingency cases generally charge to their paying clients. Accordingly, these expenses should be reimbursed.

### IV.    CASE CONTRIBUTION AWARDS OF $20,000 ARE APPROPRIATE

Courts "commonly permit payments to class representatives above those received in settlement by class members." *Smith*, 216 F.R.D. at 367-68; *see In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503-04 (N.D. Miss. 1996). Such awards are justified in part by the fact that class

21

representatives must be familiar with the case to be adequate representatives. *See* Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303 (2006). "Serving as a class representative is a burdensome task and it is true that without class representatives, the entire class would receive nothing." *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (quotation and citation omitted).

Plaintiffs request case contribution awards of $20,000 for each Named Plaintiff for their efforts in obtaining benefits for the Class. Plaintiffs' request is appropriate due to their active involvement in the litigation. They have been actively engaged in the litigation, and they have provided documents to counsel used to draft the Complaints. Porter Decl. ¶ 34. They have regularly conferred with counsel on the progress of the case. *Id.* They asserted claims on the Plan's behalf and requested no individual relief. *Id.*

Plaintiffs' request of $20,000 is well within the range of awards approved by courts in the Fifth Circuit and elsewhere. *See, e.g., Erica P. John Fund*, 2018 WL 1942227 (awarding $100,000 to lead plaintiff in securities class action); *In re Arthrocare Corp. Sec. Litig.*, No. 08-cv-574, 2012 WL 12951371, at *6 (W.D. Tex. June 4, 2012) (awarding $55,850 to lead plaintiff); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (KPE), slip op. at 4 (S.D. Tex. Oct. 11, 2018), ECF No. 194 (awarding over $22,000 to class representative); *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 772 F.3d 125, 132-33 (2d Cir. 2014) (affirming award of over $450,000 to five class representatives); *In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008) (awarding $30,000 to each class representative); *McBean v. City of New York*, 233 F.R.D. 377, 391-92 (S.D.N.Y. 2006) (approving incentive awards of $25,000–$35,000, which are "solidly in the middle of the range"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-0085, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) ($30,000).

## V.     THERE HAVE BEEN NO OBJECTIONS TO THE PROPOSED DISTRIBUTIONS

Finally, no objections have been received to date. However, pursuant to the Preliminary Approval Order, Dkt. 143, the objection deadline is June 23, 2025. If any objections are received before the deadline, Class Counsel will address those in a supplemental filing. Porter Decl. ¶ 35. The Settlement Notices that the Court approved and the Settlement Administrator will mail explicitly disclose that (1) Class Counsel would seek attorneys' fees of no more than fifteen percent (15%) of the Class Settlement Amount and would also seek reasonable expenses and Case Contribution Awards for Plaintiffs; (2) that this fee application and supporting papers will be filed well before the objection deadline; and (3) objections to the Settlement must be filed with the Court on or before June 23, 2025. *See* Dkt. 143.

## VI.     CONCLUSION

For the reasons stated herein, Class Counsel respectfully request that the Court grant this motion and award Class Counsel's attorneys' fees in the amount of $1,909,090,90. Class Counsel's litigation expenses and costs in the amount of $62,366.91, and the requested Case Contribution Awards of $20,000 each to the Class Representatives, Jason Coleman and Jessica Casey. A Proposed Order is submitted as Exhibit 3, and the Certificate of Conference is submitted as Exhibit 4. Pursuant to Rule 23(e)(3), Class Counsel identifies a co-counsel agreement that can be provided to the Court if requested. Porter Decl. ¶ 36.

Dated: June 6, 2025

*/s/ Patrick O. Muench*
Patrick O. Muench
**Bailey & Glasser LLP**
318 W Adams St
Suite 1512
Chicago, IL 60606
Phone: 312-500-8680
Fax: 304-342-1110
Email: pmuench@baileyglasser.com

Gregory Y. Porter
Ryan T. Jenny
James L. Kaufman
**Bailey & Glasser, LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
Phone: 202-463-2101
Fax: 202-463-2103
Email: gporter@baileyglasser.com
        rjenny@baileyglasser.com

J Douglas Uloth
**Uloth, P.C.**
5080 Spectrum Drive
Suite 1000 East
Addison, TX 75001
Phone: 469-791-0411
Fax: 888-780-5946
Email: douguloth@ulothlaw.com

John Saul Edwards, Jr
Ajamie LLP
711 Louisiana Street
Suite 2150
Houston, TX 77002
Phone: 713-860-1600
Fax: 713-860-1699
Email: jedwards@ajamie.com

Thomas R Ajamie
Ajamie LLP
711 Louisiana
Suite 2150
Houston, TX 77002
Phone: 713-860-1600
Fax: 713-860-1699
Email: tajamie@ajamie.com

*Attorneys for Plaintiffs*

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June 2025, a copy of the foregoing document was served on all counsel of record via ECF.

*/s/ Patrick O. Muench*
Patrick O. Muench
